FILED
U.S. DISTRICT COURT
DISTRICT OF KANSAS

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JUN 30  4 06 PM '05

| | |
|---|---|
| MARK MONSOUR, SHEILA MONSOUR and MONSOUR'S, INC. ) ) ) Plaintiffs, ) ) v. ) ) MENU MAKER FOODS, INC., ) ) Defendant. ) ) | Case No. 05-1204-MLB |

By R Moody, Deputy

## COMPLAINT

Plaintiffs Mark and Sheila Monsour and Monsour's Inc., by and through their attorneys of record, Dustin L. DeVaughn and Richard James of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., and for their Complaint against defendant Menu Maker Foods, Inc., asserts and alleges the following:

1.  Plaintiffs Mark and Sheila Monsour are residents of the State of Kansas.

2.  Plaintiff Monsour's, Inc. is a Kansas corporation authorized to do business in the State of Kansas.

3.  Defendant Menu Maker Foods, Inc. is a Missouri corporation which may be served by and through its registered agent Jon R. Graves at 913 Bighorn Dr., P.O. Box 104507.

4.  This Court has jurisdiction based upon 28 U.S.C. §1333 Diversity of Citizenship.  Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2) and (c) as this is where plaintiffs' business was located; where a substantial part of the events giving rise to the claim occurred;  and  defendant continues to do business in this judicial district.

5. At all times relevant herein, plaintiffs were the owner/shareholders of a food distribution business and a produce business.

6. On January 31, 2002, plaintiffs and defendant executed an Asset Purchase Agreement, a copy of which is attached as **Exhibit A**.

7. In general terms, the Asset Purchase Agreement essentially provides that the defendant would purchase the plaintiffs' food service inventory (dry and frozen goods) but that the plaintiffs would continue with their produce business with defendant purchasing substantially all of its produce requirements through the plaintiffs.

8. The Asset Purchase Agreement, Section XI(C) mandates that the Agreement shall be construed by and according to the laws of the State of Missouri.

9. The Asset Purchase Agreement, Section 8.4, provides that the defendant agrees to reimburse the plaintiffs for any loss, cost expense, damage (including counsel fees) resulting from the inaccuracies or breach of any representation, warranty, agreement or covenant made by the defendant pursuant to this Asset Purchase Agreement and from defendant's breach of or failure to perform any of the covenants or agreements contained within the Asset Purchase Agreement.

## COUNT I
## BREACH OF CONTRACT: FOOD SERVICE

10. Paragraphs 1 through 9 of this Complaint are incorporated herein by reference.

11. Prior to the execution of the Asset Purchase Agreement, defendant's agents and representatives conducted an extensive personal inspection of plaintiffs' inventory and had personal knowledge of the brands, packaging, quantity, quality of the

dry and frozen goods.

12. Based upon this personal inspection and knowledge, the parties committed within the Asset Purchase Agreement that the estimated value of the inventory to be purchased by defendant was $750,000 to $800,000.

13. At the time of the execution of the Asset Purchase Agreement, the frozen and dry goods within plaintiffs' inventory were all in marketable condition

14. Defendant breached its contract with plaintiffs concerning the food service items by failing and/or refusing to purchase anything other than a fraction of plaintiffs' frozen and dry goods; and by failing to adhere to the terms of the Asset Purchase Agreement with respect to the computation of the inventory's purchase price.

15. Plaintiffs were unable to properly mitigate their damages by selling the frozen and dry goods to third parties due to the noncompete agreement.

16. Defendant insisted the noncompete agreement be a part of the Asset Purchase Agreement.

17. As a direct result of defendant's breach of contract, plaintiffs sustained damages in the amount of $725,000 concerning its food service items plus pre and post judgment interest.

WHEREFORE, plaintiffs demand judgment against defendant for damages in the amount of $725,000, pre and post judgment interest, attorney fees and costs.

### COUNT II
### BREACH OF CONTRACT: FOOD SERVICE

18. Paragraphs 1 through 17 of this Complaint are incorporated herein by reference.

19. With respect to plaintiffs' remaining food service inventory, defendant contractually agreed to make its best efforts to sell or assist in the sale of Monsour's remaining inventory.

20. Defendant's contractual agreement to use its "best efforts" to sell or assist to sell plaintiffs' remaining food service inventory was of paramount importance to plaintiffs because of the existence of the non-compete agreement.

21. Defendant breached the terms of the Asset Purchase Agreement as it made absolutely no effort to sell any of plaintiffs' remaining food service inventory, let alone its "best efforts."

22. At the time of the execution of the Asset Purchase Agreement, plaintiffs' food service inventory was valued at $1,109,219.09. Since defendant had contractually agreed to purchase $750,000 to $800,000 of that inventory, the defendant had contractually agreed to use its "best efforts" to sell or assist to sell the remaining $359,219.00 in inventory.

23. As a result of defendant's breach of contract, plaintiffs sustained damages in the amount $300,000.00 plus pre and post judgment interest.

WHEREFORE, plaintiffs demand judgment against defendant for damages in the amount of $300,000.00 (approximately 85% of the value of the remaining inventory), pre and post judgment interest, attorney fees and costs.

### COUNT III
### BREACH OF CONTRACT: PRODUCE

24. Paragraphs 1 through 23 of this Complaint are incorporated herein by reference.

25. Section IX(F) of the Asset Purchase Agreement mandates that defendant would purchase substantially all of its produce requirements through plaintiffs.

26. At all times relevant herein, plaintiffs complied with all conditions precedent concerning the supply of produce.

27. The produce plaintiffs supplied to defendant met or exceeded the contractually agreed standards, but approximately 75% to 90% was intentionally, unjustly and improperly rejected by defendant.

28. To substantiate the quality of the produce plaintiffs were supplying to defendant, a retired United States Department of Agriculture inspector was hired by plaintiffs. This retired USDA inspector observed and recorded the conforming quality of the produce being supplied to the defendant which was continuously, intentionally, unjustly and improperly rejected by defendant.

29. As a direct result of defendant's breach of contract, plaintiffs have incurred damages for past and future lost profits, lost shelter income and lost levels of support totaling $2,687,360.

WHEREFORE, plaintiffs demand judgment against defendant for damages totaling $2,687,360 plus attorney fees and costs.

### COUNT IV
### BREACH OF CONTRACT: PRODUCE

30. Paragraphs 1 through 29 of this Complaint are incorporated herein by reference.

31. At all times relevant herein, defendant was responsible for transporting plaintiffs' produce from plaintiffs' facility to defendant's facility.

32. The refrigerated truck(s) utilized by defendant to transport plaintiffs'

produce were aged and inferior in quality in that these refrigerated trucks fluctuated in temperature to such an extent that it adversely affected the produce.

33.  Additionally, defendant allowed plaintiffs' produce to sit in defendant's trucks and/or at the defendant's warehouse for excessive amounts of time which also adversely affected the produce.

34.  Defendant's own conduct adversely affected plaintiffs' produce and defendant's subsequent rejection of such produce based upon grounds of alleged inferior quality constitutes a breach of contract.

35.  As a direct result of defendant's breach of contract, plaintiffs have incurred damages for past and future lost profits, lost shelter income and lost levels of support totaling $2,687,360.

WHEREFORE, plaintiffs demand judgment against defendant for damages in the amount of $2,687,360, pre and post judgment interest plus attorney fees and costs.

## COUNT V
## FRAUD

36.  Paragraphs 1 through 35 of this Complaint are incorporated herein by reference.

37.  At all times relevant herein, defendant made representations to plaintiffs that it would purchase plaintiffs' food service inventory; that it would use its best efforts to sell or assist in the sale of plaintiffs' remaining inventory; and that it would purchase substantially all of its produce requirements through the plaintiffs.

38.  The plaintiffs justifiably relied upon these material representations and had no knowledge these representations were false.

39. The defendant's representations were in fact false and defendant's officers and agents Jon Graves and Ron Orr had knowledge of the false nature of those representations.

40. The defendant's fraudulent representations led to the destruction of plaintiffs' third-generation family owned business and plaintiffs have incurred damages for past and future lost income, lost shelter income and lost levels of support totaling $3,712,360.

WHEREFORE, plaintiffs demand judgment against defendant for damages in excess of $3,712,360 plus pre and post judgment interest, attorney fees and costs.

## COUNT VI
## **PUNITIVE DAMAGES**

41. Paragraphs 1 through 40 of this Complaint are incorporated herein by reference.

42. At all times relevant herein, defendant and its individual officers and employees in managerial positions, namely Jon Graves and Ron Orr, acted with malice and willful and wanton conduct towards plaintiffs.

43. Specifically, defendant and its individual officers and employees in managerial positions knew that plaintiffs detrimentally relied upon the terms of the Asset Purchase Agreement but intentionally and unjustly refused to purchase plaintiffs' food service inventory; intentionally and unjustly failed to use any efforts to sell or assist in the sale of plaintiffs' remaining inventory; and intentionally and unjustly purchased only a fraction of its produce through plaintiffs.

44. Defendant's actions and conduct were done with knowledge that this intentional and unjust conduct, together with the non-compete agreement in which

plaintiffs were bound, would essentially cause plaintiffs' business to fail.

45.  As a direct and proximate result of defendant's intentional and unjust conduct, plaintiffs' third-generation business had no cash flow; was not able to meet its financial obligations; and failed.

WHEREFORE, plaintiffs demand judgment against defendant for punitive damages in the amount of five million dollars ($5,000,000).

Respectfully Submitted,

_____
Dustin L. DeVaughn, #16559
Richard W. James, #19822
*Attorney for Plaintiffs*
McDONALD, TINKER,
     SKAER, QUINN & HERRINGTON, P.A.
R.H. Garvey Building
300 West Douglas Avenue, Suite 500
P.O. Box 207
Wichita, KS 67202-2909
Telephone: (316) 263-5851
Fax: (316) 263-4677
Email: ddevaughn@mtsqh.com
          rjames@mtsqh.com