IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK MONSOUR, SHEILA MONSOUR )
and MONSOUR'S INC. )
 )
          Plaintiffs, )
vs. ) Case No. 05-1204-MLB
 )
MENU MAKER FOODS, INC., )
 )
          Defendants. )
 )

**DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW the defendant, by and through its attorneys of record John Val Wachtel and Alexander B. Mitchell, of Klenda, Mitchell, Austerman & Zuercher, L.L.C., and hereby submits this memorandum in support of its motion for summary judgment seeking dismissal of the claims of the individual plaintiffs Mark Monsour and Sheila Monsour on grounds that they are not proper plaintiffs in this case and that they lack standing to pursue individual causes of action against the defendant in that those claims are solely the claims of the corporate plaintiff, Monsour's, Inc.

**STATEMENT OF THE NATURE OF THE CASE**

This litigation is a suit for damages based upon the plaintiffs' allegations that the defendant breached an Asset Purchase Agreement (hereinafter "the Agreement"), pursuant to the terms of which the plaintiff Monsour's, Inc., sold, and the defendant acquired, certain food service inventory items then belonging to the plaintiff Monsour's, Inc. The Agreement also provided that the defendant was to purchase substantially all of its fresh produce requirements from Monsour's, Inc., under terms more specifically set out in the Agreement, and as the Agreement was amended from time to time by the conduct and the oral agreements of the

defendant and Monsour's, Inc. The Agreement was executed by all parties to this litigation. The Agreement also contained a clause pursuant to which the parties agreed that the Agreement would be construed according to the laws of the State of Missouri.

On June 30, 2005, the plaintiffs filed their Complaint in this case. The Complaint contained six counts. Counts I and II alleged breach of contract for food service item purchases, Counts III and IV alleged breach of contract on produce purchases, Count V alleged fraud, and Count VI alleged that the plaintiffs were entitled to punitive damages. The defendant answered the Complaint denying the plaintiffs' allegations of breach of contract, fraud and punitive damages. Discovery proceeded, and in January 2006, the plaintiffs voluntarily dismissed Counts V and VI – the claims for fraud and seeking punitive damages. But for the depositions of the parties' damages experts, discovery is complete.

## STATEMENT OF FACTS

1. On January 31, 2002, all parties hereto executed an Agreement which provided, among other things, that the defendant would purchase certain food service items from the plaintiff Monsour's, Inc., and that the defendant would purchase substantially all of its fresh produce requirements from Monsour's, Inc. (ASSET PURCHASE AGREEMENT, dated January 31, 2002, attached hereto as Exhibit A, and incorporated herein by reference.)

2. On that date, the plaintiff Mark Monsour owned all of the stock in Monsour's, Inc. (Deposition of Mark Monsour, p. 20, l. 23 through p. 23, L. 20, attached hereto as Exhibit B, and incorporated herein.)

3. Section I of the Agreement described the assets to be purchased, set an estimated price for those assets, and identified assets which were excluded from the asset purchase section of the Agreement. (ASSET PURCHASE AGREEMENT, Exhibit A, Section I, at pp. 1-2.)

4. The Agreement contained representations and warranties of the parties. (*Id.*, Section VI, at pp. 4-5.)

5. Under Section 6.1(1) of the Agreement, the "Seller" represented that it was the sole owner of the assets to be conveyed to the defendant. (*Id.*, Section VI(6.1)(1), at p. 4.)

6. Under Section 6.1(2) of the Agreement, the "Seller" was defined as Monsour's, Inc, a corporation in good standing under the laws of the State of Kansas. (*Id.*, Section VI(6.1)(2), at p. 4.)

7. Under Section 6.1(3) of the Agreement, the "Seller" represented that it was a corporation owned by Mark Monsour and Sheila Monsour. (*Id.*, Section VI(6.1)(3), at p. 4.)

8. Section XI of the Agreement provided that the Agreement would "be construed by and according to the laws of the State of Missouri." (*Id.*, Section XI(C), at p. 7.)

9. The Agreement was executed by the defendant and the plaintiffs. (*Id.*, at pp. 9-10.)

10. As part of the Agreement, Mark Monsour and Monsour's, Inc. executed a covenant not to compete with the defendant. (Non-Competition Agreement, executed by Mark Monsour and Monsour's, Inc, attached hereto and marked as Exhibit C.)

11. On June 30, 2005, the plaintiffs filed their Complaint with this Court. (Complaint, Court File, Doc. 1.)

12. Count I of the Complaint alleges, in sum and substance, that the defendant had breached its contract "with plaintiffs" by failing to purchase "anything other than a fraction of plaintiffs' frozen and dry goods …" (Doc. 1, at ¶¶ 10-17.)

13. The Complaint alleges that as a result of the breach of the Agreement described in Count I, that the plaintiffs had suffered damages in the amount of $725,000.00. (Doc. 1, at ¶ 17.)

14. Count II of the Complaint alleges, in sum and substance, that the defendant had breached its contract with "plaintiffs" by making no effort to sell any of plaintiffs' remaining food service inventory not purchased by the defendant and by not using its best efforts to assist the plaintiffs in selling any food service inventory not purchased by the defendant. (Doc. 1, at ¶¶ 18-23.)

15. The Complaint alleges that as a result of the breach of the Agreement described in Count II, that the plaintiffs had suffered damages in the amount of $300,000.00. (Doc. 1, at ¶ 23.)

16. Count III of the Complaint alleges, in sum and substance, that the defendant had breached its contract by wrongfully rejecting "plaintiff's" produce which exceeded the quality standards set out in the Agreement. (Doc. 1, at ¶¶ 24-29.)

17. The Complaint alleges that as a result of the breach of the Agreement described in Count III, the plaintiffs had suffered damages in an amount totaling $2,687,360.00. (Complaint, Doc. 1, at ¶ 29.)

18. Count IV of the Complaint alleges, in sum and substance, that the defendant had breached its contract in its transportation of produce from the "plaintiffs" warehouse to the defendant's warehouse. (Doc. 1, at ¶¶ 30-35.)

19. The Complaint alleges that as a result of the breach of the Agreement described in Count IV, the plaintiffs had suffered damages in an amount totaling $2,687,360.00. (Doc. 1, at ¶ 35.)

20. The plaintiffs did not allege that the defendant breached the Non-Competition Agreement executed among the defendant and the plaintiffs Mark Monsour and Monsour's, Inc. (Doc. 1.)

21. The plaintiffs Mark Monsour and Monsour's, Inc. did not allege that the defendant breached the lease agreement between it and Monsour's, Inc., and nor was suit brought on the lease agreement. (Doc. 1.)

22. Counts V and VI of the Complaint were claims for fraud and for punitive damages respectively. (Doc. 1, Counts V and VI.)

23. On January 17, 2006, the plaintiffs voluntarily dismissed Counts V and VI of their Complaint. (Court File, Doc. 39, Order granting plaintiffs motion to voluntarily dismiss Counts V and VI.)

24. The plaintiff Sheila Monsour was unable to identify any assets which she personally conveyed to the defendant under the terms of the Agreement. (Sheila Monsour's Answers to Menu Maker Foods, Inc.'s First Interrogatories to Plaintiff, Sheila Monsour, Interrogatory No. 2, attached hereto as Exhibit D, and Deposition of Sheila Monsour, p. 19, l. 15 through p. 20, l. 12, attached hereto and marked as Exhibit E.)

25. Sheila Monsour believed that she was asked to sign the Agreement simply because she was an "owner" of Monsour's, Inc. (Exhibit D, at Interrogatory No. 3.)

26. The plaintiff Sheila Monsour, claims that her damages, if any, are the same as those of Monsour's, Inc. and those of Mark Monsour, and that the damages of all plaintiffs are not cumulative. (*Id*., at Interrogatory No. 4.)

27. The plaintiff Mark Monsour did not convey any personal assets to the defendant pursuant to the Agreement. (Mark Monsour's Answers to Menu Maker Foods, Inc.'s First Interrogatories to Plaintiff Mark Monsour, Interrogatory No. 8, attached hereto and marked as Exhibit F.)

28. Mark Monsour understood that he was asked to execute the Agreement in case he personally owned any of the assets being conveyed. (*Id*., at Interrogatory No. 9.)

## ARGUMENT AND AUTHORITIES

I. The Summary Judgment Standard

Summary judgment "… shall be rendered where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

> In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 665, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*. 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id*. (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 89 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (1986)).

*Carolina Industrial Products, Inc. v. Learjet, Inc*., 189 F.Supp.2d 1147, 1157 (D.Kan. 2001).

The moving party bears the initial burden of showing or demonstrating an absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Alder v. Wal-Mart Stores, Inc.*, 144 F.3d 665, 670 (10th Cir. 1998). "In attempting to meet that standard, the Movant may simply point out to the court a lack of evidence for the other party on an essential element of that party's claim." *Carolina Industrial*, 189 F.Supp.2d at 1157 (internal citations omitted).

Once the moving party meets its burden under the summary judgment standard, the burden shifts to the party opposing summary judgment – the non-moving party – to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477

U.S. 242, 256, 106 S.Ct. 2505, 89 L.Ed.2d 202 (1986). "The non-moving party must 'set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.' *Alder*, 144 F.3d at 671." *Carolina Industrial*, 189 F.Supp.2d at 1157.

### II. The Plaintiffs Mark Monsour And Sheila Monsour Are Not Proper Parties To This Litigation

The defendant contends that the causes of action raised by the plaintiffs in their Complaint are causes of action which, under either the law of Missouri or Kansas, can only be raised by the plaintiff Monsour's, Inc. Although all of the plaintiffs executed the Agreement (Statement of Facts, ¶ 8.), it is clear from the face of the Agreement that the "Seller" was Monsour's, Inc.

The Agreement contained representations and warranties of the parties. (Statement of Facts, ¶ 3.) Under Section 6.1(1) of the Agreement the "Seller" represented that it was the sole owner of the assets to be conveyed to the defendant. (Statement of Facts, ¶ 4.) Under Section 6.1(2) of the Agreement, the "Seller" was defined as Monsour's, Inc., a corporation in good standing under the laws of the State of Kansas. (Statement of Facts, ¶ 5.) Under Section 6.1(3)of the Agreement, "Seller" represented that it was a corporation owned by Mark Monsour and Sheila Monsour. (Statement of Facts, ¶ 6.) Neither Mark Monsour or Sheila Monsour conveyed any personal assets to the defendant pursuant to the Agreement. (Statement of Facts, ¶¶ 23 and 26.) Mark Monsour signed the Agreement in his individual capacity in case he owned any of the assets being conveyed under the Agreement. (Statement of Facts, ¶ 27.) Given the uncontroverted facts, there can be no doubt that Mark Monsour and Sheila Monsour are not proper plaintiffs to this litigation.

### A. The Missouri Standard

Every suit brought in the courts of the United States shall be brought "in the name of the real party in interest." F.R.Civ.P.17(a). In the present action, and under the terms of the Agreement, the parties agreed that the Agreement would be construed according to the laws of Missouri. (Statement of Facts, ¶ 7.) It is the law of Missouri which dictates and determines who is the proper party to bring and prosecute this action. "State law determines whether a shareholder may maintain a direct, nonderivative action." *Geer v. Cox*, 242 F.Supp.2d 1009, 1016 (2003). Under the facts herein, Monsour's, Inc. is the real party at interest, and the individual plaintiffs have no standing to bring any of the claims they assert.

The general rule in Missouri is that "[a] shareholder is without standing to sue in his individual capacity for damages to the corporation." *Sequa Corporation v. Cooper*, 128 S.W.3d 69, 75 (Mo.App. E.D. 2004), citing *Warren v. Mercantile Bank of St. Louis, N.A.*, 11 S.W.3d 621, 622, (Mo.App. E.D. 1999). In Missouri, this is so even if all of the shareholders join in the suit and the corporation does not have any creditors. *See*, *Cook v. Cook*, 143 S.W.3d 709, 712 (Mo.App. W.D. 2004).

In *Sequa*, Sequa Corporation owned 100 percent of the stock of Sequa Engineered Services, Inc. (hereinafter "SESI") which had entered into a sale of certain of its assets with the defendants for cash and a promissory note. SESI later agreed to discount the note, allegedly based on misrepresentations made by defendants, and both Sequa Corporation and SESI brought suit. The appellate court agreed with the defendants that Sequa Corporation should have been stricken as a plaintiff because it lacked standing. The court said, "Here Sequa was a 100 percent owner of all the shares of stock in SESI. As such, it lacked standing to sue for defendants' alleged misconduct. SESI was the corporation who suffered damage as a result of defendants' alleged misconduct." *Sequa*, 128 S.W.3d at 75. In reaching this conclusion, the *Sequa* court

relied on both *Warren v. Mercantile Bank of St. Louis, N.A.*, 11 S.W.3d 621 (Mo.App. E.D. 1999) and *Jones v. Rennie*, 690 S.W.2d 164 (Mo.App. 1985).

In *Warren*, the appellate court held that the Warrens, individuals who were the sole owners of all of the stock of a corporation, had no standing to sue the defendant for alleged misrepresentations made to Mr. Warren on the grounds that those representations were made to him as vice president of the corporation. This was true despite the fact that the alleged misrepresentations resulted in the Warrens individually investing their own personal money. The court found that the Warrens, as shareholders, lacked standing to sue individually, and further held that, "[M]isrepresentation claims based on an agreement between two corporations and/or statements made to the officers or sole shareholders of a corporation belong to the corporation, not the individual officers or sole shareholders." *Warren*, 11 S.W.3d at 623.

In *Jones*, the appellate court reversed a judgment for Jones who was president and 100 percent shareholder of a corporation for lack of standing to bring the suit. Again, the court found that the alleged misrepresentations which were the basis of Jones' suit were made to him in his capacity as president and 100 percent shareholder, and not in his individual capacity. It further found that all of the damages sustained from the alleged misrepresentations were sustained by the corporation and not by Jones individually, even though he owned 100 percent of the stock. *See, Jones v. Rennie*, 690 S.W.2d at 166.

In addition, it must be noted that, under Missouri law, a court lacks subject matter jurisdiction over any case in which the plaintiff lacks standing to bring the cause of action. *See*, *Cook v. Cook*, 143 S.W.3d 709, 711 (Mo.App. W.D. 2004). As the individual plaintiffs in the action currently before this Court lack standing to bring any of the claims alleged in their

Complaint, this Court lacks jurisdiction over the question and must dismiss the action as it relates to them.

The facts of this case demonstrate that the individual plaintiffs herein lack standing to bring any of the claims asserted in their Complaint under Missouri law. The Agreement was between two corporations, and it defined the "seller" of all of the assets at issue to be the corporation, Monsour's, Inc., not the individual plaintiffs. Any damage caused by any of the alleged misdeeds of defendant was that of the corporation, and only derivatively that of the individuals. This is true whether or not the individuals are the only officers, directors and owners of the corporation.

As noted above, the general rule in Missouri is that a shareholder, even a 100 percent shareholder, does not have standing to bring a cause of action for damages to the corporation. Missouri courts do recognize certain situations in which a shareholder, *qua* shareholder, does have standing to bring a cause of action; however, in each of those situations the shareholder is actually bringing an action for injury to the shareholder directly, and not to the corporation. For example, shareholders "have been allowed to bring individual actions when they assert violation of rights individual to them, such as claims they were personally denied their right to inspect the corporate books and records under Section 351.215 RSMo." *Centerre Bank of Kansas City v. Angle*, 976 S.W.2d 608, 614 (Mo.App. 1998) (citing *Dawson v. Dawson,* 645 S.W.2d 120, 125-26 (Mo.App. 1982)). Other examples were cited by the *Centerre Bank* court which then stated: "These cases illustrate that individual actions are permitted, and provide the logical remedy, <u>if</u> the injury is to the shareholders <u>directly</u>, and not to the corporation." *Centerre Bank*, 976 S.W.2d at 614 (emphasis added).

The individual plaintiffs in this present case do not fall within the ambit of the illustrative cases cited by *Centerre Bank* precisely because the injury complained of is not to them individually, but is to the corporation. To the contrary, should the individual plaintiffs herein argue that the "injury" complained of is to them "and not to the corporation," then the corporation (Monsour's, Inc.) is without standing and must be dismissed. Plaintiffs do not make such a claim; rather, the "injury" complained of in each and every count remaining in plaintiffs' Complaint is to the corporation directly, and to the individual plaintiffs only directly as directors and owners of the corporation. As such, the individual plaintiffs lack standing, this Court lacks jurisdiction over the question as to them, and they must be dismissed from this action.

> B.  The Kansas Standard

As pointed out above, state law determines whether a shareholder may maintain a direct, nonderivative action. *Greer*, 242 F.Supp.2d at 2003. Should this Court see fit to apply Kansas law to the matters at issue, the result would be no different that it would have been under application of Missouri law. The general rule in Kansas is that a corporate shareholder may not bring suit in his or her individual capacity to recover damages for injury suffered directly by the corporation of which he or she is a shareholder. *Richards v. Bryan*, 19 Kan.App.2d 950, 961, 879 P.2d 639, 646 (1994).

> The Kansas Court of Appeals has held that:
>
> A shareholder may only litigate as an individual if the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation. *Bagdon*, 916 F.2d at 383, *Moran v. Household Intern., Inc.*, 490 A.2d 1059, 1070 (Del.Ch. 1985.)

*Id*). (See also, *Safety Technologies, L.C. v. Biotronix 2000, Inc.*, 136 F.Supp.2d 1169, 1174 at FN 3 (D.Kan. 2001) and *Carson v. Lynch Multimedia Corporation*, 123 F.Supp.2d 1254, 1259

(D.Kan. 2000).)  A claim is "said to be derivative if injury is either to the corporation directly or to the shareholder but mediated through the corporation. *Bagdon v. Bridgestone/Firestone, Inc*., 916 F.2d 279, 383 (7th Cir. 1990) *cert.* denied 500 U.S. 952, 111 S.Ct. 2257, 114 L.Ed.2d 710 (1991)." *Id*.  (See also *Boyle v. Harris*, 23 Kan.App.2d 686, 699, 923 P.2d 504, 512 (1996).) "'Whether a cause of action is individual or derivative must be determined from the nature of the wrong alleged and the relief if any, which could result if plaintiff were to prevail.'" *Id*. (internal citation omitted)  See also *Boyle,* 23 Kan.App.2d at 699, 923 P.2d at 512.

Kansas has recognized an exception to this rule in the case of closely held corporations. *Richards,* 19 Kan.App.2d at 966, 879 P.2d at 646.

> [I]f a corporation is closely held, a court, in its discretion may treat an action raising derivative claims as a direct action if it finds to do so will not (1) unfairly expose the corporation to a multiplicity of actions; (2) materially prejudice the interests of creditors in the corporation; or (3) interfere with a fair distribution of the recovery among all interested persons.

*Id*.  In the present case, Monsour's, Inc., <u>the corporate plaintiff, has brought the action</u> against the defendant, and for that reason the exception to the general rule does not apply.  That being so, then, at Kansas law, "[a] shareholder may only litigate as an individual if the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation." *Id.* at, 961, 879 P.2d at 646.

An examination of the facts herein reveals that if the defendant breached its contract with Monsour's Inc., an action to recover any injuries caused thereby - a direct action on behalf of that corporation - has been brought by Monsour's, Inc.  There is no derivative or indirect action for the individual plaintiffs to bring.  An examination of the pleadings reveals that the individual plaintiffs have pled no injuries which are distinct from and/or disproportionate to those suffered

by the corporate plaintiff. Indeed the individual plaintiffs have suffered no such injuries. In the Complaint, the individual plaintiffs have plead <u>the exact injury and the exact damages that were plead by Monsour's Inc</u>. (See Complaint, Doc. 1.)

At Kansas law, the present cause of action is that of Monsour's, Inc. The individual plaintiffs have neither suffered nor pled injuries which are distinct from and disproportionate to the injuries allegedly suffered by Monsour's, Inc. The individual plaintiffs have no separate causes of action to bring against the defendant. The causes of action herein are those of Monsour's, Inc., and <u>not those</u> of the individual plaintiffs. If Kansas law were to be applied in this case, the individual plaintiffs would not be proper parties, and their claims would and must be dismissed.

It matters not that the individual plaintiffs executed the Agreement. Neither individual plaintiff conveyed any asset to the defendant under the terms of the Agreement, and they do not allege that they did. The individual plaintiffs signed the Agreement only as insurance against the possibility that they in fact held assets which should have been assets of the corporation. Assuming that Monsour's, Inc. suffered injury at the hands of the defendant, the individual plaintiffs suffered no injury which was distinct from and/or disproportionate to, the corporation's injuries  There being no evidence to the contrary, the defendant is entitled to summary judgment dismissing the individual plaintiffs as parties to this cause of action.

## CONCLUSION

Based upon the undisputed facts of this case, and based as well upon the laws of both Missouri and Kansas, the defendant is entitled to summary judgment. The individual plaintiffs Mark Monsour and Sheila Monsour are not proper parties to this litigation. The have no standing, and their claims must be dismissed.

        Respectfully submitted,

        KLENDA, MITCHELL, AUSTERMAN &
          ZUERCHER, L.L.C.

        s/John Val Wachtel
        John Val Wachtel, #08310
        Alex B. Mitchell, #08204
        301 N. Main, 1600 Epic Center
        Wichita, KS  67202-4888
        Tele.:  (316) 267-0331
        Fax:  (316) 267-0333
        jvwachtel@kmazlaw.com
        Attorneys for Defendant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of May, 2006, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send electronic notice of this filing to:

Dustin DeVaughn
McDonald, Tinker, Skaer, Quinn
 & Herrington, P.A.
200 W. Douglas, Ave., Ste 500
Wichita, KS  67202
ddevaughn@mtsqh.com
Attorney for Plaintiffs

        s/John Val Wachtel
        John Val Wachtel

KMAZ Document No. 306168