**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

MARK MONSOUR, SHEILA MONSOUR )
and MONSOUR'S INC.                          )
                                                        )
                             Plaintiffs,       )
vs.                                                    )          Case No. 05-1204-MLB
                                                        )
MENU MAKER FOODS, INC.                )
                                                        )
                             Defendant.       )
_____)

**PRETRIAL ORDER**

Pursuant to Fed. R. Civ. P. 16, a pretrial conference was held in this case on May 2006, before Honorable Monti L. Belot, United States District Judge.

This Pretrial Order shall supersede all pleadings and control the subsequent course of this case. It shall not be modified except by consent of the parties and the Court's approval, or by order of the Court to prevent manifest injustice. *See* Fed. R. Civ. P. 16(e): D. Kan. Rule 16.2(c).

1.    **APPEARANCES.**

Plaintiffs Mark Monsour, Sheila Monsour and Monsour's, Inc. appeared at the Pretrial Conference through counsel Dustin L. Devaughn and Richard W. James. Defendant Menu Maker Foods, Inc., appeared through counsel John Val Wachtel and Alexander B. Mitchell.

2.    **NATURE OF THE CASE.**

This is a breach of contract case.

3.    **PRELIMINARY MATTERS.**

1

Dockets.Justia.com

    **a.**    **Subject Matter Jurisdiction.**  Subject matter jurisdiction is invoked under 28 U.S.C. § 1332, diversity of citizenship, and is not disputed.

    **b.**    **Personal Jurisdiction.**  The Court's personal jurisdiction over the parties is not disputed.

    **c.**    **Venue.**  The parties stipulate that venue properly rests with this Court.

    **d.**    **Governing Law.**  Subject to the Court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the following law: The law of Missouri as outlined in the terms of the contract.

**4.**    **STIPULATIONS.**

    **a.**    The following facts are uncontroverted:

1.  On the 31st day of January, 2002, the parties hereto entered into an Asset Purchase Agreement pursuant to the terms of which defendant was to acquire certain assets of plaintiffs and Monsour's, Inc., and purchase certain produce items from plaintiffs.

2.    The Asset Purchase Agreement was drafted and prepared by defendant's attorneys.

3.    The plaintiffs were represented by counsel during the negotiations of the Asset Purchase Agreement.

4.    Defendant agreed to purchase "substantially all" of its produce from plaintiffs pursuant to the terms of the Asset Purchase Agreement and the Agreement defines "substantially all" as being 99.25% subject to the term of the agreement.

5. All produce was hauled from Monsour's in Pittsburg to Menu Maker's in Jefferson City on trucks owned by defendant.

**b.** The following documents constitute business records within the scope of Fed. R. Evid. 803(6) and may be introduced in evidence during trial without further foundation, subject to objections based solely on grounds of relevancy:

1. The Asset Purchase Agreement entered into among the parties and all attachments made a part thereof.

2. The non-compete agreement between Monsour's, Inc., Mark Monsour and defendant.

3. The non-compete agreement between Rick Monsour and defendant.

**c.** Copies of exhibits may be used during trial in lieu of originals.

**d.** The parties have stipulated to the admission of the following trial exhibits.

**e.** At trial, witnesses who are within the subpoena power of the Court and who are officers, agents, or employees of the parties need not be formally subpoenaed to testify, provided that opposing counsel is given at least *2* days advance notice of the desired date of trial testimony.

**f.** No later than 6:00 p.m. each day of trial, counsel shall confer and exchange a good faith list of witnesses who are expected to testify the next day of trial.

**5.** **FACTUAL CONTENTIONS.**

   **a.** **Plaintiffs' Contentions.**

3

In the summer and fall of 2001, defendant Graves Menu Maker Foods, (based in Jefferson City, Missouri), began discussions with Monsour's, Inc. regarding the purchase of Monsour's by Graves Menu Maker Foods (MMF).  Monsour's was an established produce company in its third generation of family ownership based in Pittsburg, Kansas.  Monsour's provided fresh produce and food service items to restaurants, schools, nursing homes, grocery stores and other outlets for food products in a four-state area concentrated in southeast Kansas, southwest Missouri, northwest Arkansas, and northeast Oklahoma.  Monsour's, Inc. is owned by plaintiffs Mark Monsour and Shelia Monsour as sole shareholders.  Dick Graves is sole shareholder of MMF.

After the September 11, 2001 tragedy, the restaurant business and consequently Monsour's, Inc. were adversely affected.  Monsour's was having cash flow difficulties and desired to concentrate on the produce section of the business.  At the same time, MMF was seeking to expand into the four-state region where Monsour's was a recognized name and MMF sought to grow its business.  The parties began discussions about an Asset Purchase Agreement where Monsour's would be the exclusive supplier of MMF's produce.  The terms of the agreement required MMF to purchase "substantially all" of its produce from Monsour's and it defined "substantially all" as 99.25% of all produce MMF purchased.

The parties also discussed the food service inventory of Monsour's.  Monsour's supplied MMF with inventory reports and gave MMF access to its Pittsburg warehouse to evaluate the inventory.  The parties agreed the inventory had a value of between $750,000 and $800,000.  The parties also agreed that "time was of the essence" and MMF would pick up Monsour's

inventory in order to provide MMF with the necessary cash flow to continue its produce operation. Throughout the negotiations and the year leading up to the agreement, MMF knew Monsour's was having financial difficulties and used such knowledge to its advantage.

The agreement required MMF to provide Monsour's with usage calculations in regard to produce so that Monsour's would have the necessary produce on hand and available. MMF failed to provide the calculations. After the agreement, MMF continued purchasing substantial amounts of produce from entities other than Monsour's. MMF would make extensive last minute additions to the orders. MMF would load the produce at Monsour's facilities in Pittsburg at the close of business, let the produce set overnight in MMF's docking area on MMF refrigerated trailers and then MMF would haul the produce to Jefferson City, Missouri. MMF then rejected substantial amounts of produce. When the produce arrived in Jefferson City, Missouri, MMF would then claim that the produce was not of appropriate quality. Many items of produce were wrongly rejected. The items that were damaged were damaged as a result of the improper shipping and handling of the produce by MMF. This testimony is supported by Monsour's expert witnesses, Monsour's former employees and MMF current and former employees.

MMF employees wanted the agreement with Monsour's to fail and openly discussed it with other fellow employees. Thus, MMF employees thought that other MMF employees were trying to cause Monsour's to fail. Because MMF was wrongly rejecting produce and refusing to pay Monsour's for damaged produce on MMF trucks, Monsour's cash flow shortage was further compromised. At the same time, MMF was delaying the pick up and purchase of food service

inventory weakening Monsour's cash flow position. MMF employees did not even know that Dick Graves had agreed to pick up the food service inventory in a limited time frame.

Through MMF's multiple breaches of the agreement, Monsour's was forced to close its doors and cease all operations in the summer of 2002, less than six months after the agreement between the parties. Plaintiffs are entitled to damages related to defendant's multiple breaches of the agreement and attorney fees as outlined in the agreement.

### b. Defendant's Contentions.

On the 31st day of January 2002, the parties hereto entered into an Asset Purchase Agreement pursuant to the terms of which Monsour's, Inc. was to sell and the defendant was to purchase "all of [Monsour's] inventory, other than produce, (which was in good and wholesome condition and which was in 100% resellable condition)" which was then being sold to customers of Monsour's, Inc., or which could be sold to selected customers of the defendant. The inventory was to be purchased at Monsour's cost. Defendant was to "make its best efforts to sell or assist in the sale of Monsour's remaining inventory." The assets not to be purchased were "all inventory not selected by (defendant)." The parties further agreed that defendant would use its best efforts to sell or assist in the sale of any remaining inventory. The parties estimated that the inventory to be purchased had a value of between $750,000.00 and $800,000.00. The defendant agreed to purchase fresh produce from Monsour's under the terms and conditions set out in the Asset Purchase Agreement. In particular the defendant agreed to "purchase substantially all of its produce requirement," provided the produce met or exceeded the defendant's "house acceptability standards."

6

In addition, the defendant, Monsour's, Inc. Mark Monsour and Rick Monsour entered into non-compete agreements pursuant to the terms of which, and for periods of time set out in the non-compete agreements neither Mark Monsour, Monsour's, Inc. nor Rick Monsour, would individually or through others be engaged in the ownership or management of a food distribution business other than through permitted sales to grocery stores, within any county in which the defendant did business.

The defendant fully performed under the terms of the Asset Purchase Agreement, as the same was modified by both the later oral agreements of the defendant and Monsour's, Inc. and the practice of the parties. The parties orally agreed that "centennial" potatoes could be purchased by Menu Maker from a source other than Monsour's.  The parties orally agreed that cabbage could be purchased other than from Monsour's.  The parties orally agreed to allow Menu Maker to purchase mushrooms from sources other than Monsour's.  The parties also orally agreed that Menu Maker could buy liner pack lettuce from other sources.   The parties further orally agreed that the defendant would transport the fresh produce from Monsour's Inc.'s warehouse in Pittsburg, Kansas to defendant's premises in Jefferson City, Missouri, and that the defendant would take delivery of the produce at its premises in Missouri.

The plaintiff Monsour's, Inc. breached the Asset Purchase Agreement by failing to provide produce to the defendant which met the defendant's quality standards as more fully set out in the Asset Purchase Agreement.  The plaintiff misrepresented the value of its inventory, which as of the date of the execution of the Asset Purchase Agreement had a value, of no more than $569,759.81.

The plaintiffs suffered no injury or damage as a result of the conduct of the defendant, which fully performed under the terms of the Asset Purchase Agreement and the same was modified both orally and by the conduct of the parties.  The defendant further contends that the plaintiffs Mark and Sheila Monsour are not proper parties to this litigation in that they conveyed nothing to the defendant under the terms of the Asset Purchase Agreement.

Plaintiffs are not entitled to prejudgment interest because the plaintiffs' damages, if any, are all un-liquidated.   The plaintiffs are not entitled to attorney's fees.

6.    **THEORIES OF RECOVERY.**

    a.    **List of Plaintiffs' Theories of Recovery.**  Plaintiffs assert that they are entitled to recover upon the following theories:  Breach of Contract.

    b.    **Essential Elements of Plaintiffs' First Theory of Recovery.**

        1.   The parties entered into a valid and enforceable contract (Asset Purchase Agreement).

        2.   Mutual obligations arose out of the contract.

            a.   Defendant agreed to purchase the food service inventory of plaintiffs in a timely manner.

            b.   Defendant agreed to purchase 99.25% (substantially all) of its produce from plaintiffs.

        3.   Valid consideration.

        4.   A breach of the contract occurred by defendant.

      a.  Defendant purchased only $83,585.65 of food service inventory and did not do it in a timely manner.

      b.  Defendant allowed product to "expire" without purchasing such product.

      c.  Defendant did not purchase "substantially all" of its produce from plaintiff.

      d.  Defendant wrongly rejected produce in good wholesome condition.

      e.  Defendant damaged produce under its control and wrongly refused to pay for it.

      f.  Defendant did not comply with the ordering terms of the contract for produce.

      g.  Defendant further breached the agreement by not complying with the terms of the agreement.

    5.  Plaintiffs were damaged as a result of that breach.

**7.     DEFENSES.**

    **a.     List of Defendant's Defenses and Affirmative Defenses.**  Defendant asserts the following defenses and affirmative defenses:

    1.  The plaintiff(s) misrepresented the value of the inventory to be sold under the Asset Purchase Agreement.

    2.  The defendant fully performed under the Asset Purchase Agreement as the same was modified both orally and by the conduct of the parties.

9

3.  The plaintiffs Monsour's, Inc. breached the Asset Purchase Agreement.

4.   The plaintiff Monsour's, Inc. suffered no injury at the hands of the defendant.

5.   Alternatively, if the plaintiff Monsour's, Inc. did indeed suffer injury the injury was neither to the extent nor in the amount alleged.

6.  The plaintiff Monsour's, Inc. failed to mitigate its damages.

7.  The plaintiff Monsour's, Inc.'s damages are speculative.

8.  The plaintiffs are not entitled to prejudgment interest because the damages, if any, are un-liquidated.

9.  The plaintiffs are not entitled to recover attorneys fees.

**b.**      **Essential Elements of Defendant's First Affirmative Defense.**      Subject to the court's determination of the law that applies to this case, the defendant believes that in order to prevail on this affirmative defense, the defendant has the burden of proving the following essential elements:

The plaintiffs failed to take all reasonable and necessary steps to minimize *its claimed* loss.  One is injured as a result of a breach of contract is under an affirmative duty to exercise due care to avoid loss and minimize damages.  Damages are not recoverable for harm that the injured party could have forseen and avoided by reasonable effort without undue risk.

**8.      FACTUAL ISSUES.**

One or more of the parties believe that the following material issues will need to be resolved at trial by the trier of fact if summary judgment is not granted:

1.  Was the contract breached by defendant?

2.  What are plaintiffs' damages?

3.  Was the contract breached by the plaintiff?

4.  Did the plaintiff mitigate its damages?

5.  Did the parties modify the terms of the Asset Purchase Agreement by subsequent oral agreement? (mixed issue of law and fact)

6.  Did the parties modify the terms of the Asset Purchase Agreement by their conduct? (mixed issue of law and fact)

**9.    LEGAL ISSUES.**

One or more of the parties believe that the following are the significant legal or evidentiary issues that will need to be resolved by the Court in this case, whether on summary judgment motion or at trial:

1.  Are the plaintiffs entitled to prejudgment interest?

2.  Are the individual plaintiffs proper parties to this litigation?

3.  Are the plaintiffs' damages speculative?

4.  Are damages for the loss of a business available to plaintiffs under Missouri law?

5.  As the contract was drafted by defendant's attorneys, any and all ambiguities are to be construed against defendant.

**10.    DAMAGES.**

**a. Plaintiffs' Damages.**

a. Plaintiffs are entitled to damages from the breach of the food service agreement in the amount $716,414.35 plus statutory interest.

b. Plaintiffs are entitled to damages resulting from the breach of the produce section of the agreement in the amount of $1,204,350.00 plus statutory interest for the 6 year term from the covenant not to compete.

c. Plaintiffs are entitled to attorneys fees incurred through the prosecution of this matter.

**b. Defendant's Damages.**

None Claimed.

**11. NON-MONETARY RELIEF REQUESTED IF ANY.**

None.

**12. AMENDMENTS TO PLEADINGS.**

None

**13. DISCOVERY.**

Under the scheduling order and any amendments, all discovery was to have been completed by April 28, 2006. Discovery is incomplete in that defendant seeks to depose plaintiffs' accounting expert, Marshal Hull. Plaintiffs seek to depose defendant's accounting expert, Kurt G. Breitenbach, and complete a Rule 30(b)(6) deposition of defendant's corporate representative.

Unopposed discovery may continue after the deadline for completion of discovery so long as it does not delay the briefing of, or ruling on, dispositive motions, or

other pretrial preparations.  Under these circumstances, the parties may conduct discovery beyond the deadline for completion of discovery if all parties are in agreement to do so, but the Court will not be available to resolve any disputes that arise during the course of this expanded discovery.

14. **WITNESSES AND EXHIBITS.**

a. **Final Witnesses and Exhibit Disclosures Under Rule 26(a)(3).**  The parties' final witness and exhibit disclosures pursuant to Fed. R. Civ. P. 26(a)(3) shall be filed no later than 21 days before trial.  With regard to each witness disclosed under Fed. R. Civ. P. 26(a)(3)(A), the disclosures shall also set forth the subject matter of the expected testimony and a brief synopsis of the substance of the facts to which the witness is expected to testify.  Witnesses expected to testify as experts shall be so designated.  Witnesses and exhibits disclosed by one party may be called or offered by any other party.  Witnesses and exhibits not so disclosed and exchanged as required by the Court's order shall not be permitted to testify or be received in evidence, respectively, except by agreement of counsel or upon order of the Court. The parties should bear in mind that seldom should anything be included in final Rule 26(a)(3) disclosures that has not previously appeared in initial Rule 26(a)(1) disclosures or a timely Rule 26(e) supplement thereto; otherwise, the witness or exhibits will probably be excluded at trial.  *See* Fed. R. Civ. P. 37(c)(1).

**b.** **Objections.**  The parties shall file any objections under Fed. R. Civ. P. 26(a)(3) not later than 14 calendar days before trial.  The Court shall deem waived any objections not timely asserted, unless excused by the Court for good cause shown.

**c.** **Marking and Exchange of Exhibits.**  All exhibits shall be marked no later than seven calendar days before trial.  The parties shall exchange copies of exhibits at or before the time they are marked.   The parties shall also prepare lists of their expected exhibits, in the form attached to this pretrial order, for use by the courtroom deputy clerk and the court reporter.  In marking their exhibits, the parties shall use preassigned ranges of numbered exhibits.  Exhibit Nos. 1-400 shall be reserved for plaintiffs; Exhibit Nos. 401-800 shall be reserved for defendant; Exhibits 801 and higher shall be reserved for any third party.  Each exhibit that the parties underline expect to offer shall be marked with an exhibit sticker, placed in a three-ring notebook and tabbed with a numbered tab that corresponds to the exhibit number. (OPTIONAL)  The parties shall prepare an adequate number of exhibit books, including one book containing the original exhibits, two copies for the Court and one copy for opposing counsel; one exhibit book shall be prepared for each juror if counsel intend to distribute exhibit books to jurors, subject to the approval, of course, of the trial judge.

**d.** **Designation of Deposition Testimony**.

**(1)**     **Written Depositions.**  Consistent with Fed. R. Civ. P. 26(a)(3)(B), any deposition testimony sought to be offered by a party other than to impeach a

testifying witness shall be designated by page and line in a pleading filed no later than 14 days before trial.  Any counter-designation in accordance with Fed. R. Civ. P. 32(a)(4), together with any objections to the designations made by the offering party, shall be filed no later than seven calendar days before trial.  The Court will not entertain any objections to deposition testimony unless and until the parties have attempted in good faith to resolve the dispute among themselves either in person or via telephone conference.  Where the Court must resolve disputes concerning presentation of deposition testimony at trial, the objecting party shall deliver a copy of the deposition to the trial judge no later than one business day before trial.  On this copy, those portions of the deposition that are intended to be presented at trial shall be marked by brackets in the margins with different colored highlighting.  Red highlighting shall be used for plaintiffs, blue highlighting shall be used for defendant, and yellow highlighting shall be used for any third party.

(2) **Videotaped Depositions.**  The paragraph immediately above applies to videotaped depositions as well as written deposition transcripts.  When, however, the parties require rulings outside the presence of the jury to facilitate a "clean" presentation of deposition testimony at trial, written transcripts, rather than videotaped transcripts, shall be presented in connection with the parties' objections.  A party who offers a videotaped deposition must edit the tape according to the designations and Court's rulings so that it can be played in a manner that will not delay the trial.

15.  **MOTIONS.**

   **a. Pending Motions.**

   The defendant has filed a motion for summary judgment to dismiss the claims of the plaintiffs Mark Monsour and Sheila Monsour because they are        not proper parties plaintiff.

   **b. Additional Pretrial Motions.**

   After the pretrial conference, the parties intend to file the following motions.

   Plaintiffs intend to file a motion for fees based upon defendant's failure to participate in mediation in good faith in that the individual with authority to settle the case did not appear at the mediation.

   The dispositive motion deadline as established in the scheduling order, and any amendments, is June 19, 2006.

   Consistent with the scheduling order filed earlier in this case, the arguments and authorities section of briefs or memoranda submitted in connection with all further motions or pretrial matters shall not exceed 30 pages, absent an order of the Court.

   **c. Motions Regarding Expert Testimony.**  All motions to exclude testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrel Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law, shall be filed 28 days before trial, but, if such a motion as a practical matter will be case-dispositive, or if an evidentiary hearing on

the motion is reasonably anticipated, then this deadline shall be set in accordance with the dispositive motion deadline stated above.

**d.Motions in Limine.**  All motions in limine, other than those challenging the propriety of an expert witness, shall be filed no later than 14 days before trial. Briefs in opposition to such motions shall be filed no later than seven days before trial.  Reply briefs in support of motions in limine shall not be allowed without leave of Court.

**16    TRIAL.**

**a.**  This case probably will not be set for trial until after all timely filed dispositive motions have been decided by the court

**b.**Trial will be by jury.

**c.** Estimated trial time is 10 days.

**d.**Trial will be in Wichita, Kansas, or such other place in the District of Kansas where the case may first be reached for trial.

**e.** Not all of the parties are willing to consent to the trial of this case being presided over by a U.S. Magistrate Judge, even on a backup basis if the assigned U.S. District Judge determines that his or her schedule will be unable to accommodate any trial date stated above.

**f.** Because of constraints on the judiciary's budget for the compensation of jurors in any case in which the Court is not notified of a settlement by **12:00 noon** on the day

before the trial is scheduled to commence, the costs of jury fees and expenses will be assessed to the parties, or any of them as the Court may order.

17    **SETTLEMENT.**

   **a. Status of Settlement Efforts.**

   None.

   **b. Mediation and/or Other Method of Alternative Dispute Resolution**.

   An unsuccessful mediation was conducted with Dennis Gillen serving as the mediator on May 10, 2006.  Mr. Gillen concluded the mediation early when it was conveyed to plaintiffs that an "unnamed family member" would not consent to participation in settlement negotiations with plaintiffs.

18.    **FURTHER PROCEEDINGS AND FILINGS.**

   **a. Status and/or Limine Conference**.  Relatively close to the date of trial, the trial judge may schedule a status and/or limine conference.

   **b. Trial Briefs.**  A party desiring to submit a trial brief shall comply with the requirements of D. Kan. Rule 7.6.  The Court does not require trial briefs, but finds them helpful if the parties anticipate that unique or difficult issues will arise during trial.

   **c. Voir Dire.**  Due to substantially differing views among judges of this Court concerning the extent to which counsel will be allowed to participate in voir dire, counsel are encouraged to contact the trial judge's law clerk or courtroom deputy (in accordance with the preference of the particular trial judge) to determine what, if

18

anything, actually needs to be submitted by way of proposed voir dire questions. Generally, proposed voir dire questions only need to be submitted to address particularly unusual areas of questioning, or questions that are likely to result in objections by the opposing party.

**d.Jury Instructions**.

(1)    Requests for proposed instructions in jury cases shall be submitted in compliance with Fed. R. Civ. P. 51 and D. Kan. Rule 51.1.  Under D. Kan. Rule 51.1, the parties and attorneys have the joint responsibility to attempt to submit one agreed set of preliminary and final instructions that specifically focuses on the parties' factual contentions, the controverted essential elements of any claims or defenses, damages, and any other instructions unique to this case.  In the event of disagreement, each party shall submit its own proposed instructions with a brief explanation, including legal authority as to why its proposed instruction is appropriate, or why its opponent's proposed instruction is inappropriate, or both. Counsel are encouraged to contact the trial judge's law clerk or courtroom deputy (in accordance with the preference of the particular trial judge) to determine that judge's so-called standard or stock instructions, e.g. concerning the jury's deliberations, the evaluation of witnesses' credibility, etc; it is not necessary to submit such proposed instructions to the Court.

**(2)**     Proposed instructions in jury cases shall be filed no later than three calendar days before trial.  Objections to any proposed instruction shall be filed no later than one business day before trial.

**(3)**  In addition to filing the proposed jury instructions, the parties shall submit their proposed instructions (formatted in WordPerfect 9.0 or earlier version) as an attachment to an Internet e-mail sent to the e-mail address of the assigned trial judge listed in paragraph II(E)(2)(c)  of the *Administrative Procedures for Filing, Signing, and Verifying Pleadings and Papers by Electronic Means in Civil Cases*.

**e. Proposed Findings of Fact and Conclusions of Law.**  If this case is tried to the Court sitting without a jury, in order to better focus the presentation of evidence, the parties shall file preliminary sets of proposed findings of fact and conclusions of law no later than seven calendar days before trial.  In most cases, the trial judge will order the parties to file final sets of proposed findings after the trial transcript has been prepared.

**19.   OTHER.**

**a. Conventionally Filed Documents.**  The following documents shall be served by mail and by fax or hand-delivery on the same date they are filed with the Court if they are conventionally, (i.e., not electronically), filed:  final witness and exhibit disclosures and objections; deposition designations, counter-designations, and objections; motions in limine and briefs in support of, or in opposition to, such motions; trial briefs; proposed voir dire questions and objections; proposed jury

20

instructions and objections; and proposed findings of fact and conclusions of law. In addition, a party filing a trial brief conventionally shall deliver an extra copy to the trial judge's chambers at the time of filing.

### b. Miscellaneous.

The Court usually will hold a status conference approximately one week prior to trial. Out-of-town counsel may appear by telephone.

The courtroom is equipped with a television, VCR, Elmo, easel and projector screen for your use. Counsel wishing to use other equipment should contact Carolyn Lary at least five days prior to trial.

The courtroom number is 161. Directly across from the courtroom are two attorney/witness rooms for your use.

The Court will hold a status conference approximately two to three weeks prior to trial.

### 20. POSSIBLE ADJUSTMENT OF DEADLINES BY TRIAL JUDGE.

With regard to pleadings filed shortly before or during the trial, (e.g. motions in limine, trial briefs, proposed jury instructions, etc.), this pretrial order reflects the deadlines that the Court applies as a norm in most cases. However, the parties should keep in mind that, as a practical matter, complete standardization of the Court's pretrial orders is neither feasible nor desirable. Depending on the judge who will preside over trial, and what adjustments may be appropriate given the

complexity of a particular case, different deadlines and settings may be ordered. Therefore, from the pretrial conference up to the date of trial, the parties must comply with any orders that might be entered by the trial judge, as well as that judge's trial guidelines and/or exhibit instructions as posted on the court's Internet website:  http://www.ksd.uscourts.gov/chambers

IT IS SO ORDERED.

Dated this 25th day of May, 2006, at Wichita, Kansas

                        s/ Monti Belot

                        _____

                        Monti L. Belot
                        U.S. District Judge

KMAZ Document No. 306630