IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK MONSOUR, SHEILA MONSOUR )
and MONSOUR'S, INC. )
)
                Plaintiffs, )   Case No. 05-1204-MLB
)
v. )
)
MENU MAKER FOODS, INC., )
)
                Defendant. )
_____)

### RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs, by and through their counsel of record, Dustin L. DeVaughn and Richard W. James of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., respond to Defendant's Motion for Summary Judgment.

### INTRODUCTION

Defendant filed this Motion for Summary Judgment alleging that the individual plaintiffs Mark and Sheila Monsour lack standing to sue. Defendant's motion is untimely because it addresses the propriety of the parties. The Court's Scheduling Order required that motions addressing the propriety of the parties should be filed by December 19, 2005.

Kansas law applies to the issues in this motion and nothing in the law of Kansas prevents a shareholder who has a "distinct and disproportionate injury" from suing a third party corporation for breach of contract. Defendant's arguments are not applicable in the present context because Mark and Sheila Monsour's suit against the defendant is distinguishable from standard "derivative

lawsuits." Also, plaintiffs were parties to the contract at issue and as parties (in their individual capacity) Mark and Sheila Monsour have standing.

## RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS[1]

1. Uncontroverted.

2. Uncontroverted.

3. Controverted. Sheila and Mark Monsour own the stock. (See Mark Monsour's Answer to Interrogatory 16 attached as Exhibit 1.)

4. Uncontroverted that defendant's statement represents a portion of the agreement between the parties.

5. Uncontroverted.

6. Controverted. The seller is defined in the opening paragraph of the agreement as "Monsour's, Inc. and Mark D. Monsour and Sheila D. Monsour." (See Asset Purchase Agreement attached as Exhibit 2.)

7. Controverted. Monsour's, Inc. is simply one of the sellers. This is made clear by the agreement in 6.1(3), which states "Sellers Mark D. Monsour and Sheila D. Monsour are individuals residing in the State of Kansas." (*Id.*)

8. Uncontroverted as to the applicable law regarding the contract. Controverted to the extent that defendant is asserting that Missouri law applies to anything other than the contract.

---

[1] Defendant has labeled this motion as a Motion for Summary Judgment. However, throughout the motion defendant raises the issue of the propriety of the parties and suggests that because the plaintiffs lack standing they should be dismissed. This is properly identified as a motion to dismiss. Defendant also argues that the individual parties are not the real parties in interest and thus should be dismissed. Defendant is simply attempting to circumvent the Court's scheduling order with this untimely motion. This argument will be addressed more fully below. However, because the court, in its discretion, may consider a motion to dismiss as a motion for summary judgment, Plaintiff offers its response to the statement of facts.

2

9. Uncontroverted. All of the plaintiffs including Mark and Sheila Monsour executed the contract. (See Signature Page of Asset Purchase Agreement attached as Exhibit 2.)

10. Uncontroverted.

11. Uncontroverted.

12. Uncontroverted that those are portions of the allegations contained with Count I.

13. Uncontroverted.

14. Uncontroverted that those are portions of the allegations contained with Count II.

15. Uncontroverted.

16. Uncontroverted that defendant wrongfully rejected produce and uncontroverted that this is a portion of the allegations contained within Count III.

17. Uncontroverted.

18. Uncontroverted that this is a portion of the allegations contained in Count IV.

19. Uncontroverted.

20. Uncontroverted but supplemented. Because of the Non-Compete clause in the agreement, plaintiffs were not able to mitigate their damages by selling the produce through Mark Monsour's contacts. In addition, Mr. Monsour remained an employee of Monsour's. (See Non-competition Agreement attached as Exhibit 3.)

21. Uncontroverted.

22. Uncontroverted.

23. Uncontroverted.

24. Controverted. The material cited for support does not support defendant's contention. Ms. Monsour stated that she did not know the value of her assets. (See Sheila Monsour's Answer to Interrogatory # 2 attached as Exhibit 4.)

25. Controverted. Defendant's cited support does not demonstrate what Sheila Monsour believed. She answered the interrogatory by stating that she signed the agreement because she was an owner of Monsour's. (See Sheila Monsour's Answer to Interrogatory #3.) The agreement itself identified Mark and Sheila Monsour as "sellers." (See First Paragraph of Asset Purchase Agreement attached as Exhibit 2.)

26. Uncontroverted.

27. Uncontroverted.

28. Controverted. Mark Monsour personally guaranteed the loans to Monsour's, Inc. In addition, buyer was adamant that Mr. Monsour sign the agreement in his individual capacity in addition to his position as President of Monsour's, Inc. (See Mark Monsour's Answer to Interrogatory #9 attached as Exhibit 1.)

## ADDITIONAL STATEMENT OF FACT

29. The Monsours personally guaranteed the loans to Monsour's, Inc. Therefore, they have a separate and distinct injury that was a direct result of defendant's breach of the agreement. *Id.*

## ARGUMENT AND AUTHORITIES

I.   **DEFENDANT'S MOTION IS OUT OF TIME.**

The Court issued its scheduling order on October 19, 2005. In the Order, the Court set December 19, 2005 as the deadline for filing any motions for "venue, **propriety of the parties**, or failure to state a claim." (See Scheduling Order, (Doc 13) (emphasis added)). Defendant has captioned the present motion as a Motion for Summary Judgment, but the arguments all reference the propriety of the parties. For example, in its motion defendant states "Mark and Sheila are not proper plaintiffs to this litigation." (Defendant's Motion for Summary Judgment, p. 7.) Defendant also states that "Monsour's, Inc. is the real party in interest, and the individual plaintiffs have no standing to bring any of the claims they assert." (*Id*. at p.8.) Defendant argues that the individual plaintiffs "must be dismissed from this action." (*Id*. at p. 11.) Defendant continues to argue for dismissal when it states, "If Kansas law were to be applied in this case, the individual plaintiffs would not be proper parties, and their claims would and must be dismissed." (*Id*. at p.13.)

Labeling the present motion as a motion for summary judgment is an attempt by the defendant to circumvent the Court's Scheduling Order. As the Court is well aware, the Scheduling Order is not issued until after the parties have had a chance to confer about the relevant dates and to submit a Report of Parties Planning Conference. The Order represents the Court's mandate, but the Court is not acting in a vacuum. The dates in the scheduling orders are created only after the parties have reached a tacit agreement. In this case, the

5

deadline for filing a motion to dismiss because of improper parties passed nearly six months before defendant filed this motion. The dates in the order were agreed upon by defendant.

In this district, our judges have declared that failure to comply with the court's scheduling order is "unacceptable." *Shell v. City of Kansas City Kansas*, 1992 WL 696526 April 1, 1992 at * 1. In addition, the scheduling order is mandatory and "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." Fed. R. Civ. P. 16(b).

In addition, since the entry of the scheduling order, the parties have agreed on a pre-trial order. Because of this, plaintiffs are hampered in their ability to respond to this motion. If defendant's motion raises questions regarding claims that should have been raised in the complaint, plaintiff is now barred from moving the court for an order to permit an amendment because the time for amending the petition has passed and the Pre-Trial Order has been entered.

In *Smith v. United Airlines*, No. 84-4266, 1989 WL 21033, at *1 (D.Kan. Feb. 22, 1989), defendant filed a motion challenging the propriety of the parties after the deadline had passed. Plaintiff raised the issue of the deadline and Judge Saffels agreed and denied the motion because it was untimely. *Id*.

Perhaps more problematic than these other hurdles, is the fact that discovery is now complete. Plaintiff does not and will not have the opportunity to explore defendant's contentions. At this point in the litigation, plaintiff will not have any opportunity to depose any of defendant's representatives to determine

why they insisted that Mark and Sheila Monsour sign the agreement in their individual capacity as well as in their capacity as officers. It may be that defendant has knowledge of specific assets owned by the Monsour's that were made a part of the sale. Because this issue is being raised at this stage in the litigation, (6 months after the deadline for asserting motions to dismiss for improper parties and 2 months after the close of discovery) problems have arisen that could have been resolved had this motion be filed at the proper time. This is the sort of "unacceptable conduct" that proper adherence to the scheduling order is meant to avoid.

These are the sorts of problems that are associated with filing motions challenging the propriety of the parties after the bulk of the litigation has concluded. Defendant should not be permitted to place the thin veneer of summary judgment on a motion that is clearly a motion to dismiss because of improper parties. This court should see through this attempt to circumvent the Court's order and deny defendant's motion.

## II.   SUMMARY JUDGMENT STANDARDS

In this case, defendant labels the motion as a motion for summary judgment, but the core arguments are addressed as a motion to dismiss because the parties are not proper. Defendant fails to argue that there remains no genuine issue of material fact. However, for purposes of this motion plaintiff will demonstrate that Kansas law does provide a cause of action for the Monsours individually.

Rule 56 governs summary judgment. It is axiomatic that summary judgment shall be granted, "where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . " Fed. R. Civ. P. 56(c). However, this is not the end of the discussion. The party seeking summary judgment bears the burden of demonstrating an absence of a genuine issue of material fact. *Sally Beauty Co. v. BeautyCo, Inc.*, 304 F.3d 964 (10th Cir. 2002). The Court also stated that "a fact is "material" if it "might affect the outcome of the suit under the governing law," and a "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Occusafe v. EG&G Rocky Flats, Inc.*, 54 F.3d 618 (10th Cir. 1995). The cautious nature of courts in granting summary judgment is justified "[b]ecause a summary judgment denies one of the litigants his or her right to a trial, courts have generally construed the pleadings liberally in favor of the party opposing the motion." *Richards*, 19 Kan.App.2d 950, 957, 879 P.2d 638, 644 (citing *Oller v. Kincheloe's*, Inc., 235 Kan. 440, 448, 681 P.2d 630 (1984).

### III.   KANSAS LAW IS APPLICABLE FOR DEFENDANT'S MOTION.

Defendant presents arguments in its motion under Kansas and Missouri law without any argument about which state law actually applies to the present motion. It is clear from long standing precedent throughout the federal courts in every state that a Federal Court sitting in diversity applies the law of the forum unless the forum's choice of law rules point to different forum's law. In *Pepsi-Cola Bottling Company of Pittsburgh, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th

Cir. 2006), the Tenth Circuit declared unequivocally that in a diversity action, we apply the substantive law of the forum state, including its choice of law rules. *Id.* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495-97 (1941).

In *Pepsi-Cola*, the Tenth Circuit recognized that the Kansas choice of law rules recognized the right of contracting parties to agree to a choice of law clause in a contract. The plaintiff in that case sued in Kansas federal court and the Court applied New York law because the contract contained a choice of law clause. The parties chose New York as the state whose laws would govern the interpretation and enforcement of the contract. *Id.* However, the Kansas Court applied Kansas substantive law to the other claims in the case. For example, Kansas law governed the general tort claims and claims for breach of fiduciary duties. *See Id.* at 1264, 1266. Any federal court sitting in diversity applies its own procedural rules. Therefore, the applicable law is the law of the forum. Thus, this court should apply Kansas law in deciding whether to grant Defendant's Motion for Summary Judgment.

### IV.    UNDER KANSAS LAW, MARK AND SHEILA MONSOUR ARE PROPER PARTIES TO THE LITIGATION.

Defendant states that "[a]lthough all of the plaintiffs executed the agreement, it is clear from the face of the Asset Purchase Agreement that the 'Seller' was Monsour's, Inc." (Defendant's Motion for Summary Judgment, p. 7.) This is not a candid statement. Defendant is referring to ¶ 6.1(2) which states that "Seller Monsour's, Inc., is a corporation in good standing under the laws of the State of Kansas. " (Exhibit 2, p. 4.)    However, Defendant ignores the statement in ¶ 6.1(3) of the contract that states that "Sellers Mark D. Monsour

9

and Sheila D. Monsour are individuals residing in the State of Kansas." *Id.* In fact, the opening paragraph of the contract defines the parties.

The contract also provides that the agreement was made by "Menu Maker Foods, Inc. ("BUYER"), and Monsour's, Inc. ("Monsour's") <u>and Mark D. Monsour and Sheila D. Monsour of 112 N. Elm, Pittsburgh, Kansas</u>, 66762 (collectively "*Seller*")." *Id.* at 1. (emphasis added). The question of the identity of the seller is not clear in the way that defendant suggests. Defendant drafted this contract[2] and a foundational concept in the law of contracts that any unclear or ambiguous words in a contract are construed against the drafter. *Employer's Reinsurance Co. Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757 (10th Cir. 2004).

Additionally, the contract specifically includes Mark and Sheila Monsour in their individual capacity. The signature page of the contract had separate places for execution by Mark Monsour, President of Monsour's, Inc. and Mark Monsour and Sheila Monsour. (Exhibit 2, pg. 9.) Defendant intended that Mark and Sheila Monsour be parties to the contract in their individual capacity. If defendant did not intend that Mark and Sheila be parties, then Mark Monsour's signature as President of Monsour's, Inc. would have sufficed. This discrepancy raises a question of fact as to what the parties intended. Plaintiff asserts that the four-corners of the contract offer evidence of the intent of defendant that Mark and Sheila Monsour would be essential parties to the contract and would thus have a cause of action for that contract. Because reasonable minds may differ in this regard, the court should deny defendant's motion.

---

[2] See Pretrial Order, Stipulations, p. 2 ("The Asset Purchase Agreement was drafted and prepared by defendant's attorneys.").

10

Perhaps more importantly, Kansas law provides that because Mark and Sheila Monsour are parties to the contract as individuals, they have standing to sue. *Bodine v. Orange County Rural Water Dist. No. 7*, 263 Kan. 418, 949 P.2d 1104 (1997); *Stockman v. Unified Gov't of Wyandotte County*, 27 Kan.App.2d 453, 6 P.3d 900 (2000). Defendant asks this Court to ignore the law in Kansas, but offers no overarching rationale for denying a party to a contract the right to seek redress for breach of that contract. This is not what was intended when courts have prevented direct shareholder lawsuits. This is a distinguishable situation. In this case, the shareholders are parties to the contract at issue. Because of their status as parties, Mark and Sheila Monsour have standing and this court should deny defendants to attempt to take away their right to a trial.

## V.   THE PROHIBITION AGAINST DIRECT SHAREHOLDER LAWSUITS DOES NOT APPLY TO THE CASE AT BAR.

Shareholders who lack a distinct and unique injury traditionally cannot sue for injury to the corporation. However, this prohibition is applicable in the context of suits **against the directors/officers of the corporation that has been injured**. For example, in a case cited by defendant, *Geer v. Cox*, Plaintiff was a shareholder of Transfinancial. *Geer v. Cox*, 242 F.Supp.2d 1009, 1014 (D.Kan. 2003). Mr. Geer brought a direct action against the directors and officers for injury to Transfinancial (the same company in which he held shares). *Id*. This is, of course, what the prohibition against derivative suits was designed to prevent. Specifically, courts prohibit derivative suits against a corporation by its own shareholders in order to "prevent[ ] the danger of multiplicitous suits by each shareholder." *Safety Technologies v. BioTronix 2000, Inc.*, 136 F.Supp.2d 1169,

1173, n.3 (D.Kan. 2001). In addition, derivative lawsuits are prohibited because courts want to avoid a multiplicity of suits and any "interfere[ence] with a fair distribution of recovery." *Richards v. Bryan*, 19 Kan.App.2d 950, Syl. ¶ 12, 879 p.2d 638 (1994).

The case at bar is completely distinguishable from the typical case of shareholder derivative lawsuits. One of the rationales for preventing direct shareholder suits is that if a corporation is harmed, all of the shareholders would have claims. Courts have prevented these kinds of cases to avoid the duplication of suits by shareholders. In addition, if many shareholders were permitted to sue the corporation, it would affect the fair distribution of the proceeds of the suit. These are some of the reasons why courts have prevented shareholder suits. Yet, this is not the situation in the case at bar.

Plaintiffs Mark and Sheila Monsour are the only shareholders. This case will resolve the issues raised by the defendant's breach and the defendant will not face any additional suits. In addition, the recovery for breach is only recoverable by Mark and Sheila Monsour and therefore, no other shareholders will be left without a recovery. In addition, the Monsours are not suing the corporation in which they are shareholders; they are suing a separate third party corporation. This is not the sort of case that is prohibited under Kansas law and the court should deny defendant's motion.

### V. THE MONSOURS WERE UNIQUELY INJURED BY DEFENDANT'S BREACH.

Plaintiff cites *Richards*, for the proposition that a shareholder lacks standing to sue for injury to the corporation. (Defendant's Motion for Summary

12

Judgment, p. 11) However, not only did that case involve a shareholder suing his own corporation, but the case recognizes situations in which a shareholder of a corporation will have standing to sue for injury to the corporation. The Court held that a shareholder may litigate as an individual "if the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder." *Richards*, 19 Kan.App.2d at 962. In this case, the Monsours were uniquely harmed by defendant's breach. The Monsours personally guaranteed the debts of the company. (Mark Monsour's Answer to Interrogatory 9 attached as Exhibit 1.) This is a distinct injury to them as individuals rather than as shareholders. In a typical situation, a corporation will enter into many contracts with other entities. If the other entity breaches the contract, the corporation will be harmed. The injury may even bankrupt the company or put it out of business. In those cases, the shareholders are only harmed because the value of the shares is diminished. In that situation, courts have held that the individual shareholders do not have standing to sue for injury to the corporation. The injury to the shareholder is simply <u>derivative</u> of the harm to the corporation. This is not the case in this matter.

In contrast, because the Monsours guaranteed the loans to Monsour's, Inc. they have been harmed uniquely or disproportionately. (Statement of Facts ¶ 29.) If the Monsours did not guarantee the loans to the company, then the company would have been harmed and the shares value would have been diminished, but the debts of the corporation would have been the responsibility of the corporation. In that situation, the Monsours would have been harmed but not

in any way beyond their capacity as shareholders. However, in the present case, the Monsours were forced to personally guarantee the loans to the corporation and they were injured in a unique and devastating manner. They were forced to deal with the repayment of the company debt. Shareholders in a corporation are not exposed to this harm. Mark and Sheila Monsour were harmed and damaged in their individual capacity rather than simply as shareholders and thus have standing to sue. Defendant fails to point to any cases in Kansas where a shareholder guaranteed the debts of the company and was denied standing to sue in his individual capacity for injury that was unique to him. The law in Kansas does not prevent suits by shareholders who have a distinct injury separate from the injury to the corporation. *Richards*, 19 Kan.App.2d at 962.

## CONCLUSION

WHEREFORE for the above and foregoing reasons, plaintiff requests that this court deny defendants motion for summary judgment.

Respectfully Submitted,

<u>/s/ Dustin L. DeVaughn</u>
Dustin L. DeVaughn, #16559
Richard W. James, #19822
Donald H. Snook, #21775
*Attorney for Plaintiffs*
McDONALD, TINKER,
SKAER, QUINN & HERRINGTON, P.A.
R.H. Garvey Building
300 West Douglas Avenue, Suite 500
P.O. Box 207
Wichita, KS 67202-2909
Telephone: (316) 263-5851
Fax: (316) 263-4677
Email: <u>ddevaughn@mtsqh.com</u>
<u>rjames@mtsqh.com</u>
<u>dsnook@mtsqh.com</u>

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of June, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

John Val Wachtel
Alex Mitchell
Klenda, Mitchell, Austerman
 & Zuercher,
Suite 1600, 201 North Main,
Wichita, KS 67202
Tele: 316.267.0221
Fax: 316.267.0333
jvwachtes@kmazlaw.com
Attorney for Defendant

Jeffrey Eastman
Keleher & Eastman Law Firm
403 N.W. Englewood Rd.
Gladstone MO 64118
Business Tele: 816.452.6030
Fax: 816.455.0969
Home: 816.436.1506
Cell: 816.213.0819
jse@keleher-eastman.com
Attorney for Defendant

/s/ Dustin L. DeVaughn
Dustin L. DeVaughn, #16559
Richard W. James, #19822
Donald H. Snook, #21775
*Attorney for Plaintiffs*
McDONALD, TINKER,
SKAER, QUINN & HERRINGTON, P.A.
R.H. Garvey Building
300 West Douglas Avenue, Suite 500
P.O. Box 207
Wichita, KS 67202-2909
Telephone: (316) 263-5851
Fax: (316) 263-4677
Email: ddevaughn@mtsqh.com
    rjames@mtsqh.com
    dsnook@mtsqh.com