## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARK MONSOUR, SHEILA MONSOUR, )
and MONSOUR'S INC.,                          )
                                             )
                        Plaintiffs,          )
                                             )
vs.                                          )     Case No. 05-1204-MLB
                                             )
MENU MAKER FOODS, INC.,                      )
                                             )
                        Defendants.          )
_____)

### REPLY TO PLAINTIFFS' AMENDED RESPONSE TO DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

COMES NOW the defendant, by and through its attorney of record, John Val Wachtel of

Klenda, Mitchell, Austerman & Zuercher, L.L.C., and for its Reply to Plaintiffs' Amended

Response to Defendant's Motion for Summary Judgment, states:

### The Statements of Fact

In their Amended Response to Defendant's Motion for Summary Judgment (hereinafter

"Amended Response") the individual plaintiffs do not controvert any material issue of fact. The

individual plaintiff's do add an "Additional Statement of Fact" at which they state that the

individual plaintiffs personally guaranteed loans to Monsour's, Inc., and that "Therefore, they

have a separate and distinct injury that was a direct result of defendant's breach of the

agreement." (*See* Amended Response at ¶ 29.) The individual plaintiffs do not allege that the

defendant required the individual plaintiffs to execute any personal guaranties. The defendant

argues that under Kansas law, signing personal guaranties of corporate debt does not give rise to

a cause of action by the guarantors. It is also interesting to note that while the individual

Dockets.Justia.com

plaintiffs state that they signed guaranties of corporate debt; nowhere in their additional statements of fact do they claim injury thereby.

Summary judgment "… shall be rendered where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. In the present case all issues of material fact are uncontroverted. The issue(s) presented by the defendant in its motion for summary judgment are ripe for resolution.

## ARGUMENT AND AUTHORITIES

### I.  The Defendant's Motion is Properly Filed

In Section I of the individual plaintiffs' Amended Response, plaintiffs argue that the defendant's motion for summary judgment is not timely filed. As support for the argument they posit that the court's Scheduling Order set December 19, 2005, set the deadline for filing any motions regarding venue, propriety of the parties or failure to state a claim. The plaintiffs further argue that the defendant's Motion for Summary Judgment is a disguised motion regarding propriety of the parties and/or a motion to dismiss for failure to state a claim upon which relief can be granted. (Amended Response at Pp. 5-7.) The plaintiffs are misguided.

On December 6, 2005, the plaintiffs responded to the defendant's first interrogatories and first request for production of documents. (*See* Notice of Service of Plaintiffs' Response to Discovery, Doc. #23.) Between December 13, 2005 and 15, 2005, the plaintiffs took the depositions of defendant's employees Fields, Orr and Childs, defendant's former employee Fairchild, and the plaintiffs' identified expert witness Krueger. (*See* Notice(s) of Depositions, Doc. #19.) Due to scheduling problems, plaintiff Sheila Monsour's deposition was not taken

until December 20, 2005.  Due to additional scheduling difficulties, the depositions of plaintiff Mark Monsour and the corporate plaintiff Monsour's, Inc. were taken on March 14, 2006.  Had motions regarding propriety of parties or for failure of the plaintiffs to state a claim been filed before the depositions of all the plaintiffs were completed, plaintiffs would have cast the motions as motions for summary judgment, and would have argued that the motions were premature.

The defendant's pending motion is indeed one for summary judgment.  Kansas law, as more particularly discussed below, clearly provides that individual shareholders, absent special circumstances, cannot bring an action for damages arising out of a breach of contract with their corporation.  *Richards v. Bryan*, 19 Kan.App.2d 950, 961, 879 P.2d 639, 646 (1994).  Discovery has demonstrated that the injuries allegedly suffered by the plaintiffs are not actionable under either Kansas or Missouri law.  It was not until that discovery was complete that the defendant was able to craft and bring the pending motion for summary judgment.  Under the law and the facts unearthed, the plaintiffs are not proper parties, and what is more, under the applicable law they have not suffered actionable injury.  In such circumstances, a motion for summary judgment is the only remedy available to resolve these issues.

The plaintiffs also argue that because discovery is not complete they are "[without] opportunity to explore the defendant's contentions;" and that the plaintiffs "will not have any opportunity to explore any of the defendant's representatives to determine why they insisted that the plaintiffs sign the agreement in their individual capacity as well as in their capacity as officers.  (Amended Response, Pp. 6-7.)  No discovery on this issue is needed.

In the defendant's first interrogatories to Mark Monsour the following question was asked and answer given:

> **INTERROGATORY NO. 9**:  If you, as an individual, sold no assets to the Defendant under the Agreement, state your understanding of why you signed the Agreement in your individual capacity.
>
> **ANSWER**:  I had personally guaranteed Monsour's Inc.'s debts and defendant was adamant that I execute the Asset Purchase Agreement in case I owned any of the assets.

(*See* Mark Monsour's Answers to Menu Maker Foods, Inc.'s First Interrogatories, Interrogatory No. 9, attached to defendant's Memorandum in support of its motion for summary judgment as Exhibit F, hereinafter "Initial Memorandum.")   The plaintiff Sheila Monsour, who was not involved in the negotiation of the agreement between the parties, said the she was asked to sign the agreement simply because she was an owner of Monsour's Inc.  (*See* Sheila Monsour's Answer to Menu Maker Foods, Inc.'s First Interrogatories, Interrogatory No. 9, attached to defendant's Initial Memorandum as Exhibit D.)  Given that plaintiffs have been aware of these circumstances since at least December 6, 2005 – the date upon which the individual plaintiffs served their answers to defendant's first interrogatories – the argument that somehow the plaintiffs need more time to "explore" why the defendant required that the individual plaintiffs also sign the agreement is disingenuous.  The plaintiffs had months to "explore" this issue, and they chose not to.  The argument should be ignored.

The defendant's motion for summary judgment is indeed such a motion.  It is properly filed.  Arguments to the contrary are red herrings.  The motion for summary judgment, as more particularly discussed below, should be granted.

## II.  Choice of Law

### A.  Ambiguity

At Section III of their Amended Response the plaintiffs argue that this Court should apply Kansas law to the issues before it on summary judgment.  It is undisputed that the Agreement should be construed under the laws of Missouri.  (*See* ASSET PURCHASE

AGREEMENT, Section XI(C), Initial Memorandum, Exhibit A and ¶ 8 of Defendant's Statement of Facts, incorrectly cited in defendant's Initial Memorandum as ¶ 7.)   That Section of the Agreement, designating parties' choice of state law, is applicable here.

In their Amended Response, the plaintiffs suggest that the Agreement is ambiguous and therefore it must be construed against the defendant who drafted the Agreement.   (Amended Response, at P. 10)  Defendants general theory of law is correct; however; at both Kansas and Missouri law, doubtful language is not always construed against the drafter.

In *Wood River Pipeline Co*., the Kansas Supreme Court held that "[t]he principal that doubtful language in a contract is construed against the drafter was of little consequence here because of the particular circumstances of this case."   *Wood River Pipeline Co. v. Willbors Service Energy Co*., 241 Kan. 580, 587, 738 P.2d 866 (1987).  The "particular circumstances" in that case were that the parties were of equal bargaining power and each had the opportunity to examine the contract.  *Id*., at 587.

With respect to the circumstances surrounding reaching the Agreement in the present case, all parties were represented by counsel, and counsel for plaintiff Mark Monsour participated in the negotiations of the Agreement.   (*See* Deposition of Kevin F. Mitchelson,  P.5, L. 4 through P. 6, L. 21, attached hereto as Exhibit A and incorporated herein by reference.)  In the present case, the parties involved in the negotiations were sophisticated persons or entities, and the plaintiffs do not dispute this in their Amended Memorandum.   Under these circumstances, and under the applicable law, the Agreement is not construed against the defendant simply because the defendant's counsel did the drafting.

The same is true of Missouri.  In *Noromco Corp*., the Missouri Court of Appeals noted that the general rule of construing an ambiguous contract against the drafter did not apply

5

because the parties were "sophisticated business entities[,]" each functioned with "experienced counsel[,] and the negotiations were "adversary and prolonged." *Noromco Corp. v. Franchi Const. Co., Inc.*, 587 S.W.2d 311, 317 (Mo.App.Ed. 1979). Thus the Agreement is not construed against the defendant under Missouri law simply because the defendant's counsel did the drafting.

Plaintiffs do not argue that they were of unequal bargaining power during negotiations for the Agreement, nor do they argue that the plaintiff Mark Monsour, who, with his counsel, negotiated the terms of the Agreement, was not a sophisticated businessman. They do not argue that they were not represented by experienced counsel, and they make no representations that the negotiations were neither adversary in nature nor prolonged in duration. They do not argue that they lacked ample opportunity to examine the Agreement before it was executed. In sum, the plaintiffs raise nothing that should persuade this court that the Agreement should be construed against the defendant.

### B.  Applicability of Kansas Law

Plaintiffs rely upon *Pepsi-Cola Bottling* as support for their position that Kansas law applies to the Agreement. *Pepsi-Cola Bottling* was an action by a Kansas independent bottler of soft drink products brought against a New York soft drink company and others, alleging *inter alia*, breach of contract. *Pepsi-Cola Bottling Company of Pittsburg, Inc., v. PEPSICO*, 431 F.2d 1241 (10th Cir. 2005.)  The plaintiff and PEPSICO had entered into an Exclusive Bottling Appointment ("Appointment")  under which the plaintiff was granted certain rights with respect to bottling Pepsi products. *Id.*, at 1248-1249.  One of the terms of the Appointment was that the Appointment and all of its terms were to be construed under the laws of New York. *Id.*, at 1249. The court the noted that in diversity actions federal courts apply the substantive law of the forum

state, "including its choice of law rules." *Id*., at 1255 (internal citations omitted). The court pointed out that "in contract based claims Kansas choice of law rules honor an effective choice of law by the contracting parties." *Id*., (internal citation omitted). The court concluded that due to the choice of law claims in the Appointment, New York law applied to the claims made for breach of contract and to the third-party beneficiary claims.. *Id*.

In the present case, all plaintiffs have made only breach of contract claims. The plaintiffs' reliance upon *Pepsi-Cola Bottling* is misplaced, avails them nothing, and is contrary to plaintiffs position regarding choice of law. Under the choice of law language in the Agreement, and under the holding in *Pepsi-Cola Bottling*, Missouri law governs the breach of contract claims.

### III.  The Plaintiffs Have No Claims

#### A.  The Missouri Standard

The general rule in Missouri is that "[a] shareholder is without standing to sue in his individual capacity for damages to the corporation." *Sequa Corporation v. Cooper*, 128 S.W.3d 69, 75 (Mo.App. E.D. 2004), citing *Warren v. Mercantile Bank of St. Louis, N.A.*, 11 S.W.3d 621, 622, (Mo.App. E.D. 1999). In Missouri, this is so even if all of the shareholders join in the suit and the corporation does not have any creditors. *See*, *Cook v. Cook*, 143 S.W.3d 709, 712 (Mo.App. W.D. 2004).

In the present case the plaintiffs allege that they have individual claims against the defendant which are somehow distinct from and disproportionate to those of the corporate plaintiff, simply because they had executed personal guaranties of corporate debt and when the defendant breached the contract they, evidently had to make good on one or more of the

guaranties, or that judgments were entered against them on one or more of the guaranties. Missouri has directly addressed the issues framed by the plaintiffs.

*Around The World Importing, Inc*. was an action brought by that corporation and its officers and shareholders sounding in negligence, fraud and negligent performance of an oral contract. *Around The World Importing, Inc. v. Mercantile Trust Company*, N.A., 795 S.W.2d 85, 86 (Mo.App. E.D. 1990). Around The World was a new company which sought start-up financing. *Id*., at 87. A loan was made; however as a condition, the lender required two officers of the company and their wives to sign personal guaranties of the loan. *Id*. The company failed, and the personal guarantors brought suit against the lending institution alleging fraud, negligence and misrepresentation. *Id*., at 90. The Court of Appeals found against the personal guarantor plaintiffs. The Court found the applicable Missouri law as follows:

> A shareholder is without standing to sue in his individual capacity for damages to the corporation. [In this case] the loan was made to the corporation. [The individual plaintiffs] were required to sign personal guarantees because of the then current financial condition of the company and because they were the only officers, directors and shareholders. Mercantile dealt with [the individual plaintiffs] as representatives of ATW and not as individuals. Any lost profits were sustained by ATW; any damage to credit was suffered by the corporation.

*Id.*, at 90 (internal citations omitted). Missouri refuses to recognize claims for corporate guarantors as individuals even in fraud and negligence cases. In *Around the World*, the injuries to the individual plaintiff guarantors were exactly the same as the injuries to the corporation. What is more, the injuries suffered among the individual guarantors were exactly the same. Under Missouri law, the plaintiffs have no claim for damages against this defendant.

**B. The Kansas Standard**

The general rule in Kansas is that a corporate shareholder may not bring suit in his or her individual capacity to recover damages for injury suffered directly by the corporation of which

he or she is a shareholder. *Richards v. Bryan*, 19 Kan.App.2d 950, 961, 879 P.2d 639, 646 (1994). The Kansas Court of Appeals has held that:

> A shareholder may only litigate as an individual if the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation. *Bagdon*, 916 F.2d at 383, *Moran v. Household Intern., Inc.*, 490 A.2d 1059, 1070 (Del.Ch. 1985.)

*Id*). (See also, *Safety Technologies, L.C. v. Biotronix 2000, Inc.*, 136 F.Supp.2d 1169, 1174 at FN 3 (D.Kan. 2001) and *Carson v. Lynch Multimedia Corporation*, 123 F.Supp.2d 1254, 1259 (D.Kan. 2000).)

Kansas recognizes an exception to this rule in the case of closely held corporations. *Richards,* 19 Kan.App.2d at 966, 879 P.2d at 646.

> [I]f a corporation is closely held, a court, in its discretion may treat an action raising derivative claims as a direct action if it finds to do so will not (1) unfairly expose the corporation to a multiplicity of actions; (2) materially prejudice the interests of creditors in the corporation; or (3) interfere with a fair distribution of the recovery among all interested persons.

*Id*. The exception is not applicable here. In the present case, Monsour's, Inc., the corporate plaintiff and the individual plaintiffs – each alleging the same claims of breach and the same damages have brought the action. That being so, then, at Kansas law, "[a] shareholder may only litigate as an individual if the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation." *Id.* at 961, 879 P.2d at 646.

Plaintiffs argue that this case is somehow different from the cases cited hereinabove. They argue that because they have guaranteed loans on behalf of Monsour's Inc., and have been forced to repay some of those loans, they have suffered injury which is "unique" and "devastating." The plaintiffs do not state how their injuries are unique and devastating. The

defendant, they argue, has failed to cite any Kansas cases in which a shareholder who guaranteed the debts of his company was denied standing in his individual capacity to sue for injury that was unique to him.  There being no Kansas cases, they argue, then Kansas law does not prevent the individual plaintiffs from bringing this litigation.

The defendant has found no Kansas cases in which the issue as framed by the plaintiffs has been directly addressed.  The issue has been addressed in other jurisdictions, and the majority of decisions hold that no right to sue exists on behalf of individuals who guarantee corporate debt.

In a recent case arising out of Utah, the Tenth Circuit Court of Appeals had an opportunity to consider Utah law in a case in which a creditor of a corporate borrower brought suit against the borrower and its corporate shareholder guarantors.  *Manheim Automotive Financial Services, Inc., v. Forshee Auto Sales, Inc*., 122 Fed.Appx. 925 (10th Cir. 2004.) Forshee Auto was a used car dealership, and Kenneth and Renee Forshee ("the Forshees") were its sole shareholders, officers and directors.  Forshee Auto entered into a floor plan with Manheim to finance the purchase of inventory, and Manhime required the Forshees to execute individual guaranties in its favor.  Ultimately Manheim filed suit against Forshee Auto and the Forshees alleging default on the obligations.  The Forshees in their individual capacities, filed counterclaims against Manheim alleging breach of contract.  *Id*., at 927.  Ultimately Manheim moved for summary judgment on the Forshees' claim.  Manheim argued that the Forshees, because they were shareholders, did not have standing to assert the counterclaims because the claims for breach of contract belonged to Forshee Auto.  *Id., at* 928.  Ruling in favor of Manheim, the Tenth Circuit recognized that at Utah, law, "a shareholder may bring an individual cause of action if the harm to the corporation also damaged the shareholder as an individual

rather than [as] a shareholder." *Id*., citing *Stocks v. United States Fid. & Guar. Co*., 3 P3d 722,

724 (Utah Ct.App. 2000).   The court went on to note that "under Utah law 'it is well settled that

even though a shareholder owns all or practically all, of the stock in a corporation such fact does

not authorize him to sue as an individual for a wrong done by a third party to the corporation."

*Id*., at 929, citing *Stocks,* 3 P.3d at 723.   An exception to the rule is that a shareholder may bring

an individual cause of action if the harm to the corporation also damaged the shareholder as an

individual rather than a shareholder.   The exception, "applies to cases where there is a violation

of a duty arising out of contract or otherwise, and owed directly to the shareholder."   *Id*., citing

*DLB Collection Trust ex rel Helgesen & Waterfall v. Harris*, 893 P.2d 583, 597 (Utah Ct. App.

1996) the court noted that the Utah Court of Appeals rejected the assertion of standing by a

corporate stockholder who was also a joint-guarantor of the corporation's debts even though the

shareholder had "suffered losses as a result of his status as a shareholder and joint guarantor."

*Id*.  The court found that *Harris* was consistent with other cases which had addressed this issue.

After thoroughly discussing Utah law on the issue, the court noted that in the response to the

summary judgment motion the Forshees had failed to provide any evidence for their claim that

they had suffered actionable individual injuries, and had relied upon only conclusory allegations

which were woefully insufficient to defeat Manheim's motion for summary judgment.   The

motion for summary judgment was granted  *Id*., at 931.

Arising in Nebraska, *Wells Fargo AG Credit Corp. v. Batterman*, 229 Neb. 15, 424

N.W.2d 870 (1988) involved loans to a farming corporation for which the corporate shareholders

had given personal guaranties.  *Id.* at 18.  When the farming corporation ultimately failed, Wells

Fargo brought suit on the personal guaranties.  *Id*.  The Battermans made claims against Wells

Fargo under third party beneficiary concepts.  The court held that a stockholder may not bring an

action in his own name for a wrong done to the corporation. *Id*. at 19. "The general rule is that actions to enforce corporate rights or to redress injuries to the corporation cannot be maintained by a stockholder in his own name. The injury in such instances is to the corporation and it does not give an individual right of action to a shareholder." *Id*. An exception to that general rule exists which allows such suits in "a situation where a shareholder's loss is separate and distinct from that of other shareholders of the corporation or where there may be a special duty owed by a wrongdoer to a shareholder." *Id*. at 20. (Thus, the Nebraska law parallels Kansas law.) The court went on to note that the Battermans' claim contained no allegations which would exempt them from the general rule. *Id*. The court concluded that "[b]y itself a shareholder's status as a guarantor for the debt of the corporation in which the shareholder owns stock does not entitle the shareholder to maintain an action against a third party for injury to the corporation." *Id*. The court found no special circumstances which allowed Battermans to sue base upon their corporate guarantees.

Colorado law is similar. In *Nicholson v. Ash*, 800 P.2d 1352 (1990) the Court of Appeals concluded that a stockholder's status as a guarantor of corporate debt did not confer upon him a right to maintain an individual action against the directors of his corporation. Nicholson brought individual claims against directors of a corporation in which he was a stockholder alleging breach of fiduciary duty. He asserted that he had standing to pursue these claims because of his guaranty of certain corporate debts. The court disagreed *Id*., at 1353. Like Kansas, the general rule in Colorado is that a stockholder cannot maintain a personal action against a third party whose action causes injury to the corporation. *Id*., at 1356. The reasoning for this rule is that if the corporation has suffered direct injury, any damage to the stockholder is indirect, and such damage is normally reflected in decreased stock value. In addition, a rule prohibiting such

claims avoids a multiplicity of suits against third party defendants. *Id*. Under Colorado law, "a stockholder may maintain a personal action in his capacity as a stockholder only if the actions of the third party that injure the corporation result from a violation of a duty owed to him as a stockholder and that cause him injury as a stockholder unique to himself and not suffered by other stockholders." *Id*. at 1357. Finding nothing in the plaintiff's injuries unique from other shareholders, the court denied the appeal.

New Jersey has also addressed the issue in *Pepe v. General Motors Acceptance Corp*. 254 N. J. Super, 662, 604 A2d 194 (1992). In *Pepe*, a corporation had borrowed from GMAC for floor plan financing, dealership acquisition and other matters. GMAC required the individual shareholders to guarantee the corporate financing. *Pepe*, 604 A.2d at 195-96. Following the collapse of the corporation, the plaintiff shareholder guarantors brought suit alleging some eleven causes of action. *Id*., at 195. In finding for the defendant, the court acknowledged the correctness of the lower court's determination that the causes of action pled by the shareholder guarantors asserted losses for the destruction of their corporation, and as such the claims are derivative which would ordinarily be available to the corporation. *Id*. at 196. The stockholders argued that their role as guarantors established a special relationship creating duties owed directly to them, thus allowing suit and recovery. The court rejected that argument determining that the fact that the shareholders had given mortgages and other collateral to GMAC to secure financial obligations did not render their claims any less derivative. *Id*. Ultimately the shareholders' claims were dismissed.

The defendant in the present case recognizes that other jurisdictions, when confronted with this issue, have reached different conclusions. In *Davis v. United States Gypsum*, 415 F2d 659, 662 (3rd Cir. 1971) the court held that where the corporation has conspired with others to

damage an individual and does so, a cause of action arises in the individual shareholder. The Supreme Court of Indiana in *Sacks v. American Fletcher National Bank And Trust Company*, 358 Ind. 198, 279 N.E.2d 807, 812 (1972) found that depending upon the circumstances, a personal guaranty of the debts of a corporation can create a cause of action of a shareholder. These cases are however in the minority. Defendant believes that if confronted with this issue, the Kansas Supreme Court would find no such right to exist.

## CONCLUSION

Kansas has never defined the exact meaning of distinct and disproportionate injury. In *Safety Technologies, L.C. v. Biotronix 2000, Inc*., 136 F. Supp. 2d 1169 (D. Kan. 2001) the United States District Court held that a plaintiff shareholder was properly dismissed from the case because he suffered no distinct and disproportionate injury as a result of a third-party's allegedly fraudulent act against his corporation. *Biotronix*, 136 F.Supp.2d 1172-73 and FN3, citing *Mattingly, Inc. v. Beatrice Foods Co*., 1983 WL 2184 (D. Kan. Aug. 10, 1983); Statement (Second) of Torts § 549 cmt d (1977) and *Richards v. Bryan*, 19 Kan.App.2d 950, 961, 879 P.2d 638 (1994). Although the court affirmed the dismissal of the plaintiff for lack of standing, the court provided no explanation as to why his injury was not distinct or disproportionate. *Id.* at 1179.

The case law on the issue of distinct and disproportionate injury for purposes of standing in Kansas seems to arise in the main in the context of a shareholder bringing an action against his corporation's director(s) or majority shareholder(s) for a breach of fiduciary duty. In *Richards*, the case in which the distinct and disproportionate standard was introduced, the Court of Appeals noted that "[w]hether a cause of action is individual or derivative must be determined from the 'nature of the wrong alleged' and the relief, if any, which could result if plaintiff were to

prevail." *Richards,* 19 Kan.App.2d 961-62 (quoting *Kramer v. Western Pacific Industries*, 546 A.2d 352 (Del. 1988). In *Boyle v. Harries*, 22 Kan.App.2d 686, 700, 923 P.2d 504 (1996), the court ruled that the shareholder plaintiff suffered no distinct and disproportionate injury from the director's breach of fiduciary duty because the director's actions merely injured the corporation itself. In *Carson v. Lynch Multimedia Corp.*, 123 F. Supp. 2d 1254 (D. Kan. 2000) the United States District Court noted that "actions brought for breach of a director's or officer's fiduciary duty will generally be derivative actions unless the plaintiff can show some special injury which is not common to all shareholders, **such as that the injury to plaintiff arose out of plaintiff's relationship to the transaction complained of other than as a shareholder, for example, as a creditor**." *Carson*, 123 F.Supp.2d at 1260, (emphasis added) quoting 19 FLETCHER ENCYCLOPEDIA ON THE LAW OF PRIVATE CORPORATIONS §5:06 (1988),

It is not, and cannot be, disputed that the plaintiffs' personal guaranties of corporate debt were not given as a condition of the Agreement. (*See* ASSET PURCHASE AGREEMENT, Initial Memorandum, Exhibit A.) All individual guaranties were given prior to the execution of the Agreement and were given to financial institutions and entities other than the defendant. It is likewise undisputed that the individual plaintiffs were required to execute the Agreement. However; examination of the Agreement discloses no promises or commitments made by the defendant to the individual plaintiffs. All promises made by the defendant were to the corporate plaintiff, identified in the Agreement as "Seller." (*See* ASSET PURCHASE AGREEMENT, Initial Memorandum, Exhibit A.) It is likewise true that the plaintiffs were possessed of no property which was acquired by the defendant under the Agreement. This being so, the injuries suffered by the plaintiffs arising out of their guaranties, were neither distinct nor disproportionate from one another or from the corporate defendant. All suffered the same injury. (*See* Complaint

in which all three plaintiffs allege the same injury.  *See* as well Sheila Monsour's Answer to Defendant's First Interrogatories at No. 4, Initial Memorandum, Exhibit D, at which Ms. Monsour states that her damages were the same as Mark Monsour and Monsour's, Inc.)  Because all plaintiffs claim to have suffered the same exact injury and damage, the individual plaintiffs cannot be said to have suffered injury which was distinct and disproportionate from either one another or from the corporation itself.   Under either *Richards*, 19 Kan.App.2d 950 or under corresponding Missouri law, the individual plaintiffs have no causes of action to bring against this defendant.

The defendant recognizes the exception for closely held corporations contained in *Richards* allowing that closely held corporations may treat an action raising derivative claims as direct if doing so will not unfairly expose their corporation to a multiplicity of suits, will not materially prejudice the interests of creditors of their corporation or will not interfere with a fair distribution of recovery among all interested persons.  *Richards,* 19 Kan.App.2d at 966.  None of those exceptions are applicable here.  The plaintiffs claims are derivative and they have been brought by the corporate plaintiff.   Given the nature of the pleadings and the information produced in discovery, the claims of the plaintiffs are exactly those of the corporate plaintiff.

The plaintiffs, even as guarantors, were not injured as creditors of the alleged breach of the Agreement; rather they were injured as stockholders.  The plaintiffs' claimed injuries are neither distinct from nor disproportionate to the injuries allegedly suffered by the corporate plaintiff.  Under the Agreement, no duties flowed from the defendant to the plaintiffs.  Under the Agreement, plaintiffs conveyed nothing to the defendant and the defendant conveyed nothing to the plaintiffs.  Under both Kansas law and Missouri law, the individual plaintiffs have no claims against the defendant.  To the extent they were injured at all they were injured as stockholders

not as individuals   The defendant is entitled to summary judgment against the individual plaintiffs.

Respectfully submitted,

KLENDA, MITCHELL, AUSTERMAN & ZUERCHER, L.L.C.

s/John Val Wachtel
John Val Wachtel, #8310
Alexander B. Mitchell, #8204
301 N. Main, 1600 Epic Center
Wichita, KS  67202-4888
Tele.:  (316) 267-0331
Fax:  (316) 267-0333
jvwachtel@kmazlaw.com
amitchell@kmazlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 11th day of July, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send electronic notice of this filing to:

Dustin DeVaughn
McDonald, Tinker, Skaer, Quinn & Herrington, P.A.
200 W. Douglas, Ave., Ste. 500
Wichita, KS  67202
ddevaughn@mtsqh.com
Attorney for Plaintiff

s/John Val Wachtel
John Val Wachtel

KMAZ Document No. 309868