KLENDA, MITCHELL, AUSTERMAN & ZUERCHER, L.L.C.
301 N. Main, Suite 1600
Wichita, KS 67202-4888
(316) 267-0331

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK MONSOUR, SHEILA MONSOUR and  )
MONSOUR'S, INC.,                  )
  *Plaintiffs,*               )
                                  )
vs.                               ) No. 05-1204-MLB
                                  )
MENU MAKER FOODS, INC.,           )
  *Defendant.*                )
                                  )

## DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

  This brief is submitted in reply to the plaintiffs' response to defendant's motion for summary judgment. Plaintiffs claim two breaches of contract. First, defendant failed to purchase the entire inventory of Monsour's. Second, defendant failed to purchase all of its produce requirements from Monsour's. Defendant submits that it is entitled to summary judgment on both claims because plaintiffs fail to offer any evidence of recoverable damages. Plaintiffs' response to the motion fails in three respects. Plaintiffs' response fails to controvert key statements of fact, fails to proffer admissible evidence of damages, and misstates the rules of law on damages.

  As will be seen below, the plaintiffs' measure of damages for an alleged breach of contract for failure to purchase the entire inventory of Monsour's is the difference between Monsour's cost for the inventory and the market price. Plaintiff's measure of damages for the alleged breach of contract to purchase defendant's produce requirements from Monsour's is Monsour's lost profit.

1

Defendant submitted the present motion for summary judgment for the following reasons: (1) the plaintiffs have no evidence of damages for the claimed breaches of contract, (2) the opinion of plaintiffs' expert witness does not address the proper measure of damages, and (3) the plaintiff's expert witness bases his opinion of loss of cash flow on unreliable financial statements, and unsupported assumptions that Monsour's could continue in business buying inventory on credit.

The appropriate measure of damages for the defendant's alleged wrongful failure to purchase Monsour's entire inventory is the difference between the contract price and the market price, not loss of cash flow. UCC § 2-708. Plaintiffs offer no evidence of the market price. Plaintiffs offer no evidence on the contract price (ie. Monsour's cost). The appropriate measure of damages for defendant's alleged wrongful failure to purchase all of its produce requirements from Monsour's is Monsour's lost profits. Plaintiffs offer no evidence of lost profits.

Not only is the opinion of Marshal Hull, plaintiffs' expert witness, on lost cash flow irrelevant to plaintiffs' measure of damages, his opinion resets on unreliable data and speculation, and is inadmissible under Rule 702, Fed. R. Evid. First, he assumed defendant would pay the flat sum of $750,000 for the inventory. The contractual purchase price was Monsour's cost, not the estimated value of the goods or the sum of $750,000. Mr. Hull had no information on the inventory cost. He used the figure of $750,000 because the parties had estimated the inventory to be valued between $750,000 and $800,000, and because several internal financial statements showed an inventory having a value in that range. The financial statements used by Mr. Hull were unreliable as they had been inflated by Mr. Monsour for the purpose of misleading the bank as to

2

the solvency of Monsour's. And, the parties' estimate of value does not approximate the cost to Monsour's for its inventory.

Second, Mr. Hull assumed Monsour's could continue in business by buying more inventory on credit. There is no evidence Monsour's could obtain more credit. Monsour's was in financial difficulties when this agreement was made with defendant. Indeed, Bank of America had called the note and advised it would no longer extend credit to Monsour's. Plaintiffs offer no admissible evidence from vendors or other creditors that additional credit would be extended to Monsour's. Thus, an opinion of Mr. Hull that Monsour's would have continued in business with additional credit rests on pure, unsupported speculation.

### A. Uncontroverted Statements of Fact.

Summary judgment motions serve a purpose of isolating and disposing of unsupported claims. *Brooks v. City of Wichita, Kansas*, 2006 WL 1675952 (D. Kan. June 16, 2006). In several statements of uncontroverted fact, defendant pointed to an absence of evidence to support a claim of the plaintiffs. This defendant can do on a motion for summary judgment.

> Because plaintiff bears the burden of proof at trial, defendant need not "support [its] motion with affidavits or other similar materials *negating* [plaintiff's]" claims or defenses. *Celotex,* 477 U.S. at 323 (emphasis in original). Rather, defendant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of plaintiff's claim. See *Adler,* 144 F.3d at 671 (citing *Celotex,* 477 U.S. at 325).

*Id*, p. 1. The following statements of uncontroverted fact pointed out an absence of evidence to prove plaintiffs' claims.

In paragraph 26 defendant pointed out that there was no evidence to support a claim that Bank of America would continue to extend credit to plaintiffs after the initial

3

sale to defendant. Rather than come forward with that evidence to refute the statement, plaintiffs respond in part that there was no citation to the record by the defendant. Plaintiffs further contend the statement is simply argument. If there is no such evidence, there is no record to submit in support. Furthermore, to point out the lack of evidence is entirely proper on a summary judgment motion. The absence of such evidence should be deemed admitted.

In paragraph 27 defendant pointed out that, as support for his opinion on loss of cash flow, plaintiff's expert assumed Monsour's would continue in business by purchasing additional inventory on credit. Plaintiffs' response does not controvert that statement. Indeed, Marshal Hull testified he assumed Monsour's could buy additional inventory on credit. See Marshal Hull's deposition pp. 45-46. This statement should be deemed admitted.

In paragraph 29 defendant pointed out that plaintiffs' expert performed no independent investigation or due diligence to determine if Monsour's would have had the ability to purchase additional inventory on credit. Plaintiffs do not refute the statement. The statement should be deemed admitted.

In paragraph 30 defendant pointed out that there was no evidence Mousour's could have purchased additional inventory on credit. Rather than come forward with admissible evidence refuting that statement, plaintiffs respond through Mark Monsour that the Bank of America had agreed to extend additional credit. This statement by plaintiffs refers to a purported oral agreement with the former president (now deceased) of the local Bank of America branch, which is contrary to the written position of the bank that no additional credit would be extended. See Exhibit G to defendant's memorandum

4

brief. In response to a summary judgment motion, the opposing party cannot rely on inadmissible hearsay. "[H]earsay testimony that would be inadmissible at trial may not be included." *Id*. Here, plaintiffs believe they can rely on an alleged oral statement of the deceased president of the local Bank of America branch office to the effect that the bank would extend additional credit to Monsour's despite the statement in Exhibit G to the contrary. Such a statement by the deceased president is inadmissible hearsay. Rules 802, 803(1)-(23) and 804(b), Fed. R. Evid. Again, defendant's statement of fact that there is no evidence additional credit would have been extended to Monsour's should be deemed admitted.

In paragraph 31 defendant pointed out there was no evidence of market value for the inventory. This is important for the measure of damages under the UCC. Plaintiffs do not controvert this statement, but simply refer to the purchase agreement. Plaintiffs further object arguing no citation to the record was made. Where there is no evidence, there is no record. This statement of fact should be deemed admitted.

In paragraph 32, defendant stated there was no evidence of lost profits for the alleged breach. Indeed, plaintiffs' expert readily admitted he made no calculation of lost profits from the alleged breach of contract. Plaintiffs respond in part that the produce was to be sold at "10% gross." No dollar amounts are mentioned by plaintiffs. We assume what was meant by "10% gross" was that there was to be a 10% gross margin on the sale of all produce. This is not the same thing as lost profit as there is no evidence of Monsour's costs of sale and overhead. There is no evidence proffered on the amount of produce that should have been purchased by defendant. Indeed, as will be shown later,

5

proof of the lost profit would require expert testimony. Plaintiffs offer no such opinion. This statement of fact should be deemed admitted.

In paragraph 33 defendant stated there was no evidence of expenses saved. This issue bears on the measure of damages under the UCC. Plaintiffs do not respond with any evidence to the contrary. This statement of fact should be deemed admitted.

In paragraph 34 defendant pointed out there is no evidence of the revenue received by Monsour's from the sale of its inventory to others. Plaintiffs respond with a statement that no resale occurred nor could be made because of a covenant not to compete with defendant. Thus, there is no evidence of revenue received from any resale. This should be deemed admitted.

### B. Expert Testimony

In part C of plaintiffs' argument, plaintiffs state that expert testimony is not required to prove plaintiffs' damages. In support of that contention plaintiffs cite to *Hare v. Wendler*, 263 Kan. 434, 949 P.2d 1141 (1997). Plaintiffs' reliance upon *Hare* is misplaced.

*Hare* was a medical malpractice case for an alleged sexual battery of a psychiatric patient committed by a staff psychiatrist. The question there was what if any damages were caused by the alleged conduct? As the Court noted Hare's pre-existing conditions may have caused or contributed to his damages. *Id.* at 444. Thus, expert testimony was required to prove causation in that case.

Furthermore, any projection of lost profits or of market value would necessarily require expert testimony. Rule 702, Fed. R. Evid. These are items not within our common knowledge.

6

Here, plaintiffs offer no evidence, other than Mr. Hull's opinion, on what plaintiffs may have suffered in damages.

### C. Mark Monsour's Opinion of Damages

In paragraph D of plaintiffs' argument, plaintiffs state that Mark Monsour "can offer testimony on this issue [regarding lost profits]." Rather than step forward with that evidence, plaintiffs simply make this conclusionary statement. Conclusionary statements should be disregarded by the Court. *Brooks, supra* at 1. In short, plaintiffs fail to proffer any evidence from Mr. Monsour as to plaintiffs' damages.

Indeed, plaintiffs do not rely on Mark Monsour for proof of damages. Plaintiffs' rely on the opinion of Marshal Hull, plaintiffs' retained expert witness. The damages claimed in paragraph 10 of the pretrial conference order (docket 47) are $716,414.35 (which is $800,000, the upper end of the so called purchase price for inventory, less the $83,585.65 received from defendant as mentioned in paragraph 6b4a of the Pretrial Order) and $1,204,350 (which is the calculation by Marshal Hull of loss of cash flow. See Exhibit B, p. 5 to defendant's brief. Plaintiffs offer no other evidence of damages.

Plaintiffs cite to *Telluride Power Co. v. Williams*, 164 F. 2d 685 (1947), for the proposition that an owner can testify to loss of value. There is no proffer by plaintiffs, however, as to what that loss of value may be. Instead, plaintiffs rely on the monetary calculations of Marshal Hull as to his opinion on lost cash flow. Plaintiffs further proffer no evidence that Mark Monsour is capable of calculating the damages either using the methodology of Marshal Hull, or by any other method. Such expertise would be required for his opinion to be admissible.

> When the subject matter of proffered testimony constitutes "scientific, technical, or other specialized knowledge," the witness must be qualified as an

7

expert under Rule 702.  Rule 701 applies only "[i]f the witness is not testifying as an expert."  Fed. R. Evid. 701.  Indeed, the rule expressly prohibits the admission of testimony as lay witness opinion if it is based on "specialized knowledge." *Id.* In other words, "a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person."  *Doddy v. Oxy USA, Inc.,* 101 F.3d 448, 460 (5th Cir. 1996).

*Lifewise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004).

### D.  Action for the Price

Plaintiffs argue in Part E of their brief that they have cumulative remedies under UCC §§2-706, 2-708 and 2-709 to recover for the alleged breach.  Plaintiffs offer no evidence applicable to any of these remedies.

Under UCC §2-703 an aggrieved seller can (1) resell the goods and recover damages under §2-706; (2) recover damages under §2-708; or (3) recover the price under §2-709.

In the event of a breach by the buyer by refusing to take delivery, the seller may resell the goods, and recover the difference between the contract price and resale price, plus incidental damages under §2-710, less expenses saved.  UCC §2-706.  Here, there is no evidence plaintiffs resold the inventory.  Indeed, plaintiffs state in their memorandum brief that the inventory was not sold because of covenants not to compete.  There is no evidence of incidental damages.  There is no evidence of expenses saved.

Under §2-708, a seller can recover the difference between the market price and contract price, plus incidental damages, less expenses saved.  *Wendling v. Puls*, 227 Kan. 780 (1980)(*Syl. 2*).  If this measure is inadequate to place the seller in as good a position as performance would have done, then seller can recover lost profits, plus incidental damages under §2-708(2).  Here, there is no evidence of market price, no evidence of incidental damages under §2-710, nor evidence of expenses saved.

8

Under §2-709, a seller can recover the contract price under certain circumstances. Where, as here, defendant buyer has not taken possession of the goods, the appropriate remedy for the seller is not an action for the price under §2-709. *Sharp Electronics Corporation v. Lodgistix, Inc.,* 802 F. Supp. 370, 378 (D. Kan. 1992).

This contract has two parts, an agreement to purchase the inventory of Monsour's, and an agreement to purchase produce from Monsour's. The entire inventory of Monsour's was not purchased by defendant. Monsour's apparently still holds the balance of the inventory. Any claim for breach of the contract to purchase inventory would give Monsour's remedies under §2-706 or §2-708. Since plaintiffs claim they did not resell the goods, Monsour's remedy would be the difference in market price and contract price under §2-708. Here, plaintiffs offer no evidence of market price for the remaining unsold inventory.

Furthermore, plaintiffs assert that the contract price for the inventory was either $750,000 or $800,000—plaintiffs use $800,000 for damages claimed in the pretrial conference order, and $750,000 for Mr. Hull's opinion. Such an assertion has no basis in fact. The $750,000 to $800,000 was the stated estimate of value for the inventory. The contract specifically states the price to be paid:

> The inventory purchase price will be Seller's cost which will be computed at the Seller's NDS computer system average cost of last 3 purchases, except that if such price exceeds the current market cost for any such inventory item then the price for such item will be negotiated by Buyer and Seller.

Exhibit A, p. 2, to defendant's brief in support of summary judgment. Thus, the measure of Monsour's damages for the alleged breach of contract to purchase the inventory would be the difference between Monsour's cost as computed above and the market price.

9

Market price is to be proven in accordance with §2-723. Plaintiffs have proffered no evidence of that market price. Plaintiffs offer no evidence of Monsour's cost. Accordingly, Monsour's claim to damages for failure to purchase the entire inventory must fail.

The second agreement was the purchase of substantially all of defendant's produce requirements from Monsour's. This would be a requirements contract under §2-306 and would be enforceable. *Miller v. Sirloin Stockade*, 224 Kan. 32 (1978). Any repudiation by the buyer would entitle Monsour's to lost profits under §2-708 plus incidental damages, less expenses saved. *Jetz Service Co. v. Salina Properties,* 19 Kan. App. 2d 144 (1993). Since the produce to be purchased from Monsour's has not been identified under the contract, Monsour's remedy is to recover lost profits plus incidential damages, with an allowance for costs saved. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F. 2d 677, 690 (10th Cir. 1991); *Kvassay v. Murray*, 15 Kan. App. 2d 426 (1991)(*Syl*. 4). Again, plaintiffs have offered no proof of lost profits, incidental damages or expenses saved.

### E. Conclusion

Plaintiffs hired Marshal Hull to opine on a loss of cash flow from the alleged breach of contract. Not only is his opinion resting on unreliable assumptions for the price to be paid for the inventory, and whether additional inventory could be purchased on credit to sustain the business, his opinion of loss of cash flow is irrelevant on the issue of plaintiffs' damages. Plaintiffs fail to offer any evidence of market price for the inventory not purchased, and fail to offer any evidence of lost profits on defendant's failure to purchase substantially all of its produce requirements from Monsour's. Plaintiffs offer no

evidence of incidental damages under §2-710. Plaintiffs offer no evidence of expenses saved. For these reasons, summary judgment is appropriate.

        s/ Alexander B. Mitchell, II
        Bar Number 8204
        Attorney for Defendant
        Klenda, Mitchell, Austerman & Zuercher, L.L.C.
        301 N. Main, Suite 1600
        Wichita, KS 67202-4888
        Telephone: (316) 267-0331
        Fax: (316) 267-0333
        E-mail: amitchell@kmazlaw.com

**CERTIFICATE OF SERVICE**

This is to certify that on the 15th day of September, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which should send a notice of electronic filing to Dustin DeVaughn, attorney for plaintiff.

s/ Alexander B. Mitchell, II