**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

MARK MONSOUR, SHEILA MONSOUR, )
and MONSOUR'S, INC., )
)
               Plaintiffs, ) **CIVIL ACTION**
)
v. ) No. 05-1204-MLB
)
MENU MAKER FOODS, INC., )
)
               Defendant. )
)

## MEMORANDUM AND ORDER

Before the court is defendant's motion for summary judgment on the claims of plaintiffs Mark Monsour and Sheila Monsour.[1] (Doc. 72) The motion has been fully briefed and is ripe for decision. (Docs. 73, 82, 83.) Defendant's motion for summary judgment seeking dismissal of the claims of the individual plaintiffs Mark Monsour and Sheila Monsour is GRANTED.

**I. FACTS**

The following relevant facts are uncontroverted. On January 31, 2002, plaintiffs Monsour's, Inc. ("Monsour's"), Mark Monsour, and Sheila Monsour entered into an asset purchase agreement (the "Agreement") with defendant Menu maker Foods, Inc. ("Menu Maker"). Pursuant to the Agreement, Menu Maker was to purchase food service items and certain fresh produce items from Monsour's. The Agreement

---

[1] Also before the court is defendant's motion for summary judgment on plaintiffs' breach of contract claim and all responsive briefing thereto. (Docs. 86, 87, 88, 89.) Following oral argument on defendant's motion on November 20, 2006, the court asked for additional briefing. The court, therefore, will hold consideration of defendant's motion until all additional briefing is complete.

specified that the "Agreement shall be construed by and according to the laws of the State of Missouri." Plaintiffs were represented by counsel during negotiations for the Agreement. The asset purchase agreement was ultimately drafted and prepared by Menu Maker's attorneys.

Mark Monsour and Sheila Monsour own all the stock in Monsour's. The Agreement was signed by Mark Monsour, Sheila Monsour, Mark Monsour as president of Monsour's, and Jon Graves as president of Menu Maker. The Agreement identified Monsour's, Mark Monsour, and Sheila Monsour as sellers. Plaintiffs Sheila Monsour and Mark Monsour acknowledge that their damages, if any, are the same as those of Monsour's and that the damages of all plaintiffs are not cumulative. Specifically, in response to interrogatories from defendant, Mark and Sheila Monsour state: "The damages sought by plaintiffs in this case are not cumulative. Each plaintiff is not seeking the same damages individually."

The parties do not agree on the facts surrounding the alleged breach or breaches of the Agreement by Menu Maker. Because Menu Maker's motion, however, rests on the legal issue of who is the proper party to bring these claims, no recitation of additional facts is necessary. In accordance with the summary judgment standards set out below, any additional relevant facts discussed in the court's analysis which have not been designated by the parties as uncontroverted will be taken in the light most favorable to plaintiffs.

## II. MOTION FOR SUMMARY JUDGMENT

The usual and primary purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."

-2-

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Fed. R. Civ. P. 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted).

The moving party initially must show both an absence of a genuine issue of material fact, as well as entitlement to judgment as a matter of law. See id. at 670. The nature of the showing depends upon whether the movant bears the burden of proof at trial with the particular claim or defense at issue in the motion. If the nonmoving party bears the burden of proof, the movant need not "support its motion with affidavits or other similar materials negating the opponent's" claims or defenses. Celotex, 477 U.S. at 323. Rather, the movant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of the nonmovant's claim. Adler, 144 F.3d at 671 (citing Celotex, 477 U.S. at 325). On the other hand, if the movant has the burden of proof on a claim or defense raised in a summary judgment motion, it must show that the undisputed facts establish every element of the claim or defense. See, e.g., United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).

Once the moving party properly supports its motion, the burden shifts to the nonmoving party, "who may not rest upon the mere

allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Muck v. United States, 3 F.3d 1378, 1380 (10th Cir. 1993). In setting forward these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." Adler, 144 F.3d at 671. If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 533 (10th Cir. 1994). A party opposing summary judgment "cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 793 (10th Cir. 1988). Put simply, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Accordingly, the court must review the "factual record and reasonable inferences therefrom in the light most favorable to the nonmoving/opposing party." Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 851 (10th Cir. 1996); Anderson, 477 U.S. at 255. If sufficient evidence exists on which a trier of fact could reasonably find for the non-moving party,

summary judgment is inappropriate. Prenalta Corp. v. Colorado Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

### III. ANALYSIS

Plaintiffs' complaint alleges breach of contract. Plaintiffs assert breaches of the Agreement occurred when Menu Maker failed to comply with the Agreement's terms regarding the purchase of both inventory and produce. Menu Maker responds that it fully performed under the terms of the Agreement as modified orally and through the conduct of both parties. Menu Maker further asserts that plaintiffs 1) misrepresented the value of the inventory in the Agreement, 2) breached the Agreement, 3) suffered no injury caused by defendant, and 4) failed to mitigate damages.

Unrelated to these substantive claims and responses, Menu Maker moves for partial summary judgment seeking dismissal of the claims brought individually by Mark Monsour and Sheila Monsour, alleging that they are not proper plaintiffs because they lack standing. As an initial matter, the parties dispute the law governing the resolution of this case, a matter which is first taken up by the court. The court then discusses defendant's motion for partial summary judgment on the issue of standing.

### A. Governing Law

This is a diversity action brought pursuant to 28 U.S.C. § 1332. As such, the substantive law of the forum state, including that forum state's choice of law rules, applies. See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (holding that in a diversity action, the federal court must use the forum's conflict of laws rules to determine the law to be applied in a breach of contract

action); Henderson v. Nat'l Fid. Life Ins. Co., 257 F.2d 917, 919 (10th Cir. 1958) ("The measure of damages for breach of contract is undoubtedly substantive law, as to which the state law is controlling.").

Kansas is the forum state and Kansas choice of law rules in contract-based actions "permit parties to choose the law applicable to their agreement." Brenner v. Oppenheimer, 273 Kan. 525, 538, 44 P.3d 364, 374 (2002). Therefore, a contracted choice of law provision controls all questions of law flowing from the parties' contract and any breach thereof. See Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc., 431 F.3d 1241, 1255 (10th Cir. 2005) (stating that in a diversity case arising in a federal court in a Kansas forum, when faced with a contracted provision that an agreement and "all its terms and conditions shall be governed by and interpreted under the laws of the State of New York," the claims of the plaintiff premised on a breach of the underlying agreement would be governed and interpreted by New York law). Regarding the law to be applied to this dispute, the Agreement states in entirety: "This Agreement shall be construed by and according to the laws of the State of Missouri."

This dispute over who can properly bring suit to enforce the Agreement will be addressed by the court under Missouri law, pursuant to the parties contracted choice of law provision. The parties expressly chose Missouri law to govern any claims stemming from their Agreement. The question as presented by the parties is who has rights to enforce and pursue a remedy under the Agreement made. Thus, the parties have framed the issue as arising under the contract and their choice of law provision applies. As both parties note, however, both

-6-

Kansas law and Missouri law are substantively the same, although parties argue for different interpretations of these legal standards.

## B.  Proper Plaintiffs/Standing

Menu Maker asserts that plaintiffs Mark Monsour and Sheila Monsour are not proper parties to the litigation and lack standing. Menu Maker seeks dismissal of the claims of these individual plaintiffs.  Menu Maker asserts that the individual plaintiffs have suffered no direct harm and, as mere shareholders of the allegedly harmed corporation, have no standing to sue.

Plaintiffs first respond by asserting that Menu Maker's motion should be denied as untimely because it was filed outside time limits set by the court.  In a scheduling order filed October 19, 2005, the court set December 19, 2005 as the deadline for filing any motions regarding "venue, propriety of the parties, or failure to state a claim."  (Doc. 13 at 5.)  Discovery was to be completed by April 28, 2006.  A pretrial order was filed May 25, 2006 which noted that discovery was complete other than the deposition of plaintiffs' expert, Marshall Hull, defendant's expert, Kurt Breitenbach, and a Rule 30(b)(6) deposition of defendant's corporate representative. (Doc. 74 at 12.)

The court notes that Rule 17(a) does not state a time frame for a challenge of this sort.  Defendant made its motion within a short time of the completion of discovery.  Because defendant did not unreasonably delay in making its motion, the court will consider the motion as one for partial summary judgment and rule accordingly, despite the passage of the deadline in the pretrial order. See Audio-Visual Marketing Corp. v. Omni Corp., 545 F.2d 715, 719 (10th Cir.

-7-

1976) (noting that a "real party in interest" objection is "for the benefit of a defendant, and should be raised in a timely manner")(relying on Wright and Miller, Federal Practice and Procedure, § 1554 at 700-704).

Plaintiffs next argue Menu Maker's motion should be denied because they assert that they were uniquely harmed by the actions of Menu Maker.  Plaintiffs allege they personally guaranteed the debts of Monsour's and were therefore harmed by any monetary injury to Monsour's.  Plaintiffs argue they do have standing in their own right to pursue this action for breach of contract.

Federal Rule of Civil Procedure 17(a) states that civil actions shall be filed "in the name of the real party in interest."  The question is whether individual shareholders may maintain suit against a third party for that third party's harms to the corporation.  The parties believe the question is governed by corporate law.

Generally, a shareholder does not have standing to sue in his individual capacity for damages to the corporation. Sequa Corp. v. Cooper, 128 S.W.3d 69, 75 (Mo. 2003).  In Sequa Corp., a 2003 Missouri Supreme Court opinion, the court considered a similar positioning of parties.  Like the positioning of the parties in this case, a plaintiff shareholder (the one hundred percent owner) sued a defendant party for harm to the plaintiff corporation.  Also similar to the facts at issue in this case, in Sequa Corp. there was a "tangential economic interest" in the amount owed by the defendant third party to the plaintiff corporation.  Id at 75-76.  The Missouri Supreme Court determined that despite this economic interest held by the shareholder, it was the corporation that suffered damage as a result

of the alleged misconduct by the defendant and therefore the shareholder, even as one hundred percent shareholder, did not have standing to sue. See also Warren v. Mercantile Bank of St. Louis, N.A., 11 S.W.3d 621, 622-23 (Mo. Ct. App. 1999) (holding that sole shareholders do not have individual standing to sue a third party corporation for misrepresentations to the corporation, despite the individual shareholder's investment of personal capital in reliance on the alleged misrepresentations); Around the World Importing, Inc. v. Mercantile Trust Co., N.A., 795 S.W.2d 85, 91 (Mo. Ct. App. 1990) (holding that individual shareholders lacked standing on a fraudulent misrepresentation claim, even though they were required to sign personal guarantees on the loan making the basis of the claim because of the financial condition of the company, because the damages were sustained by the corporation, not the individual shareholders); Jones v. Rennie, 690 S.W.2d 164, 166 (Mo. Ct. App. 1985) (holding that a one hundred percent shareholder of a corporation had no standing to sue for damages sustained from misrepresentations to the corporation by a third party because "damages sustained from such misrepresentations were sustained by [the corporation] and not by [the shareholder] individually, even though he owned 100% of the stock of [the corporation]").

Plaintiffs do not rebut this mountain of authority. The court discerns plaintiffs to be arguing that 1) because the Monsours are not bringing a derivative suit (i.e., a suit by shareholders against the corporation itself), the general law forbidding individual shareholders from pursuing derivative suits does not apply to them, 2) the Monsours were "uniquely injured by defendant's breach" because

-9-

they had previously guaranteed debts of the corporation and thus have a distinct injury, and 3) because the Monsours signed the contract in addition to Monsour's, Inc., the law gives them the right to sue on the contract they signed.

These arguments are quickly disposed of. First, the court and defendant recognize the Monsours are not pursuing a derivative cause of action. In fact, a derivative suit has nothing to do with the present case. The case law presented above forbids exactly the scenario presented here - a suit by individual shareholders of a corporation against a third party for harm to the corporation. Second, beyond merely alleging injury because of guarantees given for corporation debts, the Monsours have in no way alleged how those guarantees, or the corporate debts they were given for, are in any way related to the facts at hand.[2] The Agreement does not on its face involve any debt guarantees and the Monsours' answers to interrogatories suggest they signed the Agreement not as guarantors but because defendant wanted to ensure they did not personally own any of the property to be sold under the Agreement. Finally, the cases cited by the Monsours for the proposition that a signatory on a contract automatically has standing to sue, do not support the argument being made. In <u>Bodine v. Osage County Rural Water Dist. No. 7</u>, 263 Kan. 418, 432, 949 P.2d 1101, 1114 (1997), and <u>Stockman v. Unified Gov't of Wyandotte County</u>, 263 Kan. App. 2d 453, 463-64, 6

---

[2] The court assumes that because of the alleged breach of the contract by defendant, Monsour's, Inc. was unable to satisfy corporate debts which the Monsours had guaranteed, thus making the Monsours personally liable. Even if this assumption is true, it does not change the court's standing analysis.

P.3d 900, 909 (2000), the courts merely noted the general rule of contract law that a third party beneficiary of a contract may enforce a contract made for that beneficiary's benefit if they are considered to be a donee beneficiary or a creditor beneficiary of the contract. In this case, the Monsours are not a third party beneficiary of the Agreement. The cases cited by plaintiffs are inapplicable.

The court also notes that the only damages plaintiffs seek are for harm to the corporation. Plaintiffs' argument that they have standing because they were harmed as guarantors of Monsour's is only plausible if they are seeking a remedy for such a harm. Plaintiffs seek no such remedy. In the pretrial order, plaintiffs demand for damages states:

> (a) Plaintiffs are entitled to damages from the breach of the food service agreement in the amount of $716,414.35 plus statutory interest.
> (b) Plaintiffs are entitled to damages resulting from the breach of the produce section of the agreement in the amount of $1,204,350.00 plus statutory interest for the 6 year term from the covenant not to compete.
> (c) Plaintiffs are entitled to attorney's fees incurred through the prosecution of this matter.

It is clear to the court that plaintiffs' request for damages seeks only damages for Monsour's, Inc., not for the individual plaintiffs Mark Monsour or Sheila Monsour. Thus, it is the corporation that has standing to prosecute the claim for breach of contract, not the individuals Mark and Sheila Monsour. Menu Maker's partial motion for summary judgment seeking dismissal of the individual plaintiffs Mark and Sheila Monsour is GRANTED.

**IV. CONCLUSION**

Defendant's motion for partial summary judgment dismissing the

individual claims of plaintiffs Mark Monsour and Sheila Monsour is GRANTED.

A motion for reconsideration of this order under Local Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this ___29th___ day of November 2006, at Wichita, Kansas.

<u>S/ Monti Belot</u><br>
Monti L. Belot<br>
UNITED STATES DISTRICT JUDGE