# Exhibit G

## AFFIDAVIT OF MARK MONSOUR

I, Mark Monsour, am of lawful age and sound mind and testify under oath as follows:

1. I have attended numerous seminars pertaining to the shipping, storage and handling of produce.

2. I have over twenty five (25) years experience with respect to the inspection, quality maintenance and warehousing of produce.

3. I am inherently familiar with the federal guidelines pertaining to produce and temperature regulations in shipping, handling and storage. In fact, Dick Graves of Menu Maker Foods, Inc. sent certain Menu Maker Foods, Inc. employees to Monsour's, Inc. to learn about produce and our procedures.

4. The majority of Monsour's, Inc.'s food service inventory included many perishable items and items with expiration dates including frozen goods, refrigerated items, bread products, spices and packaged goods.

5. As an industry standard, frozen goods have a diminishing value after six (6) months.

6. After the Asset Purchase Agreement, many of plaintiff Monsour's, Inc.'s employees including sales people and management personnel became employees of defendant Menu Maker Foods. Additionally, defendant Menu Maker Foods, Inc. had its own employees in Monsour's, Inc.'s building and had access to any records they wanted at any time.

7. Approximately four (4) weeks after the Asset Purchase Agreement was executed, I became concerned that Menu Maker Foods, Inc. was not

purchasing the food service inventory as promised. When I brought this to Dick Graves' attention, he assured me it was going to happen and that he would take care of it.

8. As time progressed, many of the food service items began to expire and had to be thrown away.

9. Meanwhile, as Menu Maker Foods, Inc. continued to fail to purchase the food service inventory as promised, I used reasonable efforts in an attempt to resell the remaining food service inventory.

10. The efforts I used to attempt to resell the remaining food service inventory consisted of attempting to contact re-sellers and salvage personnel.

11. Because of the odd lots contained within Monsour's, Inc.'s food service inventory; the aging of the inventory; and the non-compete agreement that both myself and Monsour's, Inc. were required to execute, I could not sell the remaining food service inventory at reasonable prices.

12. Monsour's, Inc. was essentially forced out of business by Menu Maker Foods, Inc. because: (a) Monsour's, Inc. was not receiving the much needed cash flow promised by Menu Maker Foods, Inc. from sale of its food service inventory; (b) Menu Maker Foods, Inc. was not purchasing "substantially all" of its produce from Monsour's, Inc.; (c) a large amount of the produce Monsour's, Inc. was purchasing to fill Menu Maker Foods limited orders was being wrongfully rejected which further hampered cash flow; (d) Menu Maker Foods, Inc. would order specialized produce from Monsour's, Inc. and when the same was received, the would not pay for the same; and (e) the non-compete

agreement both Mark Monsour and Monsour's, Inc. were required to execute limited Monsour's, Inc.'s ability to generate other revenue.

13. With respect to the damages Monsour's, Inc. sustained because of defendant Menu Maker Foods breach of contract pertaining to the food service inventory, plaintiff Monsour's, Inc. seeks damages in the amount of $500,000 with respect to the food service inventory Menu Maker Foods, Inc. contracted to purchase and failed to do so; and is claiming damages in the amount of $216,414.35 for the food service inventory that Menu Maker Foods promised it would use its best efforts to sell, but failed to do so.

14. With respect to the damages Monsour's, Inc. sustained because of defendant Menu Maker Foods, Inc.'s breach of contract pertaining to produce, Monsour's, Inc. seeks damages in the amount of $1,204,350.

15. The documents that evidence the produce shipped to Menu Maker were produced in this litigation (example document has been labeled by my attorney as Bates # 10474-79) and the documents that evidence credits (example document has been labeled by my attorney as Bates # 10480) that Menu Maker took in writing were produced in this litigation. These documents have been labeled by my attorney as Bates # 10390 - 10625.

16. Before entering into the Asset Purchase Agreement, Monsour's presented a proposed list of the cost of produce to Menu Maker which evidenced a 10% mark up. This document has been labeled by my attorney as Bates No. 10005-06.

17. Dennis Hughes kept contemporaneous notes that were given to me and were discussed in the Monsour's Corporate Deposition and those have been labeled by my attorney as Bates No. 10062-63.

18. Peter Monsour kept contemporaneous notes that were given to me and those have been labeled by my attorney as Bates No. 10043-50.



_____
Mark Monsour

Notary Public:

_____
Danielle Monroe