Monsour et al v. Menu Maker Foods Inc
Case 6:05-cv-01204-JTM   Document 104-12   Filed 12/30/2006   Page 1 of 3
Doc. 104 Att. 11

# Exhibit J

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS
 2

 3   MARK MONSOUR, SHEILA MONSOUR
     and MONSOUR'S, INC.,
 4
                Plaintiffs,
 5
        vs.                        Case Number 05-1204-MLB
 6
     MENU MAKER FOODS, INC.,
 7
                Defendant.
 8

 9

10

11

12

13

14       DEPOSITION OF KEVIN F. MITCHELSON, a Witness

15   herein, taken on behalf of the Plaintiffs, pursuant to

16   the Kansas Rules of Civil Procedure and Notice To Take

17   Deposition, at Wheeler & Mitchelson, 4th and Broadway

18   Street, Pittsburg, Kansas, on the 22nd day of February,

19   2006, at 1:37 o'clock a.m., before:

20
                     Patricia K. Smith, C.S.R.
21                       P.O. Box 1123
                       Pittsburg, KS  66762
22                      (620) 231-5380

23

24

25
```

Page 38

1 produce. Are we talking about the same thing?
2 A. Oh, I'm sorry. You're right. In at least one of those
3    conversations -- maybe I should look. The topic of
4    produce was discussed in a conference call with Mr.
5    Graves and Mark Monsour. Two telephone calls with Mr.
6    Graves and Mark Monsour. Period.
7 Q. With respect to the discussion of how much produce Menu
8    Maker Foods was going to purchase from Monsour's, what
9    were the oral conversations about with respect to what
10   percent of their produce requirements they were going
11   to purchase?
12 A. On January 28th Mr. Graves indicated that his company
13   would buy "100 percent of their produce as long as Mark
14   wants to sell it to me. As long as it's of good
15   quality at competitive prices, I will use my best
16   efforts to buy 100 percent of my produce from
17   Monsour's."
18      MR. DeVAUGHN: I don't have any other questions.
19              REDIRECT EXAMINATION
20 BY MR. WACHTEL:
21 Q. Well, I reckon I do. Given your last testimony in
22   response to counsel's questions, can you tell me why
23   the Asset Purchase Agreement doesn't say that "Menu
24   Maker Foods will purchase 100 percent of its produce
25   requirements from Mark Monsour or Monsour's, Inc., as

Page 39

1    long as they want to sell it"?
2 A. No.
3 Q. Thank you. With regard to the Asset Purchase
4    Agreement, which is contained within Mitchelson
5    Deposition Exhibit 1, do you consider that document,
6    that Asset Purchase Agreement, to embody all the terms
7    and conditions, representations and warranties made by
8    the parties to that agreement?
9 A. I think this is the final document that was signed by
10   the parties. I don't know that it necessarily sets
11   forth the nature of the relationship between Mark
12   Monsour and Mr. Graves and his trust in Mr. Graves to
13   sell his business to him and the things that they were
14   going to do that were going to be mutually beneficial
15   for both companies.
16 Q. Is the Asset Purchase Agreement a fully integrated
17   agreement?
18 A. I suspect that's for you and the judge to decide.
19      MR. TOMASSI: Before you answer, do you have an
20   understanding of what fully integrated means as --
21      MR. DeVAUGHN: Object to form.
22      THE WITNESS: I guess I think I know what I think
23   it means, but I guess I've answered it the best I can.
24   If he wants to ask further, I'd be glad to answer
25   further.

Page 40

1 Q. (By Mr. Wachtel) Were there other promises,
2    representations and warranties made by any of the
3    parties to that agreement that are not contained within
4    it?
5 A. In looking at it today, I think -- and, I'm sorry, I
6    should have studied this in more detail in preparation
7    for this deposition, perhaps, but Mr. Graves'
8    commitment to continue to buy produce for his branches
9    from Monsour's is really only mentioned in passing on
10   the top of page 2. But that was their deal and Mr.
11   Monsour was comfortable to do his deal with Mr. Graves
12   and was in a hurry to proceed. So we did.
13 Q. Is that your way of telling me that there were other
14   promises, representations or warranties among the
15   parties that did not find their way into the agreement?
16 A. I'm sorry, it is in here. I didn't turn enough pages.
17   No.
18      MR. WACHTEL: Thank you very much. I don't have
19   any further questions.
20              RECROSS EXAMINATION
21 BY MR. DeVAUGHN:
22 Q. I got a follow-up question for you, Kevin. Obviously,
23   this is four years later and, like you said, you didn't
24   get a chance to study the Asset Purchase Agreement in
25   detail as compared to your notes. One of the things

Page 41

1    you've testified about earlier was the timing with
2    respect to when Menu Maker Foods was going to be
3    purchasing Monsour, Inc.'s food service inventory.
4    I'll represent to you that the timing issues are not
5    contained within the written Asset Purchase Agreement.
6 A. True.
7 Q. Is that something that the parties had a clear
8    understanding on, but the timing issues did not find
9    their way into the written Asset Purchase Agreement?
10 A. Okay. My notes of the conversation on January 28th of
11   02 of a telephone conversation with Mr. Monsour -- with
12   Mark Monsour and Mr. Graves talk about purchase of
13   inventory, but do not talk about a time frame. The
14   notes of another conversation dated that same day talk
15   in terms of "the buyers to take delivery no later than
16   eight weeks after the closing." The notes of the
17   conference call with Mark Monsour, Mark Johnson, the
18   banker, Robert Cowherd, Mr. Graves' attorney, Dick
19   Graves and Mike Slack of Bank of America indicate that
20   "50 to 60 percent of the inventory would be sold within
21   weeks three to five. We're going to take it all, I
22   just cannot tell you exactly when." I wrote that down
23   as Mr. Graves made that statement. That's the last
24   notes I have of conversations prior to the closing.
25      MR. DeVAUGHN: I don't have any other questions.