**Exhibit A**

Dockets.Justia.com



# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

## MARK MONSOUR, SHEILA MONSOUR AND
## MONSOUR'S, INC.
### vs.
## MENU MAKER FOODS, INC.
### Case No. 05-1204-MLB

## DEPOSITION OF CORPORATE REPRESENTATIVE,
## MARK MONSOUR
### March 14, 2006

OFFICES   MISSOURI  ■  ILLINOIS  ■  KANSAS

HEADQUARTERS: 711 NORTH ELEVENTH STREET, ST. LOUIS, MISSOURI 63101
800.280.3376

CORPORATE REPRESENTATIVE, MARK MONSOUR  3/13/2006

Page 14

1  indebted as of the effective date of the asset
2  purchase agreement.  Now -- and you provided a full
3  page of -- Monsour's provided a full page of answers
4  to those questions, and it flopped over on to page 3
5  of the document.  I want to now ask you about that
6  indebtedness.  In subpart a. Of Monsour's answer, it
7  says --
8          MR. DEVAUGHN:  Tell you what, maybe it
9  would be wise to --
10     A   I need a copy of that.
11         MR. DEVAUGHN:  Let's get a copy of that,
12  that way I can look at what you are talking about.
13         (WHEREIN, a recess was taken.)
14     Q   (By Mr. Wachtel)  I have placed before the
15  witness and counsel the first three pages of
16  Monsour's, Inc.'s responses to the defendant's first
17  set of interrogatories.  The answer -- the question
18  is found on the first page, the answer is found on
19  pages 2 and 3.  If you are prepared to answer
20  questions about Monsour's answer -- are you prepared,
21  now, sir, to address the answers to this
22  interrogatory?
23     A   I believe.
24     Q   Okay.  Let's go to answer a.  The answer a.
25  is that there was a fixed note with the Bank of

Page 15

1  America in the amount of $975,000 as of January 31st,
2  2002; is that a true and correct answer?
3     A   I believe.
4     Q   To the best of your recollection; right?
5     A   To my recollection, correct.
6     Q   It also -- the answer says that the
7  interest rate -- excuse me.  That the loan was to be
8  repaid to Bank of America, together with interest at
9  a variable rate, in one payment, on April 2nd, 2002;
10  what was the variable interest rate, if you know?
11     A   No, I do not.
12     Q   Do you -- do you know the amount that
13  would have been due Bank of America on April 2nd,
14  2002?
15     A   I'm going to say that a. and g.  I believe
16  the 975 was probably the floater loan, and I believe
17  that g. was probably the fixed note.
18     Q   We'll come back to that.  Do you believe
19  that your answer to a. included within it the -- both
20  the fixed and the floater notes?
21     A   No, I believe that a. is actually probably
22  the floater; and really there was no repayment
23  required under the floater.  It would go up and down.
24  Interest would have been whatever, but --
25     Q   You answered in b. that "Accounts payables

Page 16

1  for both food service and produce items totaled
2  $1,017,982.81"; was that the best answer you could
3  give based on your recollection at the time?
4     A   To the best of my recollection, sir.
5     Q   As part of that answer, and commencing on
6  the sixth line up from the bottom of b., Monsour's
7  wrote, "A large amount of that post-January 31, 2002
8  debt is in the form of Monsour's, Inc.'s --"
9          MR. DEVAUGHN:  "Is from."
10     Q   (By Mr. Wachtel)  I'm sorry.  "From
11  produce --"  Thank you.  " -- Monsour's, Inc. ordered
12  for the defendant that was then wrongfully rejected
13  by the defendant."  How much produce did you order
14  from the defendant that was wrongfully rejected?  A
15  dollar amount, please.
16     A   What I can tell you here that comes to my
17  mind is that I know I threw between 120 and $200,000
18  worth of produce away that we had ordered in the
19  direction of Ron Orr.  It was either, one, never
20  taken, and that would be the large part of that
21  thrown away, or, two, rejected.  On top of that there
22  was going to be -- you have credits which I would not
23  know the amount of at this time.
24     Q   Am I correct in understanding that you
25  believe that the large amount of the post-January 31

Page 17

1  debt that was attributable to Menu Maker's refusal
2  was somewhere between 120 and $200,000; is that right?
3     A   Of the produce that we threw away, that
4  they either never took, ordered and never took.
5     Q   Do you have any better recollection of the
6  amount than what you told me here today?
7     A   Most of the produce they did take.
8     Q   I was trying to get --
9     A   Then they credited back.  I'm answering
10  your question.  They would take credits for, so you
11  have to see how much they ordered, large amount of
12  that was credited.
13     Q   In c., Monsour's, Inc. answered as
14  follows: "Notes payable to others totaling
15  $916,087.55.  It is believed that these notes
16  payables consisted of $600,000 to UNB (Guaranteed by
17  Gene Bicknell); $100,000 to Earl McGavran," which I
18  have probably mispronounced, "$38,000 to Terri
19  Monsour, and $81,912.45 to Corrine Monsour."  We have
20  discussed, have we not, guaranteed by Mr. Bicknell's
21  company in your prior deposition?
22     A   Right.  That amount to Gene Bicknell is
23  probably 500,000; the other, the one there -- I think
24  Gene Bicknell's total was $500,000.  Most likely, I
25  think the extra hundred there, was dropped to my

5 (Pages 14 to 17)