KLENDA, MITCHELL, AUSTERMAN & ZUERCHER, L.L.C.
301 N. Main, Suite 1600
Wichita, KS 67202-4888
(316) 267-0331

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MONSOUR'S, INC., ) | |
|     *Plaintiff,* ) | |
| ) | |
| vs. ) | No. 05-1204-MLB |
| ) | |
| MENU MAKER FOODS, INC., ) | |
|     *Defendant.* ) | |
| ) | |

## **REPLY TO PLAINTIFF'S SUPPLEMENTAL RESPONSE**

Pending before the Court is the defendant's second motion for summary judgment. At oral argument, the plaintiff was given additional time to supplement its response. Plaintiff has now submitted a supplemental response that highlights the fundamental flaws in plaintiff's case, and shows a material change in plaintiff's theory of damages.

As was argued by defendant in its briefs and at oral argument, there is no support for the Marshal Hull approach to damages. Plaintiff apparently agrees as it has abandoned the Hull approach as its measure of damages.

Furthermore, there is no evidence to otherwise support plaintiff's claim to damages. This brief is submitted by defendant in response to the supplement made by plaintiff.

### **Plaintiff's Statement of Additional Facts.**

As a preliminary statement, defendant notes the plaintiff's statement of additional facts generally do not relate to the issues presented by defendant's summary judgment

1

motion. None of these statements of additional fact support the use of Mr. Hull's report or opinion. Instead, plaintiff makes the statement that Mark Monsour is qualified to opine on the issue of plaintiff's damages; but, plaintiff still has not proffered any evidence of what those damages might be. For purposes of this Reply, defendant's responses to plaintiff's statement of additional facts is as follows:

1. Uncontroverted.

2. Uncontroverted.

3. Uncontroverted.

4. Uncontroverted.

5. Controverted. Exhibit C is not authenticated. The deposition testimony is an opinion and recollection of the value, not proof of the actual value.

6. Controverted in part. The value was an estimate by the parties. See Asset Purchase Agreement.

7. Uncontroverted.

8. Uncontroverted.

9. Controverted. The Asset Purchase Agreement states there will be inventory inspections, delivery, and acceptance after closing. Paragraph V.5.1 states that title to the inventory would not pass until delivery to defendant.

10. The first sentence is uncontroverted. The second sentence is controverted. See affidavit of Mr. Graves attached to defendant's earlier reply brief showing the potential purchasers for this inventory.

11. Controverted in part. There is no record support for the statement that defendant had "access to any records they wanted at any time."

12. Uncontroverted.

13. Uncontroverted.

14. Uncontroverted.

15. Uncontroverted.

16. Uncontroverted.

17. Uncontroverted.

18. Controverted. The record cited does not support this statement. The record cited does not support the contention that defendant was purchasing the entire inventory at some other price.

19. Uncontroverted.

20. Uncontroverted.

21. Controverted in part. There is no agreement to purchase the inventory for $750,000 or $800,000. See Asset Purchase Agreement where it is stated that the inventory is to be purchased at plaintiff's cost.

22. Controverted. Mr. Fairchild's cited testimony was to the effect he would have tried to get the purchasing department to work faster.

23. Controverted. The testimony of Mr. Goodwin does not support the statement that defendant's "only efforts" were to contact four vendors, or that these contacts resulted in a recovery of only $2,000. These are the four vendors he could remember at the time of his deposition. The $2,000 was from Baron Spices. He did not testify as to the recovered amounts from the other vendors.

24. It is controverted defendant agreed to pay $750,000 to $800,000 for the inventory. See Asset Purchase Agreement for the parties' agreement that defendant would purchase the inventory at plaintiff's cost.

25. Uncontroverted.

26. Uncontroverted.

27. Controverted. There is no record for this statement. The citation does not comply with Rule 56, and the attachment is not an affidavit.

28. Controverted. There is no record for this statement. The citation does not comply with Rule 56, and the attachment is not an affidavit.

29. Controverted. There is no record for this statement. The citation does not comply with Rule 56, and the attachment is not an affidavit.

30. Controverted. There is no record for this statement. The citation does not comply with Rule 56, and the attachment is not an affidavit.

31. Controverted. The phrase "substantially all" is not defined in the agreement. Plaintiff was to fill 99.25% of defendant's orders for produce. See Asset Purchase Agreement, ¶ XI.F(B).

32. Uncontroverted.

33. Uncontroverted.

34. Uncontroverted.

35. Uncontroverted.

36. Uncontroverted.

37. Uncontroverted.

38. Uncontroverted.

39. Controverted.  There is no record for this statement.  The citation does not comply with Rule 56, and the attachment is not an affidavit.

40. Controverted.  There is no record for this statement.  The citation does not comply with Rule 56, and the attachment is not an affidavit.

41. Controverted.  There is no record for this statement.  The citation does not comply with Rule 56, and the attachment is not an affidavit.

42. Controverted.  There is no record for this statement.  The citation does not comply with Rule 56, and the attachment is not an affidavit.

43. Uncontroverted.

44. Uncontroverted.

45. Controverted in part.  The cited reference does not support the statement that produce was kept on defendant's trailers for 15 to 19 hours.

46. Controverted.  The cited reference does not support this statement.

47. It is uncontroverted this is what Mr. Hughes states.  "Marketable quality" does not equate to the "house acceptability standards" of defendant.  See Asset Purchase Agreement, paragraph XI, F(A) for the quality requirements.

48. Uncontroverted.

49. Controverted.  The record cited does not support this statement.

50. It is uncontroverted this is what Mr. Monsour testified.

51. It is uncontroverted this is what Mr. Monsour testified.

52. It is uncontroverted plaintiff retained Mr. Krueger.  The balance of the statement is controverted as argument.

53. Uncontroverted.

54. Uncontroverted.

55. Uncontroverted.

56. Controverted. There is no record for this statement. The citation does not comply with Rule 56, and the attachment is not an affidavit.

57. Uncontroverted.

58. It is uncontroverted that this was Mr. Monsour's testimony.

59. Controverted. The Asset Purchase Agreement called for orders to be given the previous Monday. See Asset Purchase Agreement, ¶XI F (H) (2).

60. Uncontroverted.

61. Uncontroverted.

62. Uncontroverted.

63. Controverted. There is no record for this statement. The citation does not comply with Rule 56, and the attachment is not an affidavit.

64. Controverted. The cited record does not support this statement.

65. Controverted. The cited record does not support this statement.

66. Controverted. The reference is to pure hearsay and is inadmissible evidence.

67. Uncontroverted.

68. Uncontroverted.

69. It is uncontroverted that Mr. Orr knew defendant was to purchase substantially all of its produce requirements from plaintiff.

70. Controverted. The cited record does not support this statement.

71. Controverted. The cited record does not support this statement.

72. It is uncontroverted that this was the testimony of Mr. Fairchild.

73. Controverted. The cited record does not support this statement. The statement is argument.

74. Controverted. The cited record does not support this statement. The citation does not comply with Rule 56, and the attachment is not an affidavit.

## ARGUMENT AND AUTHORITIES

### A. Unauthenticated Exhibits.

Plaintiff has attached several documents as exhibits (C, L, R, S, T and U) to its supplemental response that are not authenticated by affidavit. This is the same tactic counsel tried at oral argument. All should be disregarded as not in compliance with Rule 56.

### B. Improper Affidavits/Declarations.

Plaintiff has attached two documents purporting to be affidavits or declarations of Mark Monsour (Exhibit G) and Dennis Lutz (Exhibit O). Neither complies with 28 U.S.C. 1746(2). Both should be disregarded.

### C. Plaintiff Has Abandoned the Report of Marshal Hull.

Plaintiff's supplemental response abandons any reliance upon the report of Marshal Hull. Mr. Hull had opined to the loss of cash flow caused by the alleged breaches of contract by defendant, which approach is not the proper measure of damages. Apparently, plaintiff agrees, for now plaintiff claims the measure of damages (1) for the failure to buy plaintiff's inventory is an action for the price under § 2-709[1], (2) for the failure to take delivery for produce ordered from plaintiff is an action for the price under

---

[1] Plaintiff's supplemental brief, p. 17. Citation is to the article and section of the UCC as these provisions are identical in Kansas and Missouri.

§ 2-709[2], and (3) for the failure to buy substantially all of the produce requirements is an action for lost profits under § 2-708.[3]

### D.  Damages Claimed for Failure to Purchase the Inventory.

Plaintiff argues the measure of damages for inventory not purchased by defendant is the contract price.  Plaintiff then argues that the contract price is the estimated value of $750,000 to $800,000 mentioned in the Asset Purchase Agreement for the value of the inventory.  In paragraph 30 on page 8, plaintiff contends its damages for the failure of defendant to purchase the inventory is $500,000 ($750,000 minus the $250,000 in inventory actually purchased) plus $216,414.35 for inventory left to spoil.  This contention fails for four reasons.

First, the estimated value is not the price agreed by the parties for the existing inventory.  Paragraph 2.1 of the Asset Purchase Agreement calls for the inventory to be purchased at plaintiff's cost.  Plaintiff makes no proffer of what that cost may have been.

Second, an action for the price under § 2-709 will arise only (1) where the goods have been accepted or were lost after the risk of loss passed to the buyer, and (2) the seller is unable to sell the goods.  Here, there is no evidence defendant accepted all of the goods or assumed the risk of loss for the entire inventory.  Plaintiff attempts to satisfy this element by arguing that after the Asset Purchase Agreement was signed many of plaintiff's employees became defendant's employees.[4]  This is not acceptance of delivery of the inventory.  Plaintiff apparently concedes this point for it then argues defendant wrongfully rejected much of the inventory when the inventory spoiled on poorly

---

[2] Plaintiff's supplemental brief, p. 22.  This is the first time plaintiff has made a claim that produce was ordered but not paid for by defendant.
[3] Plaintiff's supplemental brief, p. 23.
[4] Plaintiff's supplemental brief, p. 19.

refrigerated trucks of the defendant. Indeed, the agreement contemplated subsequent inspections to determine what was and was not "in good and wholesome condition and 100% resellable condition."[5] Since delivery was not made on the entire inventory, there can be no action for the price. UCC § 2-709(1).

Third, plaintiff claims some of the goods were shipped to defendant, then wrongfully rejected by the defendant, and now the same have spoiled. In paragraph 30 on page 8 of the Supplemental Brief, plaintiff makes the conclusionary claim that damage was $216,414.35. However, plaintiff makes no proffer identifying either those items or their cost.

And fourth, plaintiff's claim for $216,414.35 of the inventory left to spoil has already been counted in its claim to $500,000 in damages.

Plaintiff's measure of damages related to the inventory is not an action for the price under § 2-709 for there was no delivery of the remaining inventory or the passing of the risk of loss to the defendant. Plaintiff's measure of damages for the remaining inventory is either the difference in market price at time it should have been delivered and the plaintiff's cost under § 2-708(1), less expenses saved, or plaintiff's lost profits under § 2-708(2). There is no evidence of either proffered by plaintiff.

### E.  Plaintiff Concedes No Lost Profit on Inventory.

Plaintiff admits the inventory was to be purchased at plaintiff's cost, and there was no profit expected.[6] Therefore, any claim for damages for inventory not purchased by the defendant should be the difference between the market price and plaintiff's cost, less expenses saved. UCC § 2-708(1).

---

[5] Asset Purchase Agreement, Section 1.1, ¶1.
[6] Plaintiff's supplemental brief, p. 21.

**F.  Plaintiff Offers No Proof of Market Price.**

Plaintiff has proffered no evidence of the market price for the inventory not purchased by the defendant.  Having also not proffered evidence of the cost for such inventory, plaintiff's claim for damages on the inventory under § 2-708(1) must fail.

**G.  Damages for Failure to Purchase Produce.**

Plaintiff now claims defendant is liable in two respects on the matter of the produce.  First, plaintiff claims defendant ordered some produce, but wrongfully rejected the same.[7]  Second, plaintiff claims damages for defendant's failure to purchase substantially all of defendant's produce requirements from plaintiff.  On the first claim, the parties agree the measure of damages would be an action for the price.  However, here the plaintiff proffers no evidence identifying the produce ordered and wrongfully rejected by defendant.  Further, there is no proffer by plaintiff of the price for those items.

Plaintiff now concedes the opinion of Marshal Hull on the measure of damages is not appropriate.  Instead, plaintiff argues that Mark Monsour qualifies as an expert and can testify as to damages suffered by plaintiff.[8]  However, plaintiff offers no evidence of what that opinion may be, nor the basis for such opinion.  Instead, plaintiff states that it is entitled to a 10% profit on sales "that did not occur."[9]  Plaintiff then makes the conclusionary statement that these "damages are determined by the documents defendant produced in discovery showing purchases from other suppliers."[10]  Again, we are left to guess what those goods may be.

---

[7] This is the first time plaintiff has made this affirmative claim for damages.  There is no mention of this in the complaint or pretrial conference order.
[8] Plaintiff's Supplemental Brief, p. 23.
[9] Plaintiff's Supplemental Brief, p. 24.
[10] Id.

10

In paragraph 74 of the plaintiff's additional statement of facts in the supplemental brief plaintiff contends Mark Monsour will testify the damages sustained for defendant's failure to purchase the produce was $1,204,350.  Plaintiff proffers no documentation or explanation for this claim.  Curiously, this amount is exactly the amount Marshal Hull opined was the lost cash flow, which is not the measure of plaintiff's damages.

**H.  Oral Amendments to Asset Purchase Agreement.**

At oral argument plaintiff's counsel argued the Asset Purchase Agreement had been modified in some respect by oral agreements of the parties.  Plaintiff proffers no such evidence in its supplemental brief.  Instead, beginning on page 24 plaintiff argues various evidentiary rules in support of its contention that the parties agreed time was of the essence.  Plaintiff fails to explain the purpose for this contention.  It does not change the measure of damages or plaintiff's failure to proffer evidence of damage.

## CONCLUSION

Plaintiff brings this action claiming damages for defendant's failure to purchase plaintiff's inventory and for defendant's failure to purchase substantially all of its produce requirements from plaintiff.  Plaintiff retained Marshal Hull to quantify those damages.  Hull's estimate of loss of cash flow was the amount claimed by plaintiff in the pretrial conference order as its damages.  Plaintiff appears to have now abandoned the report of Mr. Hull.  Plaintiff now argues it is entitled to bring an action for the price of $750,000 for the defendant's failure to purchase the inventory, and an action for lost profits on the failure to purchase produce from plaintiff.

The action for the price for the remaining inventory must fail for three reasons.  First, there was no delivery of the inventory to defendant.  Second, plaintiff relies on a

11

price of $750,000 when the price for the inventory was plaintiff's cost. Plaintiff offers no evidence of what inventory was not purchased and its cost. Third, plaintiff's measure of damages for inventory not purchased is the difference between the cost and the market price, less expenses saved, or the lost profits. UCC § 2-708. Plaintiff has proffered no evidence, however, of the market price for the inventory, the cost of the inventory, the expenses saved, or the profit lost.

The measure of damages for failure to purchase produce is an action for lost profits under § 2-708. Although plaintiff notes it was to receive a markup of 10% on the produce, plaintiff has proffered no evidence of the produce that should have been purchased, its cost and the profits lost.

For these reasons, defendant's motion for summary judgment should be granted.

<u>s/ Alexander B. Mitchell, II</u>
Bar Number 8204
Attorney for Defendant
Klenda, Mitchell, Austerman & Zuercher, L.L.C.
301 N. Main, Suite 1600
Wichita, KS 67202-4888
Telephone: (316) 267-0331
Fax: (316) 267-0333
E-mail: amitchell@kmazlaw.com

## **CERTIFICATE OF SERVICE**

This is to certify that on the 8th day of January, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which should send a notice of electronic filing to Dustin L. DeVaughn and Richard W. James, attorneys for plaintiff, and delivered a hard copy to the Chambers of Judge Monti Belot.

<u>s/ Alexander B. Mitchell, II</u>