## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MONSOUR'S INC.                              )
                                            )
                            Plaintiff,      )
                                            )     Case No. 05-1204-MLB
vs.                                         )
                                            )
MENU MAKER FOODS, INC.                      )
                                            )
                            Defendant.      )
_____)

Deleted: s

Deleted: a

Deleted: *See* Fed. R. Civ. P. 16(e); D. Kan. Rule 16.2(c).

Deleted: Val

### REVISED PRETRIAL ORDER

Pursuant to the Order of the Honorable Monti L. Belot, this Revised Pretrial Order has

been prepared by the parties.  This Revised Pretrial Order shall supersede all pleadings and

control the subsequent course of this case.  It shall not be modified except by consent of the

parties and the Court's approval, or by order of the Court to prevent manifest injustice.

1.     **APPEARANCES.**

Plaintiff Monsour's, Inc. appears by and through counsel Dustin L. Devaughn and

Richard W. James.  Defendant Menu Maker Foods, Inc., appeared through counsel John V.

Wachtel and Alexander B. Mitchell.

2.     **NATURE OF THE CASE.**

This is a breach of contract case.

3.     **PRELIMINARY MATTERS.**

   a.     **Subject Matter Jurisdiction.**  Subject matter jurisdiction is invoked under 28

U.S.C. § 1332, diversity of citizenship, and is not disputed.

   b.     **Personal Jurisdiction.**  The Court's personal jurisdiction over the parties is not

disputed.

   c.     **Venue.**  The parties stipulate that venue properly rests with this Court.

Dockets.Justia.com

d.    **Governing Law.**  The Court will apply Missouri law to both the liability and

damage issues for this breach of contract claim.

4.    **STIPULATIONS.**

a.    The following documents constitute business records within the scope of Fed. R.

Evid. 803(6) and may be introduced in evidence during trial without further foundation,

reserving all other objections.:

> 1.    The Asset Purchase Agreement entered into among the parties and all
>
>        attachments made a part thereof.
>
> 2.    The non-compete agreement between Monsour's, Inc., Mark Monsour and

defendant.

> 3.    The non-compete agreement between Rick Monsour and defendant.

b.    Copies of exhibits may be used during trial in lieu of originals.

c.    At trial, witnesses who are officers, agents, or employees of the parties need not

be formally subpoenaed to testify, provided that opposing counsel is given at least 2 days

advance notice of the desired date of trial testimony.

d.    No later than 6:00 p.m. each day of trial, counsel shall confer and exchange a

good faith list of witnesses who are expected to testify the next day of trial.

5.    **FACTUAL CONTENTIONS.**

a.    **Plaintiff's Contentions.**

In the summer and fall of 2001, defendant Menu Maker Foods, (based in Jefferson City,

Missouri), began discussions with Monsour's, Inc. regarding the purchase of Monsour's by

2

**Deleted:** substantive

**Deleted: a.**  The Honorable Monti Belot issued a Memorandum and Order dated January 22, 2007 setting forth the uncontroverted facts of this case.

**Deleted: b**

**Deleted:** subject to objections based solely on grounds of relevancy

**Deleted:** .

**Deleted: c**

**Deleted:  d.**  The parties have stipulated to the admission of the following trial exhibits.

**Deleted: e.**

**Deleted: f**

**Deleted:** '

Menu Maker Foods (MMF). Monsour's was an established produce company in its third generation of family ownership based in Pittsburg, Kansas. Monsour's provided fresh produce and food service items to restaurants, schools, nursing homes, grocery stores and other outlets for food products in a four-state area concentrated in southeast Kansas, southwest Missouri, northwest Arkansas, and northeast Oklahoma. Monsour's, Inc. is owned by plaintiffs Mark Monsour and Shelia Monsour as sole shareholders. Dick Graves is sole shareholder of MMF.

After the September 11, 2001 tragedy, the restaurant business and consequently Monsour's, Inc. were adversely affected. Monsour's was having cash flow difficulties and desired to concentrate on the produce section of the business. At the same time, MMF was seeking to expand into the four-state region where Monsour's was a recognized name and MMF sought to grow its produce business. The parties began discussions about an Asset Purchase Agreement where Monsour's would be the exclusive supplier of MMF's produce. The terms of the agreement required MMF to purchase "substantially all" of its produce from Monsour's and it defined "substantially all" as 99.25% of all produce MMF purchased.

The parties also discussed the food service inventory of Monsour's. Monsour's supplied MMF with inventory reports and gave MMF access to its Pittsburg warehouse to evaluate the inventory. The parties agreed the inventory to be purchased had a value of between $750,000 and $800,000. The parties also agreed that "time was of the essence" and MMF would pick up Monsour's inventory in order to provide Monsour's with the necessary cash flow to continue its produce operation. Throughout the negotiations and the year leading up to the agreement, MMF knew Monsour's was having financial difficulties and used such knowledge to its advantage.

The agreement required MMF to provide Monsour's with usage calculations in regard to produce so that Monsour's would have the necessary produce on hand and available. MMF

| Deleted: MMF |

failed to provide the calculations. After the agreement, MMF continued purchasing substantial amounts of produce from entities other than Monsour's. MMF would make extensive last minute additions to the orders. MMF would load the produce at Monsour's facilities in Pittsburg at the close of business, let the produce set overnight in MMF's docking area on MMF refrigerated trailers and then MMF would haul the produce to Jefferson City, Missouri. MMF then rejected substantial amounts of produce. When the produce arrived in Jefferson City, Missouri, MMF would then claim that the produce was not of appropriate quality. Many items of produce were wrongly rejected. The items that were damaged were damaged as a result of the improper shipping and handling of the produce by MMF. This testimony is supported by Monsour's expert witnesses, Monsour's former employees and MMF current and former employees.

MMF employees wanted the agreement with Monsour's to fail and openly discussed it with other fellow employees. Thus, MMF employees thought that other MMF employees were trying to cause Monsour's to fail. Because MMF was wrongly rejecting produce and refusing to pay Monsour's for damaged produce on MMF trucks, Monsour's cash flow shortage was further compromised. At the same time, MMF was delaying the pick up and purchase of food service inventory weakening Monsour's cash flow position. MMF employees did not even know that Dick Graves had agreed to pick up the food service inventory in a limited time frame.

Through MMF's breach of the agreement, Monsour's was forced to close its doors and cease all operations in the summer of 2002, less than six months after the agreement between the parties. Plaintiffs are entitled to damages related to defendant's breach of the agreement.

b.    **Defendant's Contentions.**

For some time prior to September 11, 2001, Monsour's, Inc. was experiencing severe financial difficulties. During the negotiations between the parties, it was never discussed nor contemplated that Monsour's would become the exclusive supplier of produce to MMF. Indeed, Monsour's could not supply many items of produce, and the parties agreed MMF would purchase those items elsewhere.

On the 31st day of January 2002, the parties hereto entered into an Asset Purchase Agreement pursuant to the terms of which Monsour's, Inc. was to sell and the defendant was to purchase, at plaintiff's cost, substantially all of Monsour's Inventory, other than produce. The inventory to be purchased was to be in good and wholesome condition, and which was in 100% resellable condition, and which was then being sold to customers of Monsour's, Inc., or which could be sold to selected customers of the defendant. The Agreement does not define "substantially all." The parties further agreed that defendant would use its best efforts to sell or assist in the sale of any remaining inventory.

The plaintiff agreed to purchase fresh produce from Monsour's under the terms and conditions set out in the Asset Purchase Agreement. The produce sold to defendant was to be at plaintiff's cost plus 10%. Of the orders submitted by defendant, plaintiff was to fill not less than 99.25% of the orders.

The defendant, Monsour's, Inc., Mark Monsour and Rick Monsour entered into non-compete agreements pursuant to the terms of which, and for periods of time set out in the non-compete agreements, neither Mark Monsour, Monsour's, Inc. nor Rick Monsour, would individually or through others be engaged in the ownership or management of a food distribution business other than through permitted sales to grocery stores, within any county in which the defendant did business.

5

During the course of the dealings between the parties, Monsour's could not supply all of the produce ordered by MMF. The parties agreed that those various items of produce would be purchased by defendant from other suppliers. The parties further agreed that the employee's of Monsour's would load the goods on to defendant's trucks, that defendant would transport the goods from Monsour's warehouse in Pittsburg, Kansas to defendant's premises in Jefferson City, Missouri, and that the defendant would take delivery of the goods at its premises in Missouri. The goods were shipped promptly and in properly equipped trailers. None of the shipments spoiled on account of the equipment used by the defendant. The defendant fully performed under the terms of the Asset Purchase Agreement.

Monsour's failed to provide produce to the defendant which met the defendant's quality standards as required by the Asset Purchase Agreement. The plaintiff Monsour's, Inc. and Mark Monsour violated Asset Purchase Agreement and the non compete agreement by selling inventory items to non grocery store buyers, and thus not providing those inventory items for sale to the defendant as required by the Asset Purchase Agreement. The plaintiff misrepresented the value of its inventory, which as of the date of the execution of the Asset Purchase Agreement had a cost of no more than $569,759.81.

The plaintiffs suffered no injury or damage as a result of the conduct of the defendant. At the time of the Asset Purchase Agreement, Monsour's was in severe financial difficulty. Its inventory was secured to its principal lender, and it owed over $1 Million to its trade creditors. Any proceeds from the sale of inventory and/or produce was paid first to Monsour's principal creditor, then to its other creditors. Any improved cash flow to Monsour's as alleged by the plaintiff from this Asset Purchase Agreement was not contemplated nor intended by the parties.

6

Defendant agreed to purchase substantially all of plaintiff's inventory at plaintiff's cost, provided such inventory met the quality standards described in the Asset Purchase Agreement. Plaintiff's claim for breach of the Asset Purchase Agreement pertaining to the inventory fails on account of plaintiff's inability to prove the cost for those goods not purchased by defendant. Furthermore, plaintiff's claim that the price for the inventory was $750,000 or $800,000 is contrary to the terms of the Asset Purchase Agreement. The price was to be plaintiff's cost.

Plaintiff's claim for damages pertaining to wrongfully rejected produce fails as plaintiff has no proof of either the price for such goods, or the profits lost on such sales.

Plaintiff's claim for damages pertaining to future purchases of produce fails as plaintiff has no proof of its lost profits from such sales.

Plaintiff is not entitled to pre-judgment interest as any such claim of plaintiff is not liquidated.

**6.     THEORIES OF RECOVERY.**

**a.     List of Plaintiff's Theories of Recovery.** Plaintiff asserts that it is entitled to recover upon the following theories: Breach of Contract.

**b.     Essential Elements of Plaintiff's First Theory of Recovery.**

1. The parties entered into a valid and enforceable contract (Asset Purchase Agreement).

2. Mutual obligations arose out of the contract.

   a. Defendant agreed to purchase $750,000 to $800,000 in food service inventory from the plaintiff in a timely manner.

   b. Defendant agreed to use its best efforts to sell or assist in the sale of plaintiff's remaining inventory.

7

**Deleted:** '

**Deleted:** s

**Deleted:** they

**Deleted:** are

**Deleted:** '

    c.  Defendant agreed to purchase 99.25% (substantially all) of its produce from plaintiff.

<div style="margin-left:2em; border:1px solid; padding:2px; width:fit-content">Deleted: s</div>

3.  Valid consideration.

4.  A breach of the contract occurred by defendant.

    a.  Defendant purchased only $232,956.06 of food service inventory and did not do it in a timely manner.

<div style="margin-left:2em; border:1px solid; padding:2px; width:fit-content">Deleted: 250,000</div>

    b.  Defendant failed to use any reasonably effort to sell or assist in the sale of plaintiff's remaining inventory.

    c.  Defendant allowed product to "expire" without purchasing such product.

    d.  Defendant did not purchase "substantially all" of its produce from plaintiff.

    e.  Defendant wrongly rejected produce in good wholesome condition.

    f.  Defendant damaged produce under its control and wrongly refused to pay for it.

    g.  Defendant did not comply with the ordering terms of the contract for produce.

5.  [THIS SAYS NOTHING FACTUAL]Plaintiffs were damaged as a result of that breach.

**7.  DEFENSES.**

    **List of Defendant's Defenses and Affirmative Defenses to all claims by plaintiff.**

Defendant asserts the following defenses and affirmative defenses:

    1.  The defendant fully performed under the Asset Purchase Agreement.

<div style="border:1px solid; padding:2px; width:fit-content">Deleted: Defendant further breached the agreement by not complying with the terms of the agreement.</div>
<div style="border:1px solid; padding:2px; width:fit-content">Formatted: Bullets and Numbering</div>
<div style="border:1px solid; padding:2px; width:fit-content">Deleted: ¶</div>
<div style="border:1px solid; padding:2px; width:fit-content">Deleted: ¶</div>
<div style="border:1px solid; padding:2px; width:fit-content">Deleted: a.</div>
<div style="border:1px solid; padding:2px; width:fit-content">Deleted:  1.  The Asset Purchase Agreement is ambiguous.¶<br>. 2.  The plaintiff(s) misrepresented the value of the inventory to be sold under the Asset Purchase Agreement.¶</div>
<div style="border:1px solid; padding:2px; width:fit-content">Deleted: 3</div>
<div style="border:1px solid; padding:2px; width:fit-content">Deleted:  as the same was modified both orally and by the conduct of the parties</div>

8

2.   The plaintiff Monsour's, Inc. suffered no damages at the hands of the defendant.

3.   Plaintiff's damages are neither to the extent nor in the amount alleged.

4.   The plaintiff failed to mitigate its damages.

5.   The plaintiff's damages are speculative.

6.   Under Missouri law damages for the loss of a business are not allowed.

7.   Plaintiff's claim for breach of the contract pertaining to inventory fails for plaintiff's inability to prove its cost for goods that allegedly should have been purchased by defendant..

8.   Plaintiff's claim for breach of the contract pertaining to the wrongful rejection of produce fails for plaintiff's inability to prove the price for such goods.

9.   Plaintiff's claim for breach of the contract pertaining to the failure to purchase produce from plaintiff fails for plaintiff's inability to prove lost profits.

10.   Plaintiff's claim for breach of the contract pertaining to defendant using its best efforts to sell plaintiff's remaining inventory fails to state a claim upon which relief can be granted.

**8.     FACTUAL ISSUES.**

One or more of the parties believe that the following material issues will need to be resolved at trial by the trier of fact if summary judgment is not granted:

1.   Was the contract breached by defendant?

2.   What are plaintiff's damages, if any?

3.   Was the contract breached by the plaintiff?

4.   Did the plaintiff mitigate its damages?

9

---

**Deleted:** 4.  The plaintiffs Monsour's, Inc. breached the Asset Purchase Agreement.¶
. 5.  The plaintiffs Monsour's, Inc and Mark Monsour breached the non compete agreement.¶

**Deleted:** 6

**Deleted:** injury

**Deleted:** 7

**Deleted:** Alternatively, if the plaintiff Monsour's, Inc. did indeed suffer injury the injury

**Deleted:** was

**Deleted:** 8

**Deleted:** Monsour's, Inc.

**Deleted:** 9

**Deleted:** Monsour's, Inc.'s

**Deleted:** 10. Under Missouri law damages for the loss of a business are speculative.¶

**Deleted:** 11

**Deleted:   b.  Essential Elements of Defendant's First Affirmative Defense.** Subject to the court's determination of the law that applies to this case, the parties [the defendant believes] that in order to prevail on this affirmative defense, the defendant has the burden of proving the following essential elements:

**Deleted:** The plaintiffs failed to take all reasonable and necessary steps to minimize the loss.

**Deleted:   c.  Essential Elements of Defendant's Second Affirmative Defense.** Subject to the court's determination of the law that applies to this case, the parties [the defendant believes] that in order to prevail on this affirmative defense, the defendant has the burden of proving the following essential elements [list]¶

**Deleted:** .

5. Did the parties modify the terms of the Asset Purchase Agreement by subsequent oral agreements? (mixed issue of law and fact). If so, what were those modifications?

6. Did the parties modify the terms of the Asset Purchase Agreement by their conduct? (mixed issue of law and fact). If so, what were those modifications?

## 9.  LEGAL ISSUES.

One or more of the parties believe that the following are the significant legal or evidentiary issues that will need to be resolved by the Court in this case, whether on summary judgment motion or at trial:

1. Is the plaintiff entitled to prejudgment interest?

2. Are the plaintiff's damages speculative?

3. Is plaintiff entitled to attorney fees?

4. What is the measure of damages on plaintiff's claim of breach of contract as it pertains to inventory?

5. What is the measure of damages for the inventory allegedly not purchased by defendant?

6. What is the measure of damages on plaintiff's claim of breach of contract as it pertains to rejected produce?

7. What is the measure of damages on plaintiff's claim of breach of contract as it pertains to the future purchase of produce?

8. Does plaintiff state a claim for relief in connection with its allegations that defendant did not use its best efforts to assist in the sale of any remaining inventory?

9. Does plaintiff have evidence of its alleged damages?

**Deleted:** 3.  As the contract was drafted by defendant's attorneys, are all ambiguities are to be construed against defendant?  ¶
4

**Deleted:** pursuant to the terms of the Asset Purchase    Agreement

10

10.    **DAMAGES.**

a.    **Plaintiff's Damages.**    Deleted: '

[DEFENDANT DOES NOT AGREE WITH THE PLAINTIFF'S STATEMENT OF DAMAGES. SPECIFIC COMMENTS FOLLOW EACH SECTION.]

    1.    With respect to plaintiff's food service breach of contract claim, plaintiff is entitled to the following damages:

    a.    With respect to the $750,000 to $800,000 worth of food service inventory that defendant agreed to purchase, it only purchased $232,956.06 pursuant to defendant's response to interrogatory number 34. As a result of defendant's breach of contract as to these food service items, plaintiff maintains an action for price pursuant to Section 2-709(1)(a) and/or (1)(b) which totals ($750,000 - $232,956.06) $517,043.94. [THE PRICE FOR THE INVENTORY WAS PLAINTIFF'S COST. THIS CONTENTION IS CONTRARY TO THE PLAIN LANGUAGE OF THE CONTRACT.]

    b.    With respect to the food service inventory that defendant agreed to use its best efforts to sell or assist to sell and then failed to use any reasonable efforts, plaintiff maintains an action for price pursuant to Section 2-709(1)(a) and/or

Formatted: Indent: Left: 1"
Deleted: 9
Deleted: ¶
Deleted: 9

(1)(b).  The food service inventory value as it existed on January 14, 2002 totaled $1,109,219.09. Subtracting the $750,000 defendant agreed to purchase leaves a total of $359,219 that defendant agreed to use its best efforts to sell or assist to sell.  Plaintiff's are claiming damages for $199,370.41 which constitutes approximately 55.5% of the remaining food service inventory amount.[THE INVENTORY TO BE PURCHASED WAS AT PLAINTIFF'S COST.  DEFENDANT WAS TO USE ITS BEST EFFORTS TO ASSIST IN THE SALE OF ALL REMAINING INVENTORY.  THIS CLAIM IS CONTRARY TO THE PLAIN LANGUAGE OF THE CONTRACT AND THE UCC.  THIS WILL REQUIRE ADDITIONAL DISCOVERY ON THE AMOUNT OF INVENTORY PLAINTIFF CLAIMS WAS TO BE SOLD.]

Deleted: ¶

2.    With respect to plaintiff's breach of the produce contract claim, plaintiff is entitled to the following damages:

a.    Pursuant to Section 2-708, plaintiff seeks lost profit on missed Menu Maker Sales at $122,725 for a period of six (6) years which is commensurate with the time period of the covenant not-to-compete that defendant required Mark Monsour to execute.  This amount totals $736,350.[THIS AMOUNT IS MARSHAL HULL'S ESTIMATE OF LOST CASH

Deleted: ¶

12

FLOW, AND IS NOT THE PROPER MEASURE OF DAMAGES FOR

THIS CLAIM UNDER THE UCC.]

       b.    Pursuant to Section 2-709 (1)(a) and/or (1)(b), plaintiff

seeks an action for price pursuant to Section 2-708 for the

produce that was ordered and wrongfully rejected.  This

damage amount totals _____.

[THE AMOUNT OF THIS CLAIM MUST BE INSERTED.  IT WILL

REQUIRE ADDITIONAL DISCOVERY.]

       3.    Plaintiff claims attorney fees pursuant to the terms of the Asset

Purchase Agreement based upon defendant's breach of the

contract.  As of March 16, 2007, plaintiff's total fees and expenses

are $169,657.39.

       4.    Plaintiff claims pre-judgment interest.

    **b.**    **Defendant's Damages.**

None Claimed.

**11.**    **NON-MONETARY RELIEF REQUESTED IF ANY.**

None.

**12.**    **AMENDMENTS TO PLEADINGS.**

None

**13.**    **DISCOVERY.**

Additional discovery will be needed on the damages properly claimed by plaintiff.

| | |
|---|---|
| | **Deleted:** Pursuant to the Court's Order, all discovery is complete. |

**14.**    **WITNESSES AND EXHIBITS.**

a. **Final Witnesses and Exhibit Disclosures Under Rule 26(a)(3).** The parties' final witness and exhibit disclosures pursuant to Fed. R. Civ. P. 26(a)(3) shall be filed no later than March 28, 2007 which is 21 days before trial. With regard to each witness disclosed under Fed. R. Civ. P. 26(a)(3)(A), the disclosures shall also set forth the subject matter of the expected testimony and a brief synopsis of the substance of the facts to which the witness is expected to testify. Witnesses expected to testify as experts shall be so designated. Witnesses and exhibits disclosed by one party may be called or offered by any other party. Witnesses and exhibits not so disclosed and exchanged as required by the Court's order shall not be permitted to testify or be received in evidence, respectively, except by agreement of counsel or upon order of the Court. The parties should bear in mind that seldom should anything be included in final Rule 26(a)(3) disclosures that has not previously appeared in initial Rule 26(a)(1) disclosures or a timely Rule 26(e) supplement thereto; otherwise, the witness or exhibits will probably be excluded at trial. *See* Fed. R. Civ. P. 37(c)(1).

b. **Objections.** The parties shall file any objections under Fed. R. Civ. P. 26(a)(3) not later than April 3, 2007 which is 14 calendar days before trial. The Court shall deem waived any objections not timely asserted, unless excused by the Court for good cause shown.

c. **Marking and Exchange of Exhibits.** All exhibits shall be marked no later than April 10, 2007 which is seven (7) calendar days before trial. The parties shall exchange copies of exhibits at or before the time they are marked. The parties shall also prepare lists of their expected exhibits, in the form attached to this pretrial order, for use by the courtroom deputy clerk and the court reporter. In marking their exhibits, the parties shall use preassigned ranges of numbered exhibits. Exhibit Nos. 1-400 shall be reserved for plaintiffs; Exhibit Nos. 401-800 shall be reserved for defendant; Exhibits 801 and higher shall be reserved for any third party.

Each exhibit that the parties <u>expect</u> to offer shall be marked with an exhibit sticker, placed in a three-ring notebook and tabbed with a numbered tab that corresponds to the exhibit number. (OPTIONAL)  The parties shall prepare an adequate number of exhibit books, including one book containing the original exhibits, two copies for the Court and one copy for opposing counsel; one exhibit book shall be prepared for each juror if counsel intend to distribute exhibit books to jurors, subject to the approval, of course, of the trial judge.

        **d.**     **Designation of Deposition Testimony**.

        **(1)**     <u>**Written Depositions.**</u>  Consistent with Fed. R. Civ. P. 26(a)(3)(B), any deposition testimony sought to be offered by a party other than to impeach a testifying witness shall be designated by page and line in a pleading filed no later than April 3, 2007 which is 14 days before trial.  Any counter-designation in accordance with Fed. R. Civ. P. 32(a)(4), together with any objections to the designations made by the offering party, shall be filed no later than seven calendar days before trial.  The Court will not entertain any objections to deposition testimony unless and until the parties have attempted in good faith to resolve the dispute among themselves either in person or via telephone conference.  Where the Court must resolve disputes concerning presentation of deposition testimony at trial, the objecting party shall deliver a copy of the deposition to the trial judge no later than one business day before trial.  On this copy, those portions of the deposition that are intended to be presented at trial shall be marked by brackets in the margins with different colored highlighting.  Red highlighting shall be used for plaintiffs, blue highlighting shall be used for defendant, and yellow highlighting shall be used for any third party.

        **(2)**     <u>**Videotaped Depositions.**</u>  The paragraph immediately above applies to videotaped depositions as well as written deposition transcripts.  When, however, the parties

require rulings outside the presence of the jury to facilitate a "clean" presentation of deposition testimony at trial, written transcripts, rather than videotaped transcripts, shall be presented in connection with the parties' objections.  A party who offers a videotaped deposition must edit the tape according to the designations and Court's rulings so that it can be played in a manner that will not delay the trial.

15.    **MOTIONS.**

    a.    **Pending Motions.**

       None.

    b.    **Additional Pretrial Motions.**

       Both parties intend on filing motions in limine.

    c.    **Motions Regarding Expert Testimony.**  All motions to exclude testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Duabert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law, shall be filed by March 30, 2007 which is 17 days before trial, but, if such a motion as a practical matter will be case-dispositive, or if an evidentiary hearing on the motion is reasonably anticipated, then this deadline shall be set in accordance with the dispositive motion deadline stated above.

    d.    **Motions in Limine.**  All motions in limine, other than those challenging the propriety of an expert witness, shall be filed no later than April 6, 2007 which is 11 days before trial.  Briefs in opposition to such motions shall be filed no later than April 13, 2007 which is four (4) days before trial.  Reply briefs in support of motions in limine shall not be allowed without leave of Court.

16    **TRIAL.**

| | |
|---|---|
| **Deleted:** 21 | |
| **Deleted:** 28 | |

| | |
|---|---|
| **Deleted:** 3 | |
| **Deleted:** 14 | |
| **Deleted:** 10 | |

| | |
|---|---|
| **Deleted:** seven | |
| **Deleted:** 7 | |

a.  This case is set for trial on the Court's docket beginning on Tuesday, April 17, 2007 at 9:00 a.m..  Unless otherwise ordered, this is not a "special" or "No.1" trial setting.  Therefore, during the month preceding the trial docket setting, counsel should stay in contact with the trial judge's courtroom deputy to determine the day of the docket on which trial of the case actually will begin.     **b.**       Trial will be by jury.

| | **Deleted:** (This case probably will not be set for trial until after all timely filed dispositive motions have been decided by the court.)¶ |
|---|---|

c.       Estimated trial time is 10 days.

d.       Trial will be in Wichita, Kansas, or such other place in the District of Kansas where the case may first be reached for trial.

e.       **f.**       Because of constraints on the judiciary's budget for the compensation of jurors in any case in which the Court is not notified of a settlement by **12:00 noon** on the day before the trial is scheduled to commence, the costs of jury fees and expenses will be assessed to the parties, or any of them as the Court may order.

| | **Deleted:** Not all of the parties are willing to consent to the trial of this case being presided over by a U.S. Magistrate Judge, even on a backup basis if the assigned U.S. District Judge determines that his or her schedule will be unable to accommodate any trial date stated above.¶ |
|---|---|

17     **SETTLEMENT.**

a.       **Status of Settlement Efforts.**

Settlement is unlikely.

| | **Deleted:** negotiations are underway |
|---|---|

b.       **Mediation and/or Other Method of Alternative Dispute Resolution.**

An unsuccessful mediation was conducted with Dennis Gillen serving as the mediator on May 10, 2006.

| | **Deleted:** Mr. Gillen concluded the mediation early when it was conveyed to plaintiffs that an "unnamed family member" would not consent to participation in settlement negotiations with plaintiffs. |
|---|---|

18.     **FURTHER PROCEEDINGS AND FILINGS.**

a.       **Status and/or Limine Conference.**  Relatively close to the date of trial, the trial judge may schedule a status and/or limine conference.

 **b.** **Trial Briefs.** A party desiring to submit a trial brief shall comply with the requirements of D. Kan. Rule 7.6. The Court does not require trial briefs, but finds them helpful if the parties anticipate that unique or difficult issues will arise during trial.

 **c.** **Voir Dire.** Due to substantially differing views among judges of this Court concerning the extent to which counsel will be allowed to participate in voir dire, counsel are encouraged to contact the trial judge's law clerk or courtroom deputy (in accordance with the preference of the particular trial judge) to determine what, if anything, actually needs to be submitted by way of proposed voir dire questions. Generally, proposed voir dire questions only need to be submitted to address particularly unusual areas of questioning, or questions that are likely to result in objections by the opposing party.

 **d.** **Jury Instructions.**

 **(1)** Requests for proposed instructions in jury cases shall be submitted in compliance with Fed. R. Civ. P. 51 and D. Kan. Rule 51.1. Under D. Kan. Rule 51.1, the parties and attorneys have the <u>joint</u> responsibility to attempt to submit <u>one</u> agreed set of preliminary and final instructions that specifically focuses on the parties' factual contentions, the controverted essential elements of any claims or defenses, damages, and any other instructions unique to this case. In the event of disagreement, each party shall submit its own proposed instructions with a brief explanation, including legal authority as to why its proposed instruction is appropriate, or why its opponent's proposed instruction is inappropriate, or both. Counsel are encouraged to contact the trial judge's law clerk or courtroom deputy (in accordance with the preference of the particular trial judge) to determine that judge's so-called standard or stock instructions, e.g. concerning the jury's deliberations, the evaluation of witnesses' credibility, etc; it is not necessary to submit such proposed instructions to the Court.

(2)    Plaintiff has already provided proposed jury instructions pursuant to the Court's prior request. The parties' final proposed instructions in jury cases shall be filed no later than Friday, April 13, 2007. Objections to any proposed instruction shall be filed no later than April 16, 2007 which is one business day before trial.

(3)    In addition to filing the proposed jury instructions, the parties shall submit their proposed instructions (formatted in WordPerfect 9.0 or earlier version) as an attachment to an Internet e-mail sent to the e-mail address of the assigned trial judge listed in paragraph II(E)(2)(c) of the *Administrative Procedures for Filing, Signing, and Verifying Pleadings and Papers by Electronic Means in Civil Cases*.

e.    **Proposed Findings of Fact and Conclusions of Law.** If this case is tried to the Court sitting without a jury, in order to better focus the presentation of evidence, the parties shall file preliminary sets of proposed findings of fact and conclusions of law no later than seven calendar days before trial. In most cases, the trial judge will order the parties to file final sets of proposed findings after the trial transcript has been prepared.


19.    **OTHER.**

a.    **Conventionally Filed Documents.** The following documents shall be served by mail and by fax or hand-delivery on the same date they are filed with the Court if they are conventionally, (i.e., not electronically), filed: final witness and exhibit disclosures and objections; deposition designations, counter-designations, and objections; motions in limine and briefs in support of, or in opposition to, such motions; trial briefs; proposed voir dire questions and objections; proposed jury instructions and objections; and proposed findings of fact and

conclusions of law.  In addition, a party filing a trial brief conventionally shall deliver an extra copy to the trial judge's chambers at the time of filing.

       **b.**        **Miscellaneous.**

       The Court usually will hold a status conference approximately one week prior to trial. Out-of-town counsel may appear by telephone.

       The courtroom is equipped with a television, VCR, Elmo, easel and projector screen for your use.  Counsel wishing to use other equipment should contact Carolyn Lary at least five days prior to trial.

       The courtroom number is 161.   Directly across from the courtroom are two attorney/witness rooms for your use.

       The Court will hold a status conference approximately two to  three weeks prior to trial.

**20.**      **POSSIBLE ADJUSTMENT OF DEADLINES BY TRIAL JUDGE.**

       With regard to pleadings filed shortly before or during the trial, (e.g. motions in limine, trial briefs, proposed jury instructions, etc.), this pretrial order reflects the deadlines that the Court applies as a norm in most cases.  However, the parties should keep in mind that, as a practical matter, complete standardization of the Court's pretrial orders is neither feasible nor desirable.  Depending on the judge who will preside over trial, and what adjustments may be appropriate given the complexity of a particular case, different deadlines and settings may be ordered.  Therefore, from the pretrial conference up to the date of trial, the parties must comply with any orders that might be entered by the trial judge, as well as that judge's trial guidelines and/or exhibit instructions as posted on the court's Internet website: http://www.ksd.uscourts.gov/chambers

       IT IS SO ORDERED.

Dated this ___ day of March, 2007, at Wichita, Kansas

**Deleted:** 2006

_____
Monti L. Belot
U.S. District Judge