IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MONSOUR'S, INC. )
)
        Plaintiffs, )   Case No. 05-1204-MLB
)
v. )
)
MENU MAKER FOODS, INC., )
)
        Defendant. )
)

**AMENDED MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT**

Plaintiffs by and through their attorneys of record, Dustin L. DeVaughn and Richard W. James of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., file this motion to enforce settlement.

        **I.    NATURE OF THE MOTION.**

Defendant Menu Maker Foods, Inc. through its counsel of record J. Val Wachtel made an offer to settle this case for $250,000. The offer was accepted by plaintiff's counsel, Dustin DeVaughn. Upon acceptance of the $250,000 by plaintiff, defendant's counsel for the first time asserted that he did know for sure if the offer was still outstanding, but he "believed" it was.

The same day the offer was accepted Mr. DeVaughn previously confirmed with Mr. Wachtel on the phone the offer was still on the table. Mr. Wachtel even confirmed the offer was on the table when he wrote in an email that "Dick [defendant's president] was getting 'iffy' about his $250,000 offer."

Undoubtedly, Mr. Wachtel had actual authority to settle this case for $250,000 or he never would have made such an offer in writing, confirmed it over the phone, and

suggested that his client was getting "iffy" about his outstanding $250,000 settlement offer.

Most alarming is plaintiff accepted the "offer" on March 26, 2007, but defendant has failed to conclusively state to this date whether the case has been settled or not. Mr. DeVaughn has attempted to communicate with Mr. Wachtel every business day since Mr. Wachtel first alleged he might not have authority for the agreement. Each day Mr. Wachtel advises that he is still waiting on his client's position and whether defendant will abide by the terms of the settlement.

Further, just moments before plaintiff filed its motion to enforce settlement, defendant has now filed another motion for summary judgment on an <u>issue that has been decided by this Court twice</u>. The Third Motion for Summary Judgment will [again] be addressed in a separate pleading if this Court deems it necessary. However, it is important for this Motion for the Court to note that the Pretrial Order cited by defendant in support of its Third Motion for Summary Judgment is actually an uncompleted document, because plaintiff's counsel believed the matter was settled.

While Defendant Menu Maker Foods, Inc. has not specifically said it is unwilling to settle the case for $250,000, it is apparently taking the position that there is no formal settlement. This motion requests enforcement of the settlement agreement.

## II.  STATEMENT OF FACTS.

1.   This breach of contract case has been on file since June 30, 2005. Defendant's counsel throughout the course of this proceeding has remained the same. (See Plaintiff's original Complaint [Doc. 1] and Defendant's Answer [Doc. 7]).

2.   The parties previously participated in a mediation on May 10, 2006 with

Dennis Gillen serving as mediator. During the mediation, defendant Menu Maker Foods, Inc.'s president and sole shareholder Dick Graves attended the same together with defendant's counsel J. Val Wachtel. A tentative settlement agreement of $400,000 was reached contingent upon Dick Graves obtaining the approval of an anonymous family member.

3. The tentative settlement agreement of $400,000 failed due to the anonymous family member's alleged refusal to consent. As a result, litigation continued.

4. By way of email dated March 14, 2007, plaintiff Monsours, Inc. provided defendant Menu Maker Foods, Inc. with a written settlement offer of $420,000. (Exhibit 1).

5. On March 16, 2007, counsel for the parties discussed the case by telephone and defense counsel provided a settlement offer of $250,000 on behalf of defendant Menu Maker Food, Inc. (Exhibit 2).

6. Later that day, during a second telephone conference, plaintiff's counsel rejected that offer and provided a counter offer of $400,000. (Exhibit 2)

7. By way of email sent at 2:50 p.m. on March 16, 2007, defendant Menu Maker Foods, Inc.'s counsel confirmed the two (2) prior discussions. In that email, defense counsel specifically advised "**I was authorized by Mr. Graves to offer $250,000 in settlement.**" (Exhibit 2).

8. On March 26, 2007, plaintiff's counsel contacted defendant Menu Maker Foods, Inc.'s counsel by telephone to inquire about the status of settlement negotiations. At that time, defendant Menu Maker Foods, Inc.'s counsel advised Menu

Maker Foods, Inc. would never go up $75,000 (to $325,000), but might go up to $300,000. Upon inquiry by plaintiff's counsel, defense counsel specifically advised that defendant Menu Maker Foods, Inc.'s settlement offer of $250,000 was still on the table. (See plaintiff's counsel's contemporaneous notes of March 26, 2007, attached as Exhibit 3 and DeVaughn Affidavit authenticating contemporaneous notes attached as Exhibit 11).

9. A short time later that morning, by way of an e-mail sent at 9:18 a.m, March 26, 2007, plaintiff's counsel did not reject the $250,000 settlement offer that defendant's counsel confirmed remained on the table, but instead indicated that ". . . if Menu Maker Foods offers $300,000, this firm will recommend the same to the Monsours." (Exhibit 4).

10. At 3:51 p.m. on March 26, 2007, defendant Menu Maker Foods, Inc.'s counsel responded, in relevant part, that:

> "Dick's response is that he will not pay $300,000 in settlement of this case. In truth, Dick indicated that he was getting 'iffy' about his $250,000 offer."

(Exhibit 5).

11. By way of an e-mail directed from plaintiff's counsel to defendant Menu Maker Foods, Inc.'s counsel at 4:55 p.m. on March 26, 2007, plaintiff's counsel accepted defendant's outstanding $250,000 settlement offer as follows:

> "I just spoke with my clients. They accept Menu Maker's settlement offer of $250,000. The PACA lien has been negotiated down to $50,000 and we will pay it directly from our trust account. You can confirm that with Larry in Florida."

Thereafter, payment instructions were provided. (Exhibit 5).

4

12. The next day, by way of e-mail dated March 27, 2007, counsel for the PACA trust beneficiaries confirmed to both plaintiff and defendant's counsel that it accepted $50,000 in settlement to release their judgment. (Exhibit 6).

13. Also that next day (March 27, 2007), counsel for plaintiff directed an e-mail to defendant Menu Maker Foods, Inc.'s counsel congratulating them on a well-defended case; requested defense counsel to prepare the journal entry of dismissal and a proposed release; and advised them that the Court had been contacted regarding settlement of the case. (Exhibit 7).

14. By way of e-mail sent at 10:09 a.m. on March 27, 2007, defendant Menu Maker Foods, Inc.'s counsel asserted, in part, the following:

> "I have been unable to communicate with Mr. Graves regarding your e-mail 'accepting' our $250,000 settlement offer. Given my inability to speak with Mr. Graves I cannot speak for Menu Maker and confirm that the offer was still outstanding."

(Exhibit 7).

15. Just twelve (12) minutes after receiving defendant Menu Maker Foods, Inc.'s e-mail, counsel for plaintiff responded, in part, as follows:

> "What?
>
> Val, When you and I spoke yesterday I specifically asked you if the $250 was still on the table early yesterday morning and you said it was. My notes from the conversation reference the same. That is why my 9:18 a.m. email from yesterday did not reject the 250, but advised we would recommend 300 if Dick would go to that.
>
> Your 3:51 p.m. email from yesterday indicated that Dick would not go to 300 and was starting to get "iffy" about the 250 settlement offer. That is when my clients accepted the same. Your 3:51 email never indicated the 250 was off the

table."

(Exhibit 8).

16.  The final substantive e-mail from defendant Menu Maker Foods, Inc.'s counsel was then sent at 10:39 a.m. on March 27, 2007. This e-mail provided, in relevant part, as follows:

> "I do not remember saying that the offer was still on the table. **I recall saying that I believed that it was**. I would have had no authority from Graves regarding whether or not the offer still lived. If I did in fact say that the offer was still on the table, I was speaking out of turn and without having first spoken with Mr. Graves.
>
> With regard to the statement "iffy" I was simply reporting what Mr. Cox had reported to me."

(Exhibit 8) (Emphasis added).

17.  Between Tuesday, March 27, 2007, and the date of this motion, counsel for the parties have awaited a final decision from defendant Menu Maker Foods, Inc. to determine whether a controversy actually exists on this settlement issue. As of the date of this motion, defendant Menu Maker Foods, Inc. has not communicated a decision. (Exhibits 9, 10 and 11).

18.  Additionally, the parties' counsel have maintained daily telephone contact with each other regarding the status of the situation. (Exhibit 11).

### III.  ARGUMENTS & AUTHORITIES.

**A.  Defendant Menu Maker Foods, Inc. provided its defense counsel with actual authority to settle this case for $250,000.**

Defendant Menu Maker Foods, Inc. provided its defense counsel with <u>actual settlement authority</u> of $250,000. (Statement of Facts, paragraphs 5 and 7).

6

Specifically, defendant's counsel advised on March 16, 2007 "I was authorized by Mr. Graves to offer $250,000 in settlement."

Following a counter offer by plaintiff of $400,000 and defendant's rejection of the same, counsel for defendant specifically orally advised plaintiff's counsel that defendant Menu Maker Foods, Inc.'s settlement offer of $250,000 was still on the table. (See Statement of Facts, para. 8). A short time later that same morning, plaintiff's counsel did not reject the $250,000 settlement offer that defendant's counsel confirmed remained on the table, but instead indicated that if defendant offered $300,000, that plaintiff's counsel would recommend the same. (See Statement of Facts, para. 9).

After communicating with defendant Menu Maker Foods, Inc.'s general manager Creighton Cox, defendant's counsel propounded an e-mail at 3:51 p.m. on March 26, 2007 advising that defendant Menu Maker Foods, Inc. would not pay $300,000. The e-mail continued that "In truth, Dick [Graves] indicated that he was getting 'iffy' about his $250,000 offer." (See Statement of Facts, para. 10).

After communicating with plaintiff, plaintiff's counsel accepted defendant's $250,000 outstanding settlement offer. (See Statement of Facts, para. 11). Based upon the above and foregoing, it is clear defendant Menu Maker Foods, Inc. provided its counsel with $250,000 settlement authority and never revoked the same.

The relationship between an attorney and a client is one of agency and the general rules of agency apply to that relationship. Miotk v. Rudy, 4 Kan. App.2d 296, 300, 605 P.2d 587 (1980). An agent may bind a principal when the agent either has actual or apparent authority to bind that principal. Id. Based upon the facts of this case, it is crystal clear that defense counsel had <u>actual authority</u> to bind Menu Maker

7

Foods, Inc. to a settlement of $250,000.

**B.    Even if this Court finds defense counsel had no actual authority, based upon the facts of this case, defense counsel had apparent authority to bind Menu Maker Foods, Inc. to the $250,000 settlement agreement.**

Even if, for argument sake, defendant Menu Maker Foods, Inc. had communicated to its defense counsel that its $250,000 was off the table, defense counsel still had <u>apparent authority</u> to bind Menu Maker Foods, Inc.

In this case, defense counsel has represented defendant Menu Maker Foods, Inc. since the inception of the case and has engaged in extensive settlement negotiations on behalf of defendant Menu Maker Foods, Inc.

Plaintiff's counsel specifically recorded in his contemporaneous notes of March 26, 2007 the conversation in which defense counsel advised that defendant Menu Maker Foods, Inc,'s $250,000 settlement offer was still on the table. (See Statement of Facts, para. 8 and 15). Defendant's counsel even referred to the $250,000 outstanding settlement offer in his March 26, 2007 e-mail when he indicated his client was getting "iffy" about the same. (See Statement of Facts, para. 10). Finally, defendant's counsel even conceded in his March 27, 2007 e-mail that he in fact had "believed" the [$250,000] offer was still on the table. (See Statement of Facts, para. 16).

The Kansas Supreme Court in <u>Sawtelle v. Cosden Oil & Gas Co.</u>, 128 Kan. 220, 277 P. 45 (1929) examined the settlement of a dispute that arose in the midst of the drilling of a well between the laborers who were drilling the well and the owners of the well. Among the myriad of issues raised in the case was the question of whether the attorney for the defendants had the authority to settle the dispute. The defendants argued that their attorney had no authority to settle the dispute, invoking the general

8

rule on the limitations of attorney authority. The Kansas Supreme Court held that there is a point at which an attorney becomes more than a limited agent of a party and the party cannot allow the attorney to negotiate a settlement and then try to argue that it had no notice of the terms of the agreement. The Court held:

> The rule that one must ascertain an agent's authority or deal with him at his peril, and that a special agent cannot bind his principal when acting outside the scope of his authority, is subject to the qualification that, where an agent is intrusted with a certain kind of business, he becomes between the principal and parties dealing with him, the general agent for such business, and his acts bind the principal, though he violates a private instruction . . . . The reason for this rule is obvious. No man is at liberty to send a man forth to deal for him, with secret instructions . . . which are not communicated to those with whom he deals and then when his agent has deviated from those instructions to say that he was a special agent, that the instructions was a limitation upon his authority, and those that dealt with him acted at their peril.

Id.

**B.   This settlement agreement is a Kansas contract and Kansas law favors the compromise and settlement of disputes.**

The settlement agreement between plaintiff Monsours, Inc. and defendant Menu Maker Foods, Inc. was offered and accepted within the state of Kansas and, therefore, is a Kansas contract[1]. The enforceability of a settlement agreement is governed by state law. See United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000). Under Kansas law, the court is to enforce settlement agreements "in the absence of bad faith or fraud." Rogler v. Standard Ins. Co., 30 Fed.Appx. 909, 2002 WL 307731 (10th Cir.

---

[1] For purposes of interpreting the settlement agreement, Kansas choice of law provisions are used to ascertain which state's substantive law are to apply. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941). Kansas law dictates that the law of the state where the last act necessary to form a contract took place governs conflicts over the interpretation of the contract. State Farm Mutual Automobile Ins. Co., v. Baker, 14 Kan.App. 2d 641, 797 P.2d 168 (1990). Because the settlement agreement was accepted by plaintiff in Kansas, this state's law applies.

Feb 28, 2002) and Krantz v. Univ. of Kan., 271 Kan. 234, 21 P.3d 561, 567 (Kan. 2001). See also Lewis v. Gilbert, 14 Kan. App. 2d 201, 202, 785 P.2d 1367, 1368 (Kan.App.1990) ("'the law favors the compromise and settlement of disputes, and when parties, in the absence of any element of fraud or bad faith, enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it.")

In addition, "[a] trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." United States v. Hardage, 982 F. 2d 1491, 1496 (10th Cir. 1993).

There is no bad faith or fraud present in this situation. This Court should enforce the valid settlement agreement of $250,000 made between the parties.

## CONCLUSION

This Court should enforce the valid settlement agreement of $250,000 made between the parties. Additionally, this Court should order defendant to pay interest at the statutory rate from the date of the March 26, 2007 settlement agreement.

Respectfully Submitted,

s/ Dustin L. DeVaughn
Dustin L. DeVaughn, #16559
Richard W. James, #19822
*Attorney for Plaintiffs*
McDONALD, TINKER,
SKAER, QUINN & HERRINGTON, P.A.
R.H. Garvey Building
300 West Douglas Avenue, Suite 500
P.O. Box 207
Wichita, KS 67202-2909
Telephone: (316) 263-5851
Fax: (316) 263-4677
Email: ddevaughn@mtsqh.com
rjames@mtsqh.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of April, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

John Val Wachtel
Alex Mitchell
Klenda, Mitchell, Austerman
 & Zuercher,
Suite 1600, 201 North Main,
Wichita, KS 67202
Tele: 316.267.0221
Fax: 316.267.0333
jvwachtes@kmazlaw.com
Attorney for Defendant

Jeffrey Eastman
Keleher & Eastman Law Firm
403 N.W. Englewood Rd.
Gladstone MO 64118
Business Tele: 816.452.6030
Fax: 816.455.0969
Home: 816.436.1506
Cell: 816.213.0819
jse@keleher-eastman.com
Attorney for Defendant

          s/ Richard W. James
          Dustin L. DeVaughn, #16559
          Richard W. James, #19822
          *Attorney for Plaintiffs*
          McDONALD, TINKER,
          SKAER, QUINN & HERRINGTON, P.A.
          R.H. Garvey Building
          300 West Douglas Avenue, Suite 500
          P.O. Box 207
          Wichita, KS 67202-2909
          Telephone: (316) 263-5851
          Fax: (316) 263-4677
          Email: ddevaughn@mtsqh.com
             rjames@mtsqh.com