KLENDA, MITCHELL, AUSTERMAN
  &amp; ZUERCHER, L.L.C.
301 N. Main, Suite 1600
Wichita, KS 67202-4888
(316) 267-0331

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MONSOUR'S, INC., )
           Plaintiffs, )
)
vs. ) No. 05-1204-MLB
)
MENU MAKER FOODS, INC., )
           Defendant. )
)

### AFFIDAVIT OF JOHN V. WACHTEL

STATE OF KANSAS )
                   ) ss
COUNTY OF SEDGWICK )

     JOHN V. WACHTEL, the undersigned, of lawful age and having first been duly sworn upon his oath, states the following of his own personal knowledge:

     1.     I am one of the attorney's for the defendant, Menu Maker Foods, Inc. (hereinafter "Menu Maker,") and I am familiar with this litigation.

     2.     Commencing on March 13, 2006 and ending on March 15, 2007, I met with Mr. Jon R. 'Dick' Graves, President of Menu Maker Foods, Inc., Mr. Creighton Cox, General Manager of Menu Maker Foods, Inc. and several Menu Maker Foods, Inc. employees to prepare for trial.

     3.     During that period, and in meetings with Mr. Graves and Mr. Cox, we discussed whether the plaintiff's case had been weakened as a result of various hearings and rulings in this case. We decided that it had.



4. Mr. Graves instructed me that Menu Maker would offer, and I was authorized to offer, $250,000.00 in full settlement of this case. I was further instructed that the settlement funds could be available within one week; however, funds were not to be paid until a settlement agreement containing a release of claims had been signed by the parties, and by plaintiff's shareholders.

5. I suggested first an offer should be sought from plaintiff. Mr. Graves advised me to do so; however, he also told me that if and to the extent that the plaintiff's settlement offer was in excess of $250,000.00, that offer was to be rejected, and a $250,000.00 counteroffer could be made.

6. On or about March 14th Mr. DeVaughn made a $420,000.00 settlement offer which I rejected. I reported this to Mr. Graves.

7. On or about March 16th additional settlement discussions were had between Mr. DeVaughn and me. During those discussions, and as instructed by Mr. Graves, I rejected the $420,000.00 offer and made a counteroffer of $250,000.00 to settle the case. As part of that counter offer, the monies were not to be paid until a settlement agreement had been executed. I reported this to Mr. Graves and Mr. Cox.

8. On or about that same day, Mr. DeVaughn advised me that Menu Maker's counteroffer and had been rejected, and that the plaintiff would settle in the amount of $400,000.00. I reported this counteroffer to Mr. Cox and Mr. Graves.

9. Following discussions with Mr. Graves and Mr. Cox, I was instructed to reject the plaintiff's $400,000.00 counteroffer, and to make another counteroffer to settle this case for $250,000.00. I then advised Mr. DeVaughn that the plaintiff's $400,000.00 counteroffer was

rejected, and that I was authorized by Menu Maker to once again make a counteroffer of $250,000.00 to settle this case. I reported this conversation to either Mr. Graves or Mr. Cox.

10.    Further discussions were had between Mr. DeVaughn and me regarding settlement. During those discussions Mr. DeVaughn sought to get Menu Maker to increase its settlement offer. I told Mr. DeVaughn that Menu Maker would not pay $400,000.00 to settle this case, and that Menu Maker had authorized me to once again offer $250,000.00 to settle the case. I further advised Mr. DeVaughn that I doubted that even in the event of further negotiations, Menu Maker would pay more than $300,000.00 in settlement, and that Menu Maker would certainly not accept any settlement offer that increased the settlement amount by between $50,000.00 and $75,000.00. I reported this conversation to Mr. Cox, who reported it to Mr. Graves.

11.    On or about March 26th, and prior to 9:18 a.m. on that date, discussions were had with Mr. DeVaughn. During those discussions Mr. DeVaughn inquired if Menu Maker's $250,000.00 counteroffer was still pending. I advised that it was. Later on that same date Mr. DeVaughn wrote to me and advised that if Menu Maker would increase its offer to $300,000.00, Mr. DeVaughn would recommend that the plaintiff accept that offer. Mr. DeVaughn demanded to know Menu Maker's response by 5:00 p.m. on that date. I believed that the $300,000.00 was a rejection of Menu Maker's pending offer, and was in fact a counteroffer. I told Mr. DeVaughn that I would pass the $300,000.00 offer on to Menu Maker, that I doubted that Menu Maker would accept such an offer, and that I would advise Mr. DeVaughn of Menu Maker's position.

12.    On that date, and because Mr. Graves was on vacation, I called Mr. Cox and advised him that the plaintiff had again rejected Menu Maker's proposed $250,000.00

3

settlement, and it had made what to me appeared to be a $300,000.00 settlement counteroffer. Mr. Cox told me that he would pass this information on to Mr. Graves.

13. Mr. Cox called me back. He reported that he had talked to Mr. Graves who advised him that Menu Maker would not settle for the plaintiff's $300,000.00 offer, and that Mr. Graves was feeling 'iffy' about my prior $250,000.00 settlement offers.

14. At approximately 3:51 p.m. on that date I sent an e-mail to Mr. DeVaughn and advised that: "Dick's response is that he will not pay $300,000 in settlement of this case. In truth, Dick indicated that he was getting 'iffy' about his $250,000.00 offer." Since writing that e-mail I have learned that the word "iffy" was Mr. Cox's word and not Mr. Graves.

15. At approximately 4:55 p.m. on that date Mr. DeVaughn e-mailed me indicating that plaintiff had accepted the $250,000.00 offer. Mr. DeVaughn's e-mail to that effect read in pertinent part as follows: "I just spoke with my clients. They accept Manu Maker's settlement offer of $250,000.00." Sometime before 5:30 p.m. on that date I forwarded a copy of Mr. DeVaughn's e-mail to Mr. Cox and Mr. Graves.

16. During the morning of March 27th, Mr. Mitchell and I discussed the plaintiff's purported acceptance of Menu Maker's $250,000.00 offer. We were unable to contact Mr. Graves during those discussions. Following our discussions I sent Mr. DeVaughn an e-mail which read as follows:

> "I have been unable to communicate with Mr. Graves regarding your e-mail "accepting" our $250,000.00 settlement offer. Given my inability to speak with Mr. Graves I cannot speak for Menu Maker and confirm that the offer was still outstanding. I will try diligently to get Mr. Graves on the phone today and consult with him about this. I expect that I will learn nothing before Wednesday, at which time I will get back to you."

Copies of that e-mail were sent to Mr. Cox and Mr. Graves.

17. On or about March 28th I spoke with Mr. Graves regarding the plaintiff's purported acceptance of Menu Maker's $250,000.00 offer. Mr. Graves told me that he was unwilling to settle the case. However, he went on to say that he would consider the plaintiff's "acceptance" as a counteroffer and would consider it and decide whether to accept.

18. I advised Mr. DeVaughn of Menu Maker's decision and that it would consider what it believed to be plaintiff's settlement offer. On March 30th at approximately 7:00 p.m. I was advised by Mr. Graves that Menu Maker would not accept the plaintiff's offer. I immediately called Mr. DeVaughn and advised him of Menu Maker's position.

19. Plaintiff's position as set out in its memorandum in support of this motion appears to be that when I spoke with Mr. DeVaughn prior to receiving Mr. DeVaughn's e-mail March 26th, 3:51 o'clock e-mail in which Mr. DeVaughn asked me to see if Menu Maker would settle for $300,000.00, I believed, and quite probably advised Mr. DeVaughn during our early morning telephone conference that at that time Menu Maker's $250,000.00 offer was still pending. I have no recollection of repeating that at any other time during that day.

20. When I received Mr. DeVaughn's March 26th, 3:51 p.m., e-mail, I understood that the plaintiff had yet again rejected Menu Maker's settlement offer, and was in fact making a counteroffer to settle for $300,000.00. It was with that understanding that I forwarded Mr. DeVaughn's e-mail to Mr. Cox for him to discuss with Mr. Graves.

21. I did respond to a March 27th e-mail from Mr. DeVaughn in which Mr. DeVaughn expressed shock that the case had not settled for $250,000.00. I responded to Mr. DeVaughn's e-mail as follows

> I do not remember saying that the offer was still in the table. I recall saying that I believe that it was. I would have no authority from Graves regarding whether or not the offer still lived. If I did in fact say that the offer was still on the table, I was speaking out of turn and without having spoken to Mr. Graves.

Upon reflection and review, the contents of that e-mail were not completely correct. What I was trying to convey, was that prior to Mr. DeVaughn's e-mail asking that Menu Maker raise its settlement offer to $300,000.00 it was my understanding that defendant's $250,000.00 offer was still available. However following receipt of what I took to be yet another counteroffer, and further following my receipt of Mr. Cox's e-mail indicating that Mr. Graves was feeling "iffy" about his initial offers, I was confident that I could not settle for $250,000.00 without the express approval of my client.

22.    Between 7:00 p.m. on March 16th and the day of filing of plaintiff's initial motion to enforce, counsel for the parties have had contact concerning this case. Those contacts have not been daily.

FURTHER AFFIANT SAITH NAUGHT:

_____
John V. Wachtel - Affiant

SUBSCRIBED AND SWORN TO before me, a Notary Public in and for said County and State, this 13th day of April, 2007.

_____
Notary Public

My Appointment Expires:

CARMELLE K. SWEET
Notary Public - State of Kansas
My Appt. Expires 7-06-09

KMAZ Doc. 332327

6

KLENDA, MITCHELL, AUSTERMAN
    & ZUERCHER, L.L.C.
301 N. Main, Suite 1600
Wichita, KS 67202-4888
(316) 267-0331

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MONSOUR'S, INC.,                 )
    Plaintiffs,                     )
                                     )
vs.                                  )    No. 05-1204-MLB
                                     )
MENU MAKER FOODS, INC.,      )
    Defendant.                    )
_____)

### AFFIDAVIT OF JON R. GRAVES

STATE OF MISSOURI     )
                            ) ss
COUNTY OF COLE       )

     JON R. GRAVES, the undersigned, having first been duly sworn upon his oath states the following of his own personal knowledge:

     1.     I am the President of the defendant, Menu Maker Foods, Inc., (hereinafter "Menu Maker") and am familiar with this litigation.

     2.     Commencing on March 13, 2007 and ending on March 15, 2007, I met with Mr. Wachtel and several Menu Maker employees to prepare for trial.

     3.     During that period and in discussions with Mr. Wachtel and Menu Maker's Mr. Creighton Cox, we discussed whether the plaintiff's case had been weakened as a result of various hearings and rulings in this case. We decided that it had.

     4.     I instructed Mr. Wachtel that he was authorized to offer $250,000.00 in full settlement of this case. I further instructed that the settlement payment could be available within

1



one week; however, it was not to be paid until a settlement agreement containing a release of claims had been signed by the parties.

5.  Mr. Wachtel suggested that the better way to proceed was to contact Mr. DeVaughn and solicit a settlement offer from him. I advised Mr. Wachtel to do so; however I told him that if and to the extent that the plaintiff's settlement offer was in excess of $250,000.00 that offer was to be rejected, and a $250,000.00 counter offer was to be made.

6.  Mr. Wachtel advised me that on March 14th the defendant had made a settlement offer of $420,000.00, which Mr. Wachtel rejected.

7.  Mr. Wachtel later told me that on March 16th he and Mr. DeVaughn had further settlement discussions, and during those discussions Mr. Wachtel made an offer to settle this case in the amount of $250,000.00, which sum was not to be paid until a settlement agreement had been executed. Mr. Wachtel made that offer.

8.  I was told later that that day further discussions were had between Mr. Wachtel and Mr. DeVaughn, during which Mr. DeVaughn rejected Menu Maker's offer and made a counter offer of $400,000.00.

9.  Following discussions with Mr. Wachtel, I instructed Mr. Wachtel to reject the $400,000.00 counter offer, and to make another offer to settle this case for $250,000.00. Mr. Wachtel reported that he advised Mr. DeVaughn that Menu Maker rejected the plaintiff's $400,000.00 settlement offer and once again made a settlement offer of $250,000.00.

10. I have been advised by Mr. Wachtel and Mr. Cox that on or about March 26th, further settlement discussions occurred between Mr. DeVaughn and Mr. Wachtel, during which Mr. DeVaughn sought to get Menu Maker to increase its $250,000.00 settlement offer. I have been told by Mr. Wachtel that on or about that date, Mr. Wachtel advised Mr. DeVaughn that

2

Menu Maker would not pay $400,000.00 in settlement, that the plaintiff's offer was rejected and that Menu Maker had authorized him to renew its $250,000.00 offer. Mr. Wachtel also advised Mr. DeVaughn that he doubted that even in the event of further negotiations, Menu Maker would pay more than $300,000.00 in settlement and that Menu Maker would certainly not accept any settlement offer that increased the settlement amount by between $50,000.00 and $75,000.00. I am further advised that Mr. Wachtel did not offer to settle this case for $300,000.00.

11. Mr. Cox has told me that on March 26th, plaintiff's counsel wrote to Mr. Wachtel and advised that if Menu Maker would increase its offer to $300,000.00, Mr. DeVaughn would recommend that the plaintiff accept that offer. I was told that Mr. DeVaughn demanded to know Menu Maker's response by 5:00 p.m. on that date. I was told that Mr. Wachtel indicated to Mr. DeVaughn that he did not believe that Menu Maker would settle for $300,000.00 offer, but that he would advise me of the plaintiff's position.

12. Because I was on vacation, Mr. Wachtel called Menu Maker's Creighton Cox and advised Mr. Cox that the plaintiff had rejected Menu Maker's $250,000.00 settlement, and had made what to Mr. Wachtel appeared to be a $300,000.00 settlement offer.

13. Mr. Cox contacted me by telephone and advised me of the status of the settlement negotiations. I believed that the $300,000.00 figure was yet another rejection of Menu Maker's settlement offer, and I told Mr. Cox to advise Mr. Wachtel that Menu Maker would not accept a $300,000.00 offer of settlement. I also told Mr. Cox that, in the face of our settlement offer having been at least twice rejected, I was reconsidering whether I was then willing to settle at all. Mr. Cox indicated that he communicated my position to Mr. Wachtel.

3

14. I am advised that Mr. Wachtel contacted Mr. DeVaughn by e-mail on the 26th and told Mr. DeVaughn that Menu Maker would not settle for $300,000.00, and that I was feeling 'iffy' about my prior $250,000.00 settlement offers.

15. Later that day, I decided that Menu Maker, after having its reasonable settlement offers rejected at least three times, would not settle the case. I did not at that time communicate my decision to Mr. Wachtel, but rather I advised him of my decision on the following morning.

16. On March 28th I learned that at 4:55 p.m. CDT on March 26th Mr. DeVaughn had written Mr. Wachtel an e-mail which read in part: "I just spoke with my clients. They accept Menu Maker's settlement offer of $250,000.00."

17. I was told by Mr. Cox that on the morning of March 27th Mr. Wachtel, Mr. Mitchell and he had discussions about the plaintiff's 'purported' acceptance of Menu Maker's rejected prior offers. Following their discussions Mr. Wachtel sent an e-mail to Mr. DeVaughn which read in part, as follows: "I have been unable to communicate with Mr. Graves regarding your e-mail "accepting" our $250,000.00 settlement offer. Given my inability to speak with Mr. Graves I cannot speak for Menu Maker and confirm that the offer was still outstanding. I will try diligently to get Mr. Graves on the phone today and consult with him about this. I expect that I will learn nothing before Wednesday, at which time I will get back to you."

18. I spoke with Mr. Wachtel, and discussed Mr. DeVaughn' e-mail purporting to accept our rejected settlement offers, and I told Mr. Wachtel that I was not willing to settle the case. I did say that I would treat Mr. DeVaughn's purported acceptance as a counter offer, that I would consider it and decide whether or not to accept it.

19. During the next few days I considered what I believed was a $250,000.00 settlement offer from the plaintiff. After due consideration, and on March 30th at about 7:00 p.m.

4

I advised Mr. Wachtel that Menu Maker would not accept the offer. I understand that immediately following our telephone conversation he called Mr. DeVaughn and informed him of Menu Maker's position.

Further Affiant saith naught.

_____
Jon R. Graves

SUBSCRIBED AND SWORN TO before me, a Notary Public in and for said County and State, this 9th day of April, 2007.

_____
Notary Public

My Commission/Appointment Expires: JUN 21, 2008

MELANIE CHRISTIE
Notary Public - State of Missouri
County of Cole
My Commission Expires Jun 21, 2008

5

KLENDA, MITCHELL, AUSTERMAN
    & ZUERCHER, L.L.C.
301 N. Main, Suite 1600
Wichita, KS 67202-4888
(316) 267-0331

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MONSOUR'S, INC., )<br>    Plaintiffs, )<br>)<br>vs. )<br>)<br>MENU MAKER FOODS, INC., )<br>    Defendant. )<br>_____ ) | No. 05-1204-MLB |

**AFFIDAVIT OF CREIGHTON C. COX**

STATE OF MISSOURI    )
                           ) ss
COUNTY OF COLE       )

       CREIGHTON C. COX, the undersigned, having first been duly sworn upon his oath, states the following of his own personal knowledge:

       1.    I am the General Manager of the defendant, Menu Maker Foods, Inc., (hereinafter "Menu Maker") and am familiar with this litigation.

       2.    Commencing on March 13, 2007 and ending on March 15, 2007, I met with Mr. Wachtel, Menu Maker's president Mr. Jon R. Graves and several Menu Maker employees to prepare for trial.

       3.    During that period and in discussions with Mr. Wachtel and Mr. Graves, we discussed whether the plaintiff's case had been weakened as a result of various hearings and rulings in this case. We decided that it had.

1


EXHIBIT C

4. Mr. Graves instructed Mr. Wachtel that he was authorized to offer $250,000.00 in full settlement of this case. He further instructed that the settlement payment could be available within one week; however, it was not to be paid until a settlement agreement containing a release of claims had been signed by the parties.

5. Mr. Wachtel suggested that the better way to proceed was to contact Mr. DeVaughn and solicit a settlement offer from him. Mr. Graves advised Mr. Wachtel to do so; however, he told Mr. Wachtel that if and to the extent that the plaintiff's settlement offer was in excess of $250,000.00, that offer was to be rejected, and a $250,000.00 counter offer was to be made.

6. On or about March 14th, Mr. Wachtel advised Mr. Graves and me that on March 14th the defendant had made a settlement offer of $420,000.00, which Mr. Wachtel rejected.

7. Mr. Wachtel later told me and Mr. Graves, that on March 16th he and Mr. DeVaughn had further settlement discussions, and during those discussions Mr. Wachtel made an offer to settle this case in the amount of $250,000.00, which sum was not to be paid until a settlement agreement had been executed .

8. Later that day I was told that further discussions were had between Mr. Wachtel and Mr. DeVaughn, during which Mr. DeVaughn rejected Menu Maker's offer and made a counter offer of $400,000.00.

9. I participated in discussions with Mr. Wachtel and Mr. Graves, in which Mr. Graves instructed Mr. Wachtel to reject the $400,000.00 counter offer, and to make another offer to settle this case for $250,000.00. Later Mr. Wachtel reported that he had advised Mr. DeVaughn that Menu Maker rejected the plaintiff's $400,000.00 settlement offer and once again made a settlement offer of $250,000.00. I reported that information to Mr. Graves.

10. I have been advised by Mr. Wachtel that on or about March 26th, further settlement discussions occurred between he and Mr. DeVaughn, during which Mr. DeVaughn sought to get Menu Maker to increase its $250,000.00 settlement offer. I have been told by Mr. Wachtel that on or about that date Mr. Wachtel advised Mr. DeVaughn that Menu Maker would not pay $400,000.00 in settlement, that the plaintiff's offer was rejected and that Menu Maker had authorized him to renew its $250,000.00 offer. Mr. Wachtel also advised Mr. DeVaughn that he doubted that even in the event of further negotiations, Menu Maker would pay more than $300,000.00 in settlement and that Menu Maker would certainly not accept any settlement offer that increased the settlement amount by between $50,000.00 and $75,000.00, and that Mr. Wachtel did not offer to settle for $300,000.00. I reported this to Mr. Graves.

11. On March 26th Mr. Wachtel advised me that on that date, plaintiff's counsel wrote to him and advised that if Menu Maker would increase its offer to $300,000.00, Mr. DeVaughn would recommend that the plaintiff accept that offer. I was also told that Mr. DeVaughn demanded to know Menu Maker's response by 5:00 p.m. on that date. I was further told that Mr. Wachtel indicated to Mr. DeVaughn that he did not believe that Menu Maker would settle for $300,000.00 offer, but that he would advise Mr. Graves the plaintiff's offer. I reported this information to Mr. Graves.

12. On that date I contacted Mr. Graves by telephone and advised him of the status of the settlement negotiations. Mr. Graves advised me that he believed that the $300,000.00 figure was yet another rejection of Menu Maker's settlement offer, and that he adamantly rejected that $300,000.00 offer. He told me to advise Mr. Wachtel that Menu Maker would not accept a $300,000.00 offer of settlement. Mr. Graves also told me that, in the face of our settlement offers having been rejected, he was reconsidering whether he was then willing to settle at all.

3

13. Immediately following the conversation with Mr. Graves I called Mr. Wachtel and told him that Menu Maker rejected the plaintiff's latest settlement offer. I also told Mr. Wachtel that Mr. Graves was feeling "iffy" about any settlement. "Iffy" was my word and not Mr. Graves.

14. Mr. Wachtel told me that he contacted Mr. DeVaughn by e-mail on the 26th and told Mr. DeVaughn that Menu Maker would not settle for $300,000.00, and that Mr. Graves was feeling 'iffy' about his prior $250,000.00 settlement offers. I communicated this information to Mr. Graves.

15. During the morning of March 27th Mr. Wachtel, Mr. Mitchell and I discussed Mr. DeVaughn's e-mail of March 26th in which he had advised of the plaintiff's purported acceptance of Menu Maker's $250,000.00 offer. Following the discussions, Mr. Wachtel sent an e-mail to Mr. DeVaughn which read in part, as follows: "I have been unable to communicate with Mr. Graves regarding your e-mail "accepting" our $250,000.00 settlement offer. Given my inability to speak with Mr. Graves I cannot speak for Menu Maker and confirm that the offer was still outstanding. I will try diligently to get Mr. Graves on the phone today and consult with him about this. I expect that I will learn nothing before Wednesday, at which time I will get back to you."

16. On or about March 28th I discussed with Mr. Graves the purported acceptance of Menu Maker's settlement offer by the plaintiffs, and of the discussions had among Mr. Wachtel, Mr. Mitchell and me, and of the e-mail that Mr. Wachtel sent to Mr. DeVaughn on the morning of March 27th.

Further Affiant saith naught.

(Signature on Following Page)

4

_____
Creighton C. Cox

SUBSCRIBED AND SWORN TO before me, a Notary Public in and for said County and State, this 6TH day of April, 2007.

_____
Notary Public

MELANIE CHRISTIE
Notary Public - State of Missouri
County of Cole
My Commission Expires Jun 21, 2008

My Commission/Appointment Expires: JUN 21, 2008

KMAZ Doc. 332263

5