IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MONSOUR'S, INC.,                )
                  Plaintiff,    )
                                )
vs.                             )    No. 05-1204-MLB
                                )
MENU MAKER FOODS, INC.,         )
                  Defendant.    )
                                )

### DEFENDANT'S AMENDED RESPONSE TO PLAINTIFF'S
### MOTION TO ENFORCE SETTLEMENT AGREEMENT

COMES NOW the defendant, by and through its attorneys of record John Val Wachtel and Alexander B. Mitchell, of Klenda, Mitchell, Austerman & Zuercher, L.L.C. and for its Response to Plaintiff's Motion to Enforce Settlement Agreement, states:

Nature of Motion

Plaintiff seeks to enforce a settlement agreement which it claims was entered into between the parties' counsel on March 26, 2007, at approximately 4:55 o'clock p.m. The defendant claims that although it made several settlement offers, all of which were rejected by the plaintiff, that on March 26th, and prior to 9:18 a.m., there was a $250,000.00 settlement offer pending to plaintiff. When at 9:18 o'clock a.m. on that date plaintiff did not accept the offer, but rather, attempted to persuade the defendant to increase that offer by $50,000.00, it rejected the offer and counter offered to settle for $300,000.00. The defendant rejected the counteroffer and did not renew its $250,000.00 settlement offer, and there was no outstanding offer for the plaintiff to accept, as it attempted to do by e-mail at 4:55 o'clock p.m. on that date. Plaintiff's belated attempted at "acceptance" was ineffective, and was in fact an new offer from plaintiff to settle for $250,000.00. That offer was considered and, on March 30th, it was rejected.

Movant's Statement of Facts

1. Plaintiff's statement of facts number 1 is not controverted.

2. Plaintiff's statement of facts number 2, although not relevant to these proceedings, is not controverted.

3. Plaintiff's statement of facts number 3, although not relevant to these proceedings is not controverted.

4. Plaintiff's statement of facts number 4 is not controverted.

5. Plaintiff's statement of facts number 5 is not controverted.

6. Plaintiff's statement of facts number 6 is not controverted.

7. Plaintiff's statement of facts number 7 is not controverted.

8. Plaintiff's statement of facts number 8 is controverted. On or about March 26th further discussions were had between plaintiff's counsel and defendant's counsel. During those discussions plaintiff sought to get defendant to raise its settlement offer. Plaintiff's counsel was advised that defendant would not pay $400,000.00 to settle, and that it had authorized its counsel to again offer $250,000.00 in settlement. Defendant's counsel further advised even in the event of further negotiations, that he doubted defendant would pay more than $300,000.00 in settlement, and that defendant would not accept any offer that increased the settlement amount by between $50,000.00 and $75,000.00. (*See* Affidavit of John Val Wachtel, a copy of which is attached hereto, marked Exhibit A, and incorporated herein by reference.)

9. Plaintiff's statement of facts number 9 is controverted. Defendant does not dispute what is written in statement 9, it does dispute the implied conclusion that the plaintiff's March $26,^{th}$ 9:18 a.m. request that defendant raise its offer was not a rejection of plaintiff's pending $250,000.00 settlement offer. (*See* Affidavit of Wachtel, Exhibit A; Affidavit of Menu Maker's

2

President Jon R. Graves, a copy of which is attached hereto, marked Exhibit B, and incorporated herein by reference and Affidavit of Menu Maker's General Manager, Creighton Cox, a copy of which is attached hereto, marked Exhibit C, and incorporated herein by reference.)

10. Plaintiff's statement of facts number 10 is controverted in part. Despite defendant's counsel's e-mail in which he wrote "Dick's response is that he will not pay $300,000.00 in settlement of this case. In truth Dick indicated that he was getting 'iffy' about his $250,000.00 offer." The word "iffy" was not Mr. Graves' rather it was Mr. Cox word, which was wrongfully attributed to Mr. Graves. (*See* Exhibit A, Affidavit of Wachtel; Exhibit B, Affidavit of Graves; and Exhibit C; Affidavit of Cox.)

11. Plaintiff's statement of facts number 11 is not controverted to the extent that defendant admits that plaintiff's counsel sent an e-mail to defendant's counsel on May 26,$^{th}$ at 4:55 p.m., and that e-mail is correctly quoted in statement of facts number 11.

12. Plaintiff's statement of facts number 12 is not controverted.

13. Plaintiff's statement of facts number 13 is not controverted.

14. Plaintiff's statement of facts number 14 is not controverted to the extent that defendant admits that its counsel sent to plaintiff's counsel the e-mail quoted in part in plaintiff's statement of facts number 14.

15. Plaintiff's statement of facts number 15 is not controverted. Defendant admits that plaintiff's counsel did send to defendant's counsel the e-mail quoted in statement of facts number 15.

16. Plaintiff's statement of facts number 16 is not controverted. Defendant admits that its counsel sent the e-mail quoted by plaintiff in statement of facts number 16.

17. Plaintiff's statement of facts number 17 is controverted. Between March 27th and March 30th, counsel for the parties continued to have conversations regarding settlement. (*See* Exhibit A, Affidavit of Wachtel.) During which time defendant considered whether it would accept what it considered an offer from the plaintiff to settle for $250,000.00. On March 30th, defendant rejected that offer. (*See* Exhibit B, Affidavit of Graves.) At approximately 7:00 p.m. on March 30th, defendant's counsel informed plaintiff's counsel of defendant's decision to reject the plaintiff's pending $250,000.00 settlement offer. (*See* Exhibit A, Affidavit of Wachtel.)

18. Plaintiff's statement of facts number 18 is controverted. Since March 30th, counsel for the parties have had some contact regarding settlement and the issue presented by plaintiff in its motion and amended brief in support of that motion. That contact has not been daily. (*See* Exhibit A, Affidavit of Wachtel.)

Statement of Additional Facts

1. On or about March 13, 2007 defendant instructed and authorized its counsel to attempt to settle this case for $250,000.00. (*See* Exhibit B, Affidavit of Graves, ¶ 4.)

2. On March 14th, defendant was advised that plaintiff had made a settlement offer of $420,000.00, which Mr. Wachtel rejected. (*Id*. at ¶ 6.)

3. Counsel later reported that on March 16,$^{th}$ he and plaintiff's counsel had further settlement discussions during which Mr. Wachtel made an offer to settle in the amount of $250,000.00, subject to execution of releases by defendant and its shareholders. (*Id*. at ¶ 7.)

4. Later that that day further discussions were had between counsel for the parties, during which plaintiff rejected defendant's offer, and made a $400,000.00 counter offer. (*Id*. at ¶ 8.) Defendant instructed counsel to reject the counteroffer, and to make another offer to settle for $250,000.00, which counsel did. (*Id*. at ¶ 9.).

5. On or about March 26th, further settlement discussions occurred between the parties' counsel, during which plaintiff sought to get defendant to increase its offer. (*Id*. at ¶ 10.)

6. During those discussions, defendant's counsel advised plaintiff's counsel that defendant would not pay $400,000.00 in settlement, and that defendant had authorized him to renew the $250,000.00 offer. Defendant's counsel further advised that, even in the face of further negotiations, he doubted that defendant would pay more than $300,000.00 in settlement, and that defendant would not accept any settlement offer that increased the settlement amount by between $50,000.00 and $75,000.00. (*See* Exhibit A, Affidavit of Wachtel at ¶ 10.)

7. Later that day Menu Maker's President, Mr. Graves, was advised by Mr. Cox, its General Manager, that plaintiff's counsel had written to Mr. Wachtel and advised that if defendant would increase its offer to $300,000.00, plaintiff's counsel would recommend that the plaintiff accept that offer. Mr. Cox further advised Mr. Graves that Mr. Wachtel indicated to plaintiff's counsel that he did not believe defendant would settle for the $300,000.00 offer, but that he would advise Mr. Graves of the plaintiff's position. (*See* Exhibit B, Affidavit of Graves at ¶¶ 11, 12 and 13.)

8. Defendant believed that the $300,000.00 figure was yet another rejection of its settlement offer. Mr. Cox was told to advise Mr. Wachtel that defendant would not accept a $300,000.00 settlement offer. Mr. Cox was also told that, in the face of defendant's offers having been rejected, defendant was reconsidering whether it was willing to settle at all. (*Id*. at ¶ 13.)

9. Mr. Cox told Mr. Wachtel that Menu Maker would not settle for $300,000.00 and that Mr. Graves was feeling "iffy" about any settlement. (*See* Exhibit C, Affidavit of Cox, at ¶ 13.)

10. At approximately 3:51 p.m. on March 26,th defendant's counsel sent an e-mail to plaintiff's counsel which read: "Dick's response is that he will not pay $300,000.00 in settlement of this case. In truth, Dick indicated that he was getting 'iffy' about his $250,000.00 offer." (*See* Exhibit A, Affidavit of Wachtel at ¶ 14.)

11. At approximately 4:55 p.m. on that date, plaintiff's counsel advised defendant's counsel by e-mail that defendant's $250,000.00 had been "accepted." (*Id*. at ¶ 14.)

12. On the morning of March 27th defendant's counsel and Mr. Cox discussed the plaintiff's purported acceptance of defendant's earlier offer. Mr. Graves could not be contacted that morning. Defendant considered the "acceptance" to be a new settlement offer, and following the discussions, Mr. Wachtel e-mailed Mr. DeVaughn as follows:

> I have been unable to communicate with Mr. Graves regarding your e-mail 'accepting' our $250,000.00 settlement offer. Given my inability to speak with Mr. Graves I cannot speak for Menu Maker and confirm that the offer was still outstanding. I will try diligently to get Mr. Graves on the phone today and consult with him about this. I expect that I will learn nothing before Wednesday, at which time I will get back to you.

(*Id*. at ¶ 16.)

13. Between March 28th and March 30th defendant considered whether to settle for plaintiff's $250,000.00 offer. Plaintiff's counsel was made aware of this. On March 30th, plaintiff's offer was rejected. That decision was communicated to plaintiff's counsel. (*Id*. at ¶¶ 17 and 18. *See also* Exhibit B, Affidavit of Graves, ¶¶ 18 and 19.)

Argument and Authorities

The enforceability of settlement agreements is a matter of state law. *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000). It is undisputed that, if appropriate under state law, the United States District Courts have the power to summarily enforce a settlement

agreement entered into while the litigation is pending. *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993).

Regarding acceptance and rejection of settlement offers is clear. The Kansas Supreme Court confirmed that:

> "Ample Kansas case law supports the hornbook proposition that an unconditional and positive acceptance is required to form a contract; a conditional acceptance of a settlement offer is but a counteroffer, which does not create a contract. *Steele v. Harrison*, 220 Kan. 422, 428, 552 P.2d 957 (1967)

*Nungesser v. Bryant*, 2007 WL 858861 *12, ___ Kan. ___, ___ P.3d ___ (2007). Further in Kansas:

> 'It is fundamental that a communicated offer creates a power to accept the offer that is made, and only that offer. **Any expression of assent that changes the terms of the offer in any material respect may be operative as a counter-offer, but it is not an acceptance and constitutes no contract**. Unless the original offeror subsequently expresses unconditional assent to the counter-offer there will never be a contract.'

*Id.* citing *Steele v. Harrison*, 220 Kan. 422, 428, 552 P.2d 957 (1967) (emphasis added). See also *Restatement (Second) of Contracts* § 59 (1979), and *1 Corbin on Contracts* § 3.28, pp. 457-62, Rev. ed. 1993 & 2006 Supp.

What is more, it has long been the law of Kansas that "it is not the function of the courts to make contracts but to enforce them." *Fourth National Bank and Trust Company, Wichita v. Mobil Oil Corporation*, 224 Kan. 347, 353, 582 P.2d 236, 241 (1978) citing *Springer v. Litsey*, 185 Kan. 531, 535, 345 P.2d 669 (1959). In the present case, the communications between counsel for the parties do not demonstrate the creation of a contract to settle, and the trial court should not create one.

On March 14, 2007, plaintiff made a $420,000.00 settlement offer. (*See* Exhibit 1, plaintiff's Amended Memorandum.) That offer was rejected. On March 16,th defendant's

counsel e-mailed plaintiff's counsel memorializing prior conversations of that date and confirming that defendant's counsel had been authorized to offer $250,000.00 in settlement. Defendant's counsel went on to write:

> We talked later in the day. You told me that you had spoken with Mark and Sheila, and that their offer of settlement was $400,000.00, a 20,000.00 reduction from your offer of earlier this week. … I told you that it was my opinion that Mr. Graves would never pay a settlement in that amount. Quite frankly I do not believe that Mr. Graves will not [*sic*] even approach that amount. I did tell you that I would communicate your offer to Mr. Graves …"

(*See* Exhibit 2, plaintiff's Amended Memorandum.) That e-mail and the conversations it memorialized was a rejection plaintiff's offer, and defendant's offer to settle for $250,000.00. (*See* Exhibit A, Affidavit of Wachtel, ¶ 9.)

On March 26th further discussions were had regarding settlement. Prior to 9:18 a.m. on that date defendant's settlement offer was pending. Plaintiff's counsel sought to get defendant to increase its offer to $300,000.00. That attempt was not an acceptance of the defendant's offer; rather it was a rejection and a counteroffer. Defense counsel contacted the defendant and inquired whether the plaintiff's counteroffer was acceptable. (*Id.* at ¶¶ 10 and 11.) The defendant advised counsel that it would not accept the counteroffer and that defendant was feeling "iffy" about its earlier offers. Defendant's rejection of the counteroffer was communicated to the plaintiff. (*Id.* at ¶¶ 12 and 13.) Plaintiff was then on notice that as of defendant's receipt of the counteroffer, defendant's latest settlement offer was not pending and could not be accepted. Full in the knowledge of that information, and on that same date, the plaintiff attempted to accept defendant's non existent offer.

The facts demonstrate that plaintiff rejected every offer presented to it. In addition to plaintiff's express rejections of settlement, plaintiff, by its continuing attempts to negotiate a higher settlement offer, had impliedly rejected any pending offers. As of 4:55 p.m. on March

26th, there was no offer for plaintiff to accept.  Defendant correctly treated plaintiff's purported "acceptance" as a new offer from plaintiff to settle.  Defendant considered that offer, rejected it and so advised the plaintiff.  (*See* Exhibit B, Affidavit of Graves, ¶¶ 18 and 19.)

At Kansas law there was never the positive acceptance required to form a contract as required by *Nungesser* and *Steel*.  Given plaintiff's constant rejections of defendant's settlement offers and given as well its attempts to negotiate a higher settlement number, there was never an acceptance and thus no agreement to be enforced.  When viewed in a light favorable to the defendant, the evidence indicates repeated rejections of the defendant's offers, and, ultimately, an offer by plaintiff to settle for $250,000.00.  That offer was rejected.

"When the evidence pertaining to the existence of a contract or the content of its terms is conflicting or permits more than one inference, a question of fact is presented. *Nungesser* at *12.  Kansas courts treat a motion to enforce a settlement agreement, as a motion for summary judgment, one in which disputed material facts and the conclusions to be drawn therefrom are resolved in favor of the non-moving party. *Id*.

> The federal summary judgment standard is no different.  In applying the standard:
>
> The court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 665,670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*. 475 U.S. 574,587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

*Carolina Industrial Products, Inc. v. Learjet, Inc*., 189 F.Supp.2d 1147, 1157 (D.Kan. 2001).  In the context of the pending motion, this Court must resolve disputed material facts and conclusions to be drawn there from in favor of the defendant and accordingly must deny the plaintiff's motion.

In an attempt to succeed on its motion, plaintiff relies on *Sawtelle v. Cosden Oil & Gas Co.*, 128 Kan. 220, 227, 277 Pac 45, 48 (1929) as support for an argument that defendant's

counsel had an implied authority to settle the case. *Sawtelle* avails the plaintiff nothing. Counsel for the defendant had the actual authority to offer to settle this case for $250,000.00. Each time that offer was made it was rejected - either expressly or impliedly as a result of plaintiff's constant attempts to negotiate a higher settlement. Now plaintiff seeks to find its way around its rejections by raising a question of defense counsel's implied authority. That argument is inapplicable, s*ee Nungesser* and *Steel*.

There was no meeting of the minds after the plaintiff rejected the defendant's March 25th offer by attempting to persuade the defendant to raise its offer. Following that rejection, <u>defendant's offer was not renewed</u>. While the use of the word "iffy" in describing defendant's position on settlement was sufficient to apprise plaintiff that defendant was re-evaluating whether it wished to settle at all. The word "iffy" does not constitute a renewal of defendant's earlier offer, and cannot be so interpreted.

The defendant relies, *inter alia*, on *Krantz v. Univ. of Kan.,* 271 Kan. 234, 21 P.3d 561 (2001), for the proposition that Kansas favors compromise and settlement of disputes. While true, plaintiff's statement fails to point out that *Krantz* recognizes exceptions.

> It is an elemental rule that the law favors compromise and settlement of disputes, and generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it. However, as an exception to the rule it is well settled that a compromise settlement may be set aside on the ground of mutual mistake of the parties. *In re Estates of Thompson*, 226 Kan. 437, 440, 601 P.2d 1105 (1979).

*Krantz*, 271 Kan. at 242, 21 P.3d at 567. In any event, *Krantz* does not stand for the proposition that courts may create a settlement where none exists.

Defendant's settlement offers were constantly rejected. Plaintiff sought to persuade defendant to offer more money. This conduct constituted rejections of defendant's offers.

Eventually this strategy played out to plaintiff's detriment.  Under the holdings of *Nungesser* and *Steel*, no agreement was reached.  Argument that the opposite is so does not make it so.

## Conclusion

In Kansas, the law has long been that courts enforce contracts, they do not make them. *Fourth National Bank and Trust Company, Wichita*, 224 Kan. at 353, 582 P.2d 241.  An offer creates only the power to accept <u>that offer</u>, and "an expression of assent which changes the terms of the offer in any material respect may be operative as a counteroffer, but it **is not an acceptance and constitutes no contract**." *Nungesser* at *12 (emphasis added).

At Kansas law, a motion to enforce a settlement agreement, is treated as if it were a motion for summary judgment, in which disputed material facts and the conclusions to be drawn therefrom are resolved in favor of the non-moving party.  *Id*.  The federal standard is no different.  Under that standard, all disputed material facts and all reasonable inferences to be drawn therefrom must be viewed a light most favorable to the non-moving party.  *Carolina Industrial Products, Inc.* 189 F.Supp.2d at 1157.

Kansas law favors compromise and settlement.  *Krantz*, 271 Kan. at 242, 21 P.3d at 567.  However, there must be some compromise and settlement to favor and enforce.  In the present case there is none.  Plaintiff repeatedly rejected the defendant's settlement offers.  Plaintiff constantly sought to leverage the defendant to increase its offers - obviously implied rejections of any pending offers.  To the extent that the plaintiff's conduct might somehow be viewed as an expression of assent, it is apparent that any such expression changed the terms of the then pending offer(s) in a material respect.  Plaintiff's purported acceptance is nothing more than a counteroffer which the defendant could, and did, reject.  *Nungesser* at *12.

There is not now, and never has been, a settlement of this case. Under Kansas law, there is no agreement to be enforced. Any argument regarding defense counsel's apparent authority is not germane. The Court should deny the plaintiff's amended motion to enforce the purported settlement.

WHEREFORE, the defendant prays that the plaintiff take naught by its amended motion and that the amended motion be denied

Respectfully submitted,

KLENDA, MITCHELL, AUSTERMAN
  &  ZUERCHER, L.L.C.


s/John Val Wachtel
John Val Wachtel, #8310
Alexander B. Mitchell, #8204
301 N. Main, 1600 Epic Center
Wichita, KS  67202-4888
Tele.:  (316) 267-0331
Fax:  (316) 267-0333
Attorneys for Defendant,

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of April, 2007, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send electronic notice of this filing to:

Dustin DeVaughn,
Richard James
McDonald, Tinker, Skaer, Quinn  & Herrington, P.A.
200 W. Douglas, Ave., Ste 500
Wichita, KS  67202
Tele:  316.263.5851
Fax:  316.263.4677
ddevaughn@mtsqh.com
Attorneys for Plaintiff

                                              <u>s/John Val Wachtel</u>
                                              John Val Wachtel

KMAZ Doc. 333040