IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MONSOUR'S, INC.,

          Plaintiff,

       vs.                      Case No. 05-1204-JTM

MENU MAKER FOODS, INC.,

          Defendant.

MEMORANDUM AND ORDER

      This is a breach of contract action.  The matter is currently before the court on the

plaintiff Monsour's motion to enforce an alleged settlement agreement.  For the reasons stated

herein, the plaintiff's motion is denied.

**Findings of Fact**

      On March 14, 2007, Monsour's presented Menu Maker with a written settlement offer of

$420,000 by email.  Counsel discussed the matter two days later by telephone, and defendant's

counsel offered settlement in the amount of $250,000.  In a second telephone conference held

later the same day, plaintiff's counsel rejected defendant's offer and counter-offered to settle the

case for $400,000.  Later the same day, Menu Maker's counsel sent an e-mail, reciting the

negotiations during the day and stating, with respect to the earlier, rejected offer, "I was

authorized by Mr. Graves to offer $250,000 in settlement." (Plf. Exh. 2). Dick Graves is the president and sole shareholder of Menu Maker Foods, Inc.

On the morning of March 26, Monsour's counsel telephoned counsel for Menu Maker and sought to get defendant to raise its settlement offer. Menu Maker's counsel stated that his client would not pay $400,000 to settle, but had again authorized an offer of $250,000. Defendant's counsel expressed doubt that his client would pay more than $300,000, and would not accept any offer that increased the settlement amount by between $50,000 and $75,000.

Later that morning, plaintiff's counsel sent an email stating that "if Menu Maker Foods offers $300,000, this firm will recommend the same to the Monsours." (Plf. Exh. 4).

Creighton Cox , the General Manager of Menu Maker, told Graves that plaintiff's counsel had stated he would recommend his client accept an award of $300,000, if such an offer was advanced by the defendant.  Cox told Graves that plaintiff's counsel had been told it was unlikely Menu Maker would agree to a $300,000 settlement, but that the information would be presented to the company.

Graves has stated by affidavit that he believed the $300,000 figure was a rejection of the $250,000 settlement offer.  He told Cox to inform defense counsel that the company would not accept a $300,000 offer.  He also told Cox that he was reconsidering whether to settle at all.

At 3:51 p.m., on  March 26, 2007, defendant's counsel responded that the response of Dick Graves

> is that he will not pay $300,000 in settlement of this case.  In truth, Dick indicated that he was getting 'iffy' about his $250,000 offer.

(Plf. Exh. 5). According to Cox's affidavit, the term "iffy" was his rather than Graves's.

Plaintiff's counsel responded with an email at 4:55 p.m.:
I just spoke with my clients. They accept Menu Maker's settlement offer of
$250,000. The PACA lien has been negotiated down to $50,000 and we will pay
it directly from our trust account. You can confirm that with Larry in Florida.

(Id).

On the next day, counsel for the PACA trust beneficiaries confirmed to both plaintiff and

defense counsel that it accepted $50,000 in settlement to release their judgment. The same day,

plaintiff's counsel emailed counsel for defendant congratulating them on a well-defended case,

requesting defense counsel prepare a journal entry of dismissal and a release, and stating that the

court had been notified of the settlement.

At 10:09 a.m. the same day, defense counsel sent an email stating:
I have been unable to communicate with Mr. Graves regarding your e-mail
'accepting' our $250,000 settlement offer. Given my inability to speak with Mr.
Graves I cannot speak for Menu Maker and confirm that the offer was still
outstanding.

(Plf. Exh. at 7).

What?
Val, When you and I spoke yesterday I specifically asked you if the $250
was still on the table early yesterday morning and you said it was. My notes from
the conversation reference the same. That is why my 9:18 a.m. email from
yesterday did not reject the 250, but advised we would recommend 300 if Dick
would go to that.
Your 3:51 p.m. email from yesterday indicated that Dick would not go to
300 and was starting to get "iffy" about the 250 settlement offer. That is when my
clients accepted the same. Your 3:51 email never indicated the 250 was off the
table.

(Plf. Exh. 8).

I do not remember saying that the offer was still on the table. I recall
saying that I believed that it was. I would have no authority from Graves
regarding whether or not the offer still lived. If I did in fact say that the offer was
still on the table, I was speaking out of turn and without having first spoken with
Mr. Graves.

3

> With regard to the statement 'iffy,' I was simply reporting what Mr. Cox had reported to me.

(Id.)

Between March 27th and March 30th, counsel for the parties continued to have conversations regarding settlement. On March 30th, defendant rejected what it viewed as an offer to settle the case for $250,000.

**Conclusions of Law**

The court finds that no binding contract of settlement exists between the parties. First, the power of Monsour's to bind Menu Maker was terminated when it failed to accept the latter's $250,000 settlement offer, and instead substituted its own offers to settle the case for $400,000 or, later, for $300,000. Monsour's responses were counter-offers, which are traditionally understood to represent a revocation of an offer. Kansas has generally adhered to the modern view of contracts as stated in the Second Restatement of Contracts. *See Nungesser v. Bryant*, ___ Kan. ___ 153 P.3d 1277 (2007). The Restatement observes:

> An offeree's power of acceptance is terminated by his making of a counter-offer, unless the offeror has manifested a contrary intention or unless the counter-offer manifests a contrary intention of the offeree.

Restatement (Second) of Contracts, § 39(1).

In the present case, there is no evidence that Monsour's counter-offer was explicitly accompanied by a manifestation of intent to preserve the original, $250,000 offer, and no evidence of a manifestation of intent by Menu Maker to preserve its $250,000 offer even in the face of counter-offers or rejection by Monsour's.

4

Further, the court finds that, even if Menu Maker's offer was not extinguished by the counter-offer responses by Monsour's, the offer was in any event revoked by the explicit indication, conveyed to Monsour's prior to its putative acceptance, that Menu Maker's adherence to the offer was doubtful, or to use the term conveyed to Monsour's, "iffy." Not wishing to force parties into contractual relations against their own clear manifestations of consent, courts have recognized that an offer may be revoked by an expression that the offeror has become equivocal in adherence to the offer. Thus, in the leading case of *Hoover Motor Express Co. v. Clements Paper Co.*, 193 Tenn. 6, 241 S.W.2d 851 (1951), the court held that an offeror's expression that "we might not want to got through with it," was sufficient to revoke the offer. The decision in *Hoover Motor* underlies Illustration 5 to Restatement § 42:

> A makes an offer to B, and later says to B, 'Well, I don't know if we are ready. We have not decided, we might not want to go through with it.' The offer is revoked.

Having previously consistently rejected Menu Maker's offers to settle the case for $250,000 and then being informed that Menu Maker was "iffy" about adhering to those earlier offers, the court holds that Monsour's no longer had the power to bind Menu Maker to that settlement offer. Any such offer was revoked by the 3:51 p.m. email of March 26, 2007.

Nor is the result any different in light of the plaintiff's additional argument that defense counsel had apparent as well as actual authority to bind Menu Maker. Monsour's initiated the counter-offer which revoked Menu Maker's offers. The communication that Menu Maker was "iffy" about agreeing even to a $250,000 settlement was also conveyed to Monsour's. The plaintiff's reliance on *Sawetelle v. Cosden Oil & Gas Co.*, 128 Kan. 220, 277 P.2d 45 (1929), which dealt with the general apparent authority of attorneys, is inapposite. *Sawtelle* involved no

issues of counter-offer or revocation, and thus cannot stand for the proposition that apparent authority can bind Menu Maker, even in the face of Monsour's own actions (counter-offering) and knowledge (that the offer had in any event become equivocal), both of which as a matter of law terminated any offer which had been extended.

IT IS ACCORDINGLY ORDERED this 30th day of May, 2007 that the plaintiff's Motion to Enforce Settlement (Dkt. No. 119) is hereby denied.


s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE