# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MONSOUR'S INC.,

        Plaintiff,

vs.

MENU MAKER FOODS, INC.,

        Defendant.

Case No. 05-1204-JTM

## MEMORANDUM AND ORDER

    Presently before the court are the following motions: (1) defendant Menu Maker Foods, Inc.'s (Menu Maker) motion for judgment as a matter of law or for a new trial (Dkt. No. 195); (2) plaintiff Monsour's Inc.'s (Monsour's) motion for attorney fees pursuant to the terms of asset purchase agreement (Dkt. No. 192); and (3) Monsour's motion to compel prejudgment interest (Dkt. No. 194). The court denies Menu Maker's motion, and grants Monsour's motions as detailed below.

### I. Background

    This case has a lengthy procedural history, which needs a brief review to place the motions in context. Mark Monsour, Sheila Monsour and Monsour's initially filed a complaint against Menu Maker on June 30, 2005. In November 2006, Judge Belot granted summary judgment in favor of Menu Maker, and against the individual claims of Mark Monsour and Sheila Monsour, who were thus dismissed as plaintiffs (Dkt. No. 97). The court denied Menu Maker's second motion for summary judgment in January 2007 (Dkt. No. 108). After the court

denied Menu Maker's reconsideration motion, Menu Maker filed yet another motion for summary judgment (Dkt. No. 117), which was later terminated. The case was then reassigned to the undersigned, and Menu Maker once again filed a motion for summary judgment, which the court denied (Dkt. No. 157). The court conducted an in limine conference, granting and denying several of both parties' requests (Dkt. No. 184). The matter went to trial on April 29, 2008, and the jury returned a verdict for Monsour's on May 13, 2008 (Dkt. No. 190). Specifically, the jury found that defendant Menu Maker breached the January 31, 2002, contract with respect to both purchasing food service inventory and purchasing produce. The jury awarded $472,000.00 in damages on the inventory claim, and $135,849.71 in damages on the produce claim. The court denied Menu Maker's motion for a directed verdict on May 7, 2008, and entered judgment in favor of Monsour's on May 13, 2008 (Dkt. No. 187).

## II.  Judgment as a Matter of Law

Courts grant judgment as a matter of law under Rule 50(b) only "cautiously and sparingly." *Zuchel v. City & County of Denver*, 997 F.2d 730, 734 (10th Cir. 1993). Judgment as a matter of law is improper "unless the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion." *Crumpacker v. Kansas Dept. Of Human Res.*, 474 F.3d 747, 751 (10th Cir. 2007). In considering the motion, a court may not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *Sims v. Great Am. Lief Ins. Co.*, 469 F.3d 870, 891 (10th Cir. 2006). The court must view the record in the light most favorable to the nonmoving party, and affirm the verdict if it contains evidence upon which the jury could properly return a verdict for the nonmoving party. *See Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 914 (10th Cir. 2004). On

the other hand, the court should enter judgement as a matter of law in favor of the moving party where "there is no legally sufficient evidentiary basis for a reasonable jury to find for the issue against that party." *Sims*, 469 F.3d at 891.

In support of the motion, Menu Maker argues that there is no evidence to support the verdict on Monsour's claim for breach of the Asset Purchase Agreement or its claim for wrongfully rejected produce. Menu Maker claims that Monsour's tried the breach of contract matter without documentary proof, yet spends much of its brief rehashing its theory the jury ultimately rejected.

The court does not share Menu Maker's impression. On the contrary, Monsour's presented ample evidence that Menu Maker breached the contract and in support of the damages Monsour's sustained. For example, Monsour's presented evidence of Menu Maker's breach of the contract by its failure to purchase substantially all of its produce from Monsour's through numerous witnesses and documents. Where the witnesses disagreed, the jury chose to believe Monsour's witnesses. The jury is specifically instructed that it is solely responsible for determining the witnesses' credibility, and its determination does not provide a basis for a new trial. *See e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."); *Wirtz v. Kansas Farm Bureau Serv. Inc.*, 311 F. Supp. 2d 1197, 1211 (D. Kan. 2004) (noting that the district court cannot overturn the jury's credibility determination); *Bajaj v. Pal/Med Serv., Inc.*, No. 97-1188, 1999 WL 1253059, at *3 (D. Kan. Dec. 3, 1999) (holding that where evidence supports a jury's credibility determinations, a new trial was not warranted). Further, the issues have also been addressed in the several

3

summary judgment motions heard and rejected, at least in part, by two different judges. Dissatisfaction with the verdict is not a basis for judgment as a matter of law; as such, the motion is denied. *See, e.g., Hudson v. Dist. of Columbia*, 517 F. Supp. 2d 40, 55 (D.D.C. 2007) (noting that dissatisfaction with the jury's verdict does not warrant a new trial). Were it not so, a trial and verdict could be deemed the legal equivalent of a perpetual motion machine.

### III. Motion for a New Trial

Motions for a new trial are committed to the sound discretion of the trial court, and are "not regarded with favor." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993); *United States v. Kelley*, 929 F.2d 582, 586 (10th Cir. 1991). Such motions should be granted with great caution, and only "when the court believes the verdict is against the weight of the evidence, prejudicial error has occurred, or substantial justice has not been done." *Wilkins v. Kmart Corp.*, No. 05-4074, 2007 WL 1796201 at *2, (D. Kan. June 19, 2007). The court must examine the evidence in the light most favorable to the prevailing party, and focus on "whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence." *Black v. Hieb's Enterprises, Inc.*, 805 F.2d 360, 363 (10th Cir. 1986).

First, Menu Maker relies on its arguments for a directed verdict to alternatively claim that the lack of evidence to support the verdict justifies a new trial. For the reasons detailed above, those arguments lack merit and justify neither a directed verdict nor a new trial.

Second, Menu Maker argues that it should have been permitted to tell the jury why Mark Monsour prepared false and fraudulent financial statements. That Monsour's submitted false and fraudulent financial statements to Bank of America is undisputed; however, no such statements

were ever provided to Menu Maker Foods.  Thus, this court granted Monsour's motion in limine to exclude such evidence that was deemed "irrelevant, unless Mr. Monsour opens the door to such evidence during trial." (Dkt. No. 184, p. 2).  Notably, Mark Monsour admitted submitting false financial statements during his live testimony, so the jury was aware of the dishonesty for impeachment purposes.  Further, plaintiff dropped its future lost profit claim prior to the start of trial, rendering the reasons Mr. Monsour provided false documents to the bank irrelevant.  Menu Maker cites no case law to support its position, and fails to explain the relevance of information that was never presented to Menu Maker during contract negotiations with Monsour's.  The court finds no error in its ruling on the motion in limine and at trial, and denies Menu Maker's request for a new trial based on that excluded evidence.

Third, Menu Maker argues that Monsour's attempt to admit an invoice from Lloyd's Loads prejudicially impacted the jury.  During Monsour's rebuttal, Mark Monsour was shown what was purported to be an invoice from Lloyd's Loads for a 30 yard dumpster.  This was significant because the parties presented conflicting testimony about the existence of the dumpster, which Monsour's claimed it used to dispose of produce that Menu Maker either rejected or did not purchase.  The court refused to admit the invoice into evidence, but allowed Mr. Monsour to identify the document.  Menu Maker claims that the court erred by allowing Mr. Monsour to tell the jury that he had an invoice for the dumpster.

First, identification of a document is not *ipso facto* a disclosure of the document's context, and is the first step in establishing foundation for admission of a document, even if the document ultimately is not admitted into evidence.  Second, a review of the transcript from the exchange in question reveals that the court instructed the jury to "disregard anything that Mr.

Monsour might have said about the exhibit to the extent that it relates to the exhibit.  If it goes to his independent recollection, you don't have to disregard that." (Dkt. No. 196-2 *Sealed*, p. 6). The record reveals that the jury decided the dumpster existed based on the testimony of Mark Monsour and others.  While Mr. Monsour identified a document as an invoice, the jury did not see the document, nor was the content disclosed.  Finally, the court properly limited the jury's consideration regarding the testimony.  As such, the court finds no error in Monsour's attempt to introduce the exhibit, and denies Menu Maker's request for a new trial.

In a similar vein, Menu Maker alleges that it was fraud on the court to attempt to seek admission of the invoice because the document was not a business record of Lloyd's Loads (Dkt. No. 203).  "Proof of fraud upon the court must be by clear and convincing evidence." *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002).  "Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute fraud on the court." *Id.* (quoting *Weese v. Schukman*, 98 F.3d 542, 552-53 (10th Cir. 1996)).  In the two-page supplemental brief in which Menu Maker alleges fraud, it claims that the affidavit of Merle Lloyd, owner of Lloyd's Loads and Trash Service, proves that the invoice Monsour's attempted to offer into evidence was not a record of Lloyd's Loads, and instead was prepared by an employee at the request of Mark Monsour.  In response, Monsour's submits an affidavit of the general manager for Lloyd's Trash Service in 2002, in which she states that she does have personal recollection of Monsour's dealings with Lloyd's Trash Service, that the original invoice was lost because a division of the Trash Service was sold in February 2007, and all the records

were destroyed. Nevertheless, because she had an independent recollection of the dumpster rental, Ms. Miller recreated a true and correct business record.

Although this issue (*i.e.,* a reconstructed as opposed to original document) might have been avoided had it been brought to the court's attention before Mark Monsour's testimony, the attempt to introduce the evidence certainly does not rise to the level of fraud. As detailed above and in the trial transcript, the court did not admit the exhibit into evidence. Mark Monsour identified the document as part of an attempt to lay the foundation for its admission; he did not testify regarding the content of the exhibit, the jury never saw the exhibit, the jury received a limiting instruction, and Mark Monsour testified from his own recollection about the presence of the dumpster. The court finds no fraud and no error.

Menu Maker's fourth basis for a new trial relates to the court's answer to a jury question. On Tuesday May 13, 2008, the jury sent the following question to the court: "Could we please have a breakdown on how the plaintiff arrived at the damages for both produce and food service" (Dkt. No. 191). In response, the Court submitted the following response: "No additional breakdown is available. You will have to rely on your collective memory of the exhibits, other evidence, and attorneys' arguments." (Dkt. No. 191, p. 2). Menu Maker claims that it was prejudicial error for the court to imply that attorneys' arguments were evidence. There was no consultation with the attorneys prior to the court's response because the jury was not asking for clarification. As is obvious from the face of the response, the court directed the jury back to the support for the damage figures, *i.e.* the evidence, and the source of the breakdown of the damages, *i.e.* the arguments. At no time and in no way did the court instruct the jury or imply that the lawyers' arguments were, in fact, "evidence." That is why the court was careful in the

response to mention the documents and other evidence before mentioning counsel's arguments. Further, the answer was to be read in conjunction with the explicit instructions of the court, which clearly detailed that "Lawyers' statements, objections, and arguments are not evidence." (Dkt. No. 188, Inst. No. 7). Accordingly, the response of the court not only was not prejudicial error, but was entirely correct. Menu Maker's request for a new trial on that ground is denied.

Menu Maker's final claim is grounded in Judge Belot's order denying defendant's motion for summary judgment. It claims Judge Belot erroneously stated that the parties agreed that the goods would become Menu Maker's property when loaded on Menu Maker's trucks (Dkt. No. 108, p. 4). Without citing to the record, Menu Maker claims that Judge Belot later stated that the parties would not be held to the allegedly erroneous finding. Based upon this alleged statement by Judge Belot, Menu Maker argues that it was prejudicial error for the court to instruct the jury that the parties agreed defendant's acceptance would occur when the goods were loaded onto the truck. Monsour's responds that Menu Maker failed to controvert the facts regarding when the produce became the property of the defendant at the summary judgment stage and the motion for reconsideration. Further, Menu Maker failed to raise this issue when it filed an additional motion for summary judgment after the case was transferred. Menu Maker had several chances to clarify a purportedly controverted fact, and failed to do so during the litigation. Accordingly, the court denies its request for a new trial on that ground.

### IV.  Attorney Fees

As noted at the outset, a jury found by its verdict that Menu Maker breached the terms of the Asset Purchase Agreement with respect to both the food service inventory and produce provisions. That jury verdict was the culmination of over three years of litigation, which

included substantial pretrial discovery and numerous settlement attempts. The parties produced a large amount of documentary evidence, and took many depositions in three different states. The parties acknowledge this was a complex legal action, and both expended substantial time and labor preparing and trying the case.

Monsour's argues, and Menu Maker agrees, that the Asset Purchase Agreement between the parties provides a basis for attorney fees. Pursuant to Section 8.4 of that agreement, Monsour's seeks $278,199.00 in attorney fees and $30,032.30 for expenses, totaling $308,231.30. Menu Maker does not contest Monsour's suggested hourly rate of $200, but does object to the number of hours Monsour's claims. The parties did not reach an agreement regarding the attorney fee issue; thus, the issue is ripe for determination.

Menu Maker seeks a $110,388.80 reduction. It first argues that the court should disallow $1,764.00, the fees related to the fraud claim, as Monsour's ultimately voluntarily dismissed that claim. Monsour's counters that it researched the fraud issues based on the information originally available to it, and dismissed the claim after deciding that there was not a good faith basis for it.

The court rejects this request for reduction; the fraud claim and the successful claims were based on a common core of facts. The Tenth Circuit has held that where "a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have this attorney's fee reduced simply because the district court did not adopt each contention raised." *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1160 (10th Cir. 1990). The court is of the view this extends to claims brought in good faith which a party abandons in the face of newly discovered facts, or the absence of supporting facts. This comports both with case law and public policy, as the parties

should thoroughly research issues related to the case, and be honest with the court and opposing counsel regarding the viability of its claims. The court denies the first reduction claim.

Menu Maker next argues that Monsour's is not entitled to the $4,428.00 claimed in unsuccessfully defending the individual plaintiffs against the summary judgment motion. Menu Maker further seeks a $10,424.00 reduction for work plaintiff's counsel performed for Mark and Sheila Monsour, requesting a revised billing statement which denotes all work done for the individual plaintiffs. In response, Monsour's argues that all claims, including the individual plaintiffs' claims, were based upon one common core set of facts. As noted above, *Spulak* provides that courts should not reduce attorney fees when, as here, the prevailing party has won substantial relief. While unsuccessful on the individual claims of Mark and Sheila Monsour, plaintiffs are entitled to fees for work performed on their behalf, as they prevailed upon the corporations' claims, which were based upon the same facts as the individual claims.

Menu Maker also argues that Monsour's requested fees should not include the $1,290.00, which was generated for corporate work performed for Monsour's. Monsour's counters that the sole purpose of reviving the corporation was to pursue its legal remedies against Menu Maker. Based on the plain language of the Asset Purchase Agreement, Monsour's is entitled to be reimbursed for any costs, expenses and damages (including counsel fees) to revive the corporation and maintain its corporate status to pursue the defendant. As such, Menu Maker's request to exclude fees generated for corporate work is denied.

Menu Maker additionally seeks a reduction of $470.00 for work that it believes was done as part of a collection action for Monsour's. Monsour's responds that its PACA research was essential to the case because it assigned PACA the right to potential proceeds of any recovery of

10

the litigation up to the amount of PACA's judgment against Monsour's, and because its various produce suppliers were witnesses in the case. The plain language of the Asset Purchase Agreement provides that Monsour's is entitled to its costs, expenses, and damages, and is thus broad enough to include the research conducted on PACA issues and PACA's effect on Monsour's claims against Menu Maker. Thus, plaintiff's fees are appropriate.

Menu Maker seeks a $1,102.50 reduction for fees generated in a discovery dispute which Judge Bostwick has already resolved. Upon examination of the record, it is clear that Judge Bostwick entered an order denying an award of attorney fees in association with Monsour's motion to seek an order compelling Menu Maker to pay some disputed fees. Despite this ruling, Monsour's argues that Judge Bostwick's order was based upon case law surrounding the discovery dispute, but that the current fee request should be based upon the terms of the Asset Purchase Agreement. Because Judge Bostwick has already denied these fees, this court will uphold grants Menu Maker's request to reduce Monsour's fee by $1,102.50.

Menu Maker next claims that Monsour's claim is excessive in the amount of $6,6180 for fees generated in an erroneous attempt to enforce a settlement which did not exist. The plain terms of the Asset Purchase Agreement provide that the breaching party is responsible for all costs and expenses resulting from the breach, which includes settlement negotiations and related claims required to enforce potential settlement agreements. Menu Maker's requested reduction is thus denied.

Additionally, Menu Maker seeks to reduce Monsour's fees by $30,568.00 for the fees related to Mr. Hull's expert opinion, because he was never called to testify, and his opinion was not relied upon at trial. Monsour's counters that the work of Mr. Hull was still vital to its case-

in-chief because he provided necessary information that helped Monsour's win a motion in limine. Although Mr. Hull did not testify at trial, it is clear that his work prior to trial was a factor in Monsour's successful outcome. Thus, his fees are recoverable.

Menu Maker next seeks to reduce Monsour's requested fee amount by $21,480.00 because of work it alleges was performed by two attorneys when only one was necessary. It requests an account of fees which can be reasonably reviewed with respect to other non-essential and duplicative fees. The court denies Menu Maker's request. This litigation spanned three years, and culminated in a trial that lasted over three weeks. A review of the billing record evidences that plaintiffs used two attorneys only in key depositions and in hearings. As such, the fees are not duplicative, and no additional accounting is necessary.

Additionally, Menu Maker seeks a reduction of $2,600.00 in miscellaneous fees for which it claims it should not be responsible. Menu Maker fails to cite any case law or authority for its position. Further, each activity Menu Maker identifies is a cost resulting from Menu Maker's having materially breached the Asset Purchase Agreement. Accordingly, the court denies Menu Maker's request.

Finally, Menu Maker argues that while the Asset Purchase Agreement allows for indemnification of the Monsour's counsel fees, it does not provide for the reimbursement of the costs of litigation. As such, Menu Maker asserts that Monsour's cost request of $30,032.30 should be denied. However, the plain language of the Asset Purchase Agreement provides for the reimbursement of "cost, expense, liability or damage (including counsel fees)." Because it is clear that Monsour's is to be reimbursed for both its costs and its counsel fees, Menu Maker's request is denied.

Monsour's is to be awarded $307,128.80, to date, in fees and expenses, pursuant to the terms of the Asset Purchase Agreement.

## V. Prejudgment Interest

Monsour's seeks prejudgment interest consistent with the verdict pursuant to Missouri Statute § 408.020,[1] which provides that, absent an agreement, creditors are entitled to nine percent per annum for all money that is due on written contracts. A court may award prejudgment interest only on liquidated claims, meaning one that is "fixed and determined or readily ascertainable by computation or a recognized standard." *J.R. Waymire Co. v. Antares Corp.*, 975 S.W.2d 243, 248 (Mo. Ct. App. 1998). Missouri courts have awarded prejudgment interest even when the parties disagree as to the precise amount of damages to which the claimant is entitled. *Unlimited Equip. Lines, Inc. v. Graphic Arts Ctr., Inc.*, 889 S.W.2d 926, 942 (Mo. Ct. App. 1994). Further, "an award of less damages than requested does not preclude an award of prejudgment interest." *Far East Servs. Corp. v. Tracker Marine, L.L.C.*, 246 S.W.3d 486, 509 (Mo. Ct. App. 2007) (quoting *A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 397 (Mo. Ct. App. 1998)).

In this case, Menu Maker argues that prejudgment interest is improper because Monsour's claim is unliquidated, as evidenced by the ever-changing amount of damages that plaintiffs claimed through the discovery. Menu Maker claims that Monsour's damage is not an account stated, a fixed amount, or a promised certain sum, which thus makes it ineligible for prejudgment interest. In response, Monsour's argues that its damages were liquidated because they were readily determinable by computation, and that the change in the damage demand does

---

[1] The parties agree that Missouri Law controls.

not "unliquidate" the claim.  Further, Monsour's claims that its method for damage calculation has been consistent throughout the litigation, and meets the standards of Missouri Law, which requires that the sum be "readily ascertainable by computation."

Menu Maker's own authority recognizes that liquidated amounts include such sums that are "readily ascertainable."  Here, the damages were readily determinable and ascertainable by computation, and thus the award of prejudgment interest is supported by statute.  Accordingly, Monsour's request for $155,001.67 is granted.

IT IS ACCORDINGLY ORDERED this 12th day of January, 2009, that defendant Menu Maker's motion for judgment as a matter of law or for a new trial (Dkt. No. 195) is denied, plaintiff Monsour's motion for attorney fees pursuant to the terms of asset purchase agreement (Dkt. No. 192) is granted as the court has modified it in the body of this memorandum, and Monsour's motion to compel prejudgment interest (Dkt. No. 194) is granted.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE